1  Karen A. Braje (SBN 193900)
Email: kbraje@reedsmith.com
2  REED SMITH LLP
101 Second Street, Suite 1800
3  San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
4  Facsimile: +1 415 391 8269

5  Martin J. Bishop (admitted *pro hac vice*)
Email: mbishop@reedsmith.com
6  Rebecca R. Hanson (admitted *pro hac vice*)
Email:  rhanson@reedsmith.com
7  REED SMITH LLP
10 South Wacker Drive, 40th Floor
8  Chicago, IL 60606
Telephone: +1 312 207 1000
9  Facsimile: +1 312 207 6400

10  Attorneys for Defendants UnitedHealth Group
Inc., UnitedHealthcare, Inc., UnitedHealthcare
11  Insurance Company, United Healthcare
Services, Inc., and UMR, Inc.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16  RACHEL CONDRY, JANCE HOY,                 Case No.:  3:17-cv-00183-VC
    CHRISTINE ENDICOTT, LAURA BISHOP,
17  FELICITY BARBER, and RACHEL CARROLL,     **DEFENDANTS  UNITEDHEALTH GROUP**
    on behalf of themselves and all others similarly  **INC., UNITEDHEALTHCARE, INC.,**
18  situated,                                 **UNITEDHEALTHCARE INSURANCE**
                                              **COMPANY, UNITED HEALTHCARE**
19                                            **SERVICES, INC., AND UMR, INC.'S**
                       Plaintiffs,            **NOTICE OF MOTION AND MOTION TO**
20                                            **DISMISS PLAINTIFFS' AMENDED**
                                              **COMPLAINT; MEMORANDUM OF**
21         vs.                                **POINTS AND AUTHORITIES IN**
                                              **SUPPORT THEREOF**
22  UNITEDHEALTH GROUP INC.,
    UNITEDHEALTHCARE, INC.,                   **Date:**        July 27, 2017
23  UNITEDHEALTHCARE INSURANCE                **Time:**        10:00 a.m.
    COMPANY, UNITED HEALTHCARE               **Place:**       Courtroom 4
24  SERVICES, INC., and UMR, INC.,
                                              Compl. Filed:   Jan. 13, 2017
25
                       Defendants.            Honorable Vincent Chhabria
26

27

28  3:17-cv-00183-VC

_REED SMITH LLP_
_A limited liability partnership formed in the State of Delaware_

1      **PLEASE TAKE NOTICE** that on July 27, 2017 at 10:00 a.m. in Courtroom 4 of the above

2   captioned court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants

3   UnitedHealth Group Inc., UnitedHealthcare, Inc., UnitedHealthcare Insurance Company, United

4   Healthcare Services, Inc., and UMR, Inc. will, and hereby do, move the Court for an order granting

5   the instant Motion to Dismiss and dismissing the claims against them. This Motion relies upon this

6   Notice of Motion, the attached Memorandum of Points and Authorities, and the arguments of

7   counsel at the hearing on this Motion.

8          DATED:  April 14, 2017

9                                          REED SMITH LLP

10

11                                    By:   _/s/ Karen A. Braje_____
                                          Karen A. Braje
12                                          Martin J. Bishop (admitted *pro hac vice*)
                                          Rebecca R. Hanson (admitted *pro hac vice*)
13                                          Attorneys for Defendants UnitedHealth Group Inc.,
                                          UnitedHealthcare, Inc., UnitedHealthcare
14                                          Insurance Company, United
                                          Healthcare Services, Inc., and UMR, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

# **TABLE OF CONTENTS**

2

**Page**

3   I.    INTRODUCTION ................................................................................................. 1

4   II.   BACKGROUND .................................................................................................. 1

5   A.   ACA Requires Coverage For Lactation Counseling Without Cost-Sharing. .............. 1

6   B.   Defendants Are Claims Administrators, Not The Plan Or Plan
        Administrator. ........................................................................................................ 2

7

8   C.   Plaintiffs' Plans Specify Procedures For Filing Claims And Appealing
        Denials. ................................................................................................................. 3

9   D.   Plaintiffs Received Lactation Counseling Services From Out-Of-Network
        Providers Even Though Services Were Available From In-Network
10       Providers. ............................................................................................................. 3

11       1.   Condry                                                                                        3

12       2.   Hoy                                                                                           4

13       3.   Endicott                                                                                      5

14       4.   Bishop                                                                                        6

15       5.   Barber                                                                                        6

16       6.   Carroll                                                                                       7

17   E.   Plaintiffs Filed The Present Lawsuit. ....................................................................... 7

18   III.  LEGAL STANDARD ........................................................................................... 8

19   IV.   ARGUMENT ....................................................................................................... 9

20   A.   Plaintiffs Have Not Alleged A Plausible Violation of ACA In Counts II–
        VI. ....................................................................................................................... 9
21

22       1.   ACA Does Not Require Defendants To Create A Separate
             Network Of Lactation Counseling Providers, And Plaintiffs Admit
23           That Defendants Have In-Network Providers Who Offer Lactation
             Counseling Services.                                                                         10
24

25       2.   ACA Does Not Require Defendants To Maintain A Separate List
             Of In-Network Lactation Counseling Providers.                                               11

26   B.   Plaintiffs Do Not State a Viable Claim In Count I. .................................................. 14

27       1.   Defendants Complied With Claims Procedures In The Plan
             Documents.                                                                                   14

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2.      Section 503 Of ERISA Does Not Apply To Defendants.                    15

C.      Count III Does Not State a Claim. ................................................................. 16

1.      Plaintiffs Have Not Alleged That Defendants Are Fiduciaries Of
        "The Same Plan" Or Adequately Pled Their Co-Fiduciary Claim.           16

2.      Non-Fiduciary Participation Liability Is Inapplicable Here.             17

D.      Count IV Should Be Dismissed Because Plaintiffs Fail To Allege That
        Defendants' Coverage Decisions Were Based On Plaintiffs' Sex ........................... 18

E.      ERISA Preempts Breach Of Contract And Unjust Enrichments Claims
        Asserted By Plaintiffs Condry, Hoy, Endicott, Bishop, And Barber In
        Counts V And VI. ............................................................................... 19

F.      Counts V And VI Are Solely Based On ACA And Must Be Dismissed.................. 20

V.      CONCLUSION................................................................................. 20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
   542 U.S. 200 (2004)...................................................................................................19

*Alexander v. Sandoval,*
   532 U.S. 275 (2001)...................................................................................................18

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).....................................................................................................8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).........................................................................................8, 15, 17

*Botsford v. BCBS of Mont., Inc.,*
   314 F.3d 390 (9th Cir. 2002) .....................................................................................19

*Cascades Computer Innovation LLC v. RPX Corp.,*
   No. 12-cv-01143 YGR, 2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ...................11, 14

*Christensen v. Harris County,*
   529 U.S. 576 (2000)...................................................................................................12

*Cleghorn v. Blue Shield of Cal.,*
   408 F.3d 1222 (9th Cir. 2005) ...................................................................................19

*Conservation Force v. Salazar,*
   646 F.3d 1240 (9th Cir. 2011) .............................................................................8, 9, 14

*Doe v. Regents of Univ. of Cal.,*
   No. 2:15-cv-02478-SVW-JEM, 2016 WL 5515711 (C.D. Cal. July 25, 2016) .....................18, 19

*Escobar v. Lynch,*
   846 F.3d 1019 (9th Cir. 2017) ..............................................................................12, 13

*Gates v. United Health Group Inc.,*
   No. 11 Civ. 3487(KBF), 2012 WL 2953050 (S.D.N.Y. July 16, 2012)......................16

*Gonzales v. Or.,*
   546 U.S. 243 (2006)...................................................................................................12

*Great-West Life & Annuity Ins. Co. v. Knudson,*
   534 U.S. 204 (2002)...................................................................................................11

*Griggs v. E.I. DuPont de Nemours & Co.,*
   237 F.3d 371 (4th Cir. 2001) .....................................................................................10

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003)................................................................................20

*Groves v. Kaiser Found. Health Plan Inc.*,
   32 F. Supp. 3d 1074 (N.D. Cal. 2014) ..............................................................19

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000).........................................................................................17

*Horn v. Provident Life & Acc. Ins. Co.*,
   351 F. Supp. 2d 954 (N.D. Cal. 2004) .........................................................12, 13

*In re McKesson HBOC, Inc. ERISA Litig.*,
   No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ....................17

*In re Syncor ERISA Litig.*,
   351 F. Supp. 2d 970 (C.D. Cal. 2004) ...............................................................17

*Killian v. Concert Health Plan*,
   742 F.3d 651 (7th Cir. 2013) ...........................................................................10

*Korte v. Sibelius*,
   735 F.3d 654 (7th Cir. 2013) ...........................................................................20

*La. Mun. Police Employees' Ret. Sys. v. Wynn*,
   829 F.3d 1048 (9th Cir. 2016) .........................................................................4, 9

*Lamie v. U.S. Tr.*,
   540 U.S. 526 (2004).........................................................................................14

*Landwehr v. DuPree*,
   72 F.3d 726 (9th Cir. 1995) ........................................................................17, 18

*Lee v. ING Groep, N.V.*,
   829 F.3d 1158 (9th Cir. 2016) .........................................................................15

*Lopez v. Regents of Univ. of Cal.*,
   5 F. Supp. 3d 1106 (N.D. Cal. 2013) ............................................................18, 19

*LoPresti v. Ctigroup, Inc.*,
   No. 02-cv-6492(SJ), 2005 WL 195521 (E.D.N.Y. Jan. 18, 2005) .......................16, 17

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993).........................................................................................17

*Mills v. BCBS of Tenn., Inc.*,
   No. 3:15-cv-552-PLR-HBG, 2017 WL 78488 (E.D. Tenn. Jan. 9, 2017).....................20

*Moorestown Twp. Bd. of Educ. v. S.D.*,
   811 F. Supp. 2d 1057 (D.N.J. 2011) ............................................................12, 13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Palmer v. Ill. Farmers Ins. Co.*,
  666 F.3d 1081 (8th Cir. 2012) .................................................................................20

*Premier Health Center, P.C. v. UnitedHealth Group*,
  No. 11-425 (ES), 2012 WL 1135608 (D.N.J. Apr. 4, 2012)........................................16

*Quan v. Gonzales*,
  428 F.3d 883 (9th Cir. 2005) ....................................................................................9

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011)...............................................................................17, 18

*Rollins v. Dignity Health*,
  830 F.3d 900 (9th Cir. 2016), *cert. granted on other grounds*, 137 S. Ct. 547 ............12

*Schroeder v. United States*,
  793 F.3d 1080 (9th Cir. 2015) .................................................................................11

*Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*,
  102 F. Supp. 3d 688 (E.D. Pa. 2015) .......................................................................18

*Serpa v. SBC Telecomm., Inc.*,
  318 F. Supp. 2d 865 (N.D. Cal. 2004) ......................................................................19

*Skidmore v. Swift*,
  323 U.S. 134 (1944)...............................................................................................12

*Soehnlen v. Fleet Owners Ins. Fund*,
  844 F.3d 576 (6th Cir. 2016) ...................................................................................20

*Stewart v. Screen Gems-EMI Music, Inc.*,
  81 F. Supp. 3d 938 (N.D. Cal. 2015) .........................................................................8

*Streit v. Matrix Absence Mgmt., Inc.*,
  No. 3:12-cv-01797-AC, 2014 WL 667535 (D. Or. Feb. 18, 2014) ..............................16

*Voss v. C.I.R.*,
  706 F.3d 1051 (9th Cir. 2015) .................................................................................13

*Weisbuch v. City of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997) ..............................................................................11, 14

**Statutes**

29 U.S.C. § 1105(a)(1)–(3) ............................................................................................16

29 U.S.C. § 1133(1) ......................................................................................................16

29 U.S.C. §§ 1133(1)–(2) ..............................................................................................15

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

42 U.S.C. § 300gg-13(a)(4) .................................................................2, 9, 10, 13

42 U.S.C. § 18022(c)(3)(A)(i) ............................................................................2

42 U.S.C. § 18116(a) ........................................................................................18

42 U.S.C. § 18116(b) ........................................................................................18

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................8

**Regulations**

26 C.F.R. § 54.9815-2713(a)(1)(iv).....................................................................2

29 C.F.R. 2590.715-2713...................................................................................10

29 C.F.R. 2590.715-2713(a) .......................................................................13, 14

29 C.F.R. § 2520.102-3(j)(3) .............................................................................12

29 C.F.R. § 2590.715-2713(a)(1)(iv)...................................................................2

29 C.F.R. § 2590.715-2713(a)(3)(i)..................................................9, 10, 11, 13

29 C.F.R. § 2590.715-2713(a)(3)(i)–(ii).............................................................2

29 C.F.R. § 2590.715-2713(a)(3)(ii)........................................................2, 9, 10

29 C.F.R. § 2590.715-2715(a)(2)(i)(K)..............................................................12

45 C.F.R. § 147.130(a)(1)(iv) ..............................................................................2

45 C.F.R. § 156.230(b)(2)..................................................................................12

**Other Authorities**

HRSA, Women's Preventive Services Guidelines (the "HRSA Guidelines"),
   *available at* https://www.hrsa.gov/womensguidelines/ ..................................2

UnitedHealthcare, https://connect.werally.com ..............................3, 4, 5, 6, 7

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## I.     INTRODUCTION

In this putative class action against UnitedHealth Group Inc., United Healthcare, Inc., United Healthcare Insurance Company, United Healthcare Services, Inc., and UMR, Inc. (collectively, "Defendants"), Plaintiffs Rachel Condry ("Condry"), Jance Hoy ("Hoy"), Christine Endicott ("Endicott"), Laura Bishop ("Bishop"), Felicity Barber ("Barber"), and Rachel Carroll ("Carroll") (collectively, "Plaintiffs") allege that Defendants violated the Patient Protection and Affordable Care Act of 2010 ("ACA") by: (1) failing to create a network of providers who focus on  lactation counseling (separate from their general provider networks) and, in the absence of a separate network, imposing cost-shares on out-of-network services Plaintiffs received; and (2) erecting administrative barriers that impaired Plaintiffs' access to lactation counseling services, such as allegedly declining to maintain a separate list of general in-network providers who offer lactation counseling. Plaintiffs' claims, however, misread ACA, and their factual allegations fall short of establishing a right to relief.

ACA does not require Defendants to create a separate network of providers who focus on lactation counseling. ACA permits Defendants to impose cost-shares on out-of-network services if they have general in-network providers who offer lactation counseling services – obstetricians, pediatricians, and certified nurse midwives. Plaintiffs plead themselves out of court because they admit that Defendants' general provider networks have such providers. Under ACA, then, Defendants do not have to cover out-of-network lactation counseling services or could apply cost-shares if they did cover them. Further, Plaintiffs' allegations regarding administrative barriers are untethered to the statutory and regulatory text, and ACA does not require Defendants to maintain a separate list of in-network providers who offer lactation counseling services. In sum, Plaintiffs have not pled that Defendants violated ACA, which is the core premise of virtually all of their claims, and the remainder of their claims suffer from substantial defects, as detailed below.

## II.    BACKGROUND

### A.     ACA Requires Coverage For Lactation Counseling Without Cost-Sharing.

ACA provides that a "group health plan and a health insurance issuer … shall not impose any cost-sharing requirements for … preventive care . . . [for women] as provided for in comprehensive

3:17-cv-00183-VC                                  – 1 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  guidelines supported by the Health Resources and Services Administration" ("HRSA"). *See* 42

2  U.S.C. § 300gg-13(a)(4); *see also* 26 C.F.R. § 54.9815-2713(a)(1)(iv); 29 C.F.R. § 2590.715-

3  2713(a)(1)(iv); 45 C.F.R. § 147.130(a)(1)(iv). ACA defines "cost sharing" as "deductibles,

4  coinsurance, copayments, or similar charges." *See* 42 U.S.C. § 18022(c)(3)(A)(i). HRSA's Women's

5  Preventive Services Guidelines require coverage for "comprehensive lactation support and

6  counseling" before and after birth of a child. *See* HRSA, Women's Preventive Services Guidelines

7  (the "HRSA Guidelines"), *available at* https://www.hrsa.gov/womensguidelines/; (*see also* Dkt. 29

8  ("Am. Compl.") ¶ 62.)

9  Notwithstanding ACA's broadly worded requirement that plans cover specified preventive

10  services for women without imposing cost-sharing, ACA's implementing regulations allow plans to

11  deny coverage for, or impose cost-sharing requirements with respect to, lactation counseling services

12  delivered out-of-network, as long as they have in-network services. *See* 29 C.F.R. § 2590.715-

13  2713(a)(3)(i)–(ii) (insurer may deny coverage or impose cost-shares when it has "in its network a

14  provider who can provide an item or service"). When an insurer "does not have in its network a

15  provider who can" offer lactation counseling, the regulations prohibit cost-shares on out-of-network

16  services. *See id.* § 2590.715-2713(a)(3)(ii). ACA and its supporting regulations do not require that

17  lactation counseling be administered by a specific type of provider, such as an International Board

18  Certified Lactation Consultant ("IBCLC"). *See id.* (permitting cost-sharing if the plan has in its

19  network "a provider" who can perform lactation counseling services); FAQs About Affordable Care

20  Act Implementation (Part XXIX) and Mental Health Parity Implementation at Q.3 (Oct. 23, 2015)

21  (hereinafter, "FAQ") (services can be performed by "another provider type acting within the scope

22  of his or her license or certification").

23  **B.      Defendants Are Claims Administrators, Not The Plan Or Plan Administrator.**

24  Plaintiffs are members or beneficiaries of health benefit plans sponsored by their or their

25  spouses' employers (collectively, the "Plans"). (Am. Compl. ¶¶ 20–25.) The Plans provide coverage

26  in accordance with ACA's preventive services requirements, including the lactation services

27  requirements. (*Id.* ¶¶ 81–82.) Defendants are the claims administrators for the Plans. (*Id.* ¶¶ 26–31.)

28  Defendants are not, however, the plan or plan administrator. *See, e.g.*, Hoy's Benefit Booklet,

attached here as <u>Exhibit A</u>, at 110 (The Santander Holdings USA, Inc. Flexible Benefits Plan is the plan and Santander Holdings USA, Inc. is the plan administrator).[1]

**C.      Plaintiffs' Plans Specify Procedures For Filing Claims And Appealing Denials.**

The Plans contain detailed claims procedures, which explain the process for submitting claims and filing an appeal if those claims are denied. (*See, e.g.*, Am. Compl. ¶¶ 112–13 (detailing process for Hoy's plan); *see also* Ex. B at 51–57 ("Condry's Benefit Booklet").) With respect to Hoy's plan, for example, members can appeal Hoy's plan's decisions if a claim is denied in whole or in part. (*Id.*) With respect to Condry's plan, members can file a written appeal if the member disagrees with a pre-service request for benefits determination, post-service claim determination, or a rescission of coverage determination. (Ex. B (Condry's Benefit Booklet), at 53.) Condry's plan requires that UHC Insurance respond to appeals within 30 days. (*Id.* at 54-55.)

**D.      Plaintiffs Received Lactation Counseling Services From Out-Of-Network Providers Even Though Services Were Available From In-Network Providers.**

Plaintiffs utilized out-of-network providers for the lactation counseling services at issue in this case despite the fact that they are aware that Defendants have providers in their networks who offer lactation counseling services.[2]

**1.      Condry**

After giving birth on February 13, 2015, Condry received lactation consultations from an out-of-network provider, Ellen H. Schwerin ("Schwerin"), on three occasions, paying $586 total. (Am. Compl. ¶¶ 89-91; *see also* UnitedHealthcare, https://connect.werally.com (last visited Mar. 31,

---

[1] *See also* Condry's Benefit Booklet, attached here as <u>Exhibit B</u>, at XXIII (Insperity Group Health Plan is the plan and Insperity Holdings, Inc. is the plan administrator); Endicott's Benefit Booklet, attached here as <u>Exhibit C</u>, at 102 (The Travelers Companies, Inc. Medical Plan is the plan and Travelers Companies, Inc. is the plan administrator); Barber's Benefit Booklet, attached here as <u>Exhibit D</u>, at XXIII (Eventbrite, Inc. Welfare Benefit Plan is the plan and Eventbrite, Inc**.** is the plan administrator); Carroll's Benefit Booklet, attached here as <u>Exhibit E</u>, at 1 (Larimer County Employee Benefit Plan is the plan and plan administrator); Bishop's Benefit Booklet, attached here as <u>Exhibit F</u>, at 53 ("[W]e are not the plan administrator.")

[2] *See, e.g.*, Am. Compl. ¶¶ 97, 99 (acknowledging that Hoy saw a hospital-based lactation consultant that was covered under her plan); ¶ 117 (acknowledging that Endicott located an in-network lactation consultant); UnitedHealthcare, https://connect.werally.com (last visited Mar. 31, 2017) (Defendants' provider finder tool indicating that Endicott's hospital, Hartford Hospital, is in Defendants' network for her plan). Further, as will be established in discovery, the lactation consultant Bishop alleges she saw both in the hospital and on a "private patient" basis, Diba Tillery, is associated with an in-network hospital that provides lactation counseling services even after discharge.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2017) (search for Condry's location (Oakland, CA) and plan indicate Schwerin is not in Defendants' network).) Condry's claim for this service was denied by UHC Insurance as "not a reimbursable service." (Am. Compl. ¶ 90.) She did not appeal. (*See generally, id.*) Condry later sought the services of the same provider, knowing that the first claim had been denied; she did not even submit claims for the second and third consultations because she thought it would be futile based on unsuccessful attempts to obtain coverage for unrelated services. (*Id.* ¶¶ 91-92 (discussing Condry's efforts to obtain coverage for her home birth).) Condry does not allege that she attempted to locate an in-network provider of lactation counseling services. (*See generally id.*)

Condry also alleges that she received a gap exception for coverage for her home birth, which would require UHC Insurance to cover her out-of-network provider at the in-network level of benefits. (*Id.* ¶¶ 93-95.) Condry's gap exception expired prior to the birth of her child and her provider did not properly extend it. (*Id.* ¶¶ 93-94.)

### 2.    Hoy

Hoy saw a hospital-based lactation consultant on September 4, 2015, which was covered. (Am. Compl. ¶¶ 97, 99.) Hoy attempted to locate in-network "lactation support services" by searching only for "lactation consultant" on Defendants' provider portal.[3] (*Id.* ¶ 98; *see also* Hoy's Letter (Dec. 29, 2015) ("Hoy's 12/29/15 Letter"), attached here as Exhibit G at p. 15/28 (attaching a screenshot of her search which returned zero results for "lactation consultant.").)[4] Hoy also called UHC Services and was told that out-of-network services would not be covered. (*Id.* ¶ 99.) Hoy nevertheless received lactation services from an out-of-network provider on three occasions, paying $345 total. (*Id.* ¶ 100.) After receiving the services, Hoy was told by UHC Services that her plan covers out-of-network services at 60%, but the UHC representative did not offer any comment on Hoy's specific lactation counseling services claim. (*Id.* ¶ 101 (noting only that UHC "would cover

---

[3] In fact, as will be established in discovery, Hoy's hospital in Abington, Pennsylvania is in Defendants' network and provides breastfeeding support services even after discharge.

[4] Defendants may attach the December 29, 2015 Letter to their Motion, as Plaintiffs rely on it in their Amended Complaint. (Am. Compl. ¶ 104); *see La. Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016). Because the Letter contains protected health information, Defendants have filed a motion contemporaneously with this memorandum seeking leave to file the Letter under seal and provided an unredacted copy of the exhibit to Plaintiffs.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

out-of-network services at 60%"').) Apparently based on the general representation, Hoy submitted a letter – characterizing it as an "appeal" – on October 23, 2015, but UHC Services informed her it did "not qualify as an appeal." (*Id*. ¶ 103.) Hoy's plan allows for appeals of <u>denied</u> claims. (*See id.* ¶ 113.)

Hoy's 12/29/15 Letter constituted Hoy's next attempt to appeal, but UHC informed Hoy that it did not qualify as such. (Am. Compl. ¶¶ 105, 108.) Hoy also filed a complaint with the Pennsylvania Insurance Department (the "PA DOI"), "describing her experience with the appeals process," but the PA DOI indicated that it was "unable to assist her because . . . Hoy never appealed her claim denials internally and/or UHC Services never formally denied her appeal." (*Id*.)

### 3.   Endicott

Endicott admits UHC Services has in-network lactation counseling services. (*Id*. ¶ 117 (she contacted a lactation consultant at Hartford Hospital, as suggested in her plan documents); *see supra* at n.2 (Hartford Hospital is in-network).) The in-network provider told Endicott that her condition did not require care, and based on that, Endicott sought the services of an out-of-network provider[5] without any apparent further effort to find an in-network provider. (*Id*. ¶¶ 117-18, 121.) Endicott submitted a claim for the services in October 2015 and UHC Services responded with a request for additional information. (*Id*. ¶ 119-20.) Endicott received an explanation of benefits ("EOB") on February 12, 2016 noting the claims processed under her out-of-network benefits. (*Id*. ¶ 121.) Endicott then contacted UHC Services by phone, but never appealed. (*Id*. ¶¶ 122-23.)

Even before receiving the EOB and having never appealed to UHC Services, Endicott submitted a complaint to the State of Connecticut Insurance Department on February 1, 2016, which Endicott alleges prompted UHC Services to reprocess her claim. (*Id*. ¶ 124.) UHC Services informed Endicott that the "eligible expense amount" of her claims (totaling $213) would be applied to her out-of-network deductible and that she may be billed by the provider for "any difference between the providers['] billed charges and the eligible expenses." (*Id*.)

---

[5] *See* UnitedHealthcare, https://connect.werally.com (last visited March 31, 2017) (search for Endicott's location (Glastonbury, CT) and plan shows Lori Atkins is not a network provider).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 4.    Bishop

Bishop received lactation counseling services from Diba Tillery ("Tillery"), an IBCLC located in Bishop's hospital, which presumably was covered by UHC Services.[6] (*Id.* ¶ 126.) Bishop tried to see Tillery after discharge, but she was not available. (*Id.* ¶ 127.) Bishop later attempted to locate an "in-network lactation provider" using UHC Services' "online portal" but did not find any. (*Id.* ¶ 129.) Bishop contacted Tillery "who agreed to see [Bishop] on a private-patient basis because neither [Bishop's] nor her son's conditions warranted admission to the hospital." (*Id.* ¶ 130.)

Bishop submitted a claim for Tillary's "private-patient" services on August 5, 2015 for $130. (*Id.* ¶¶ 130–31.) UHC Services denied the claim on September 28, 2015 as "not a reimbursable service" and noting that "[t]here may be a more appropriate CPT or HCPCS code that describes this service and/or the use of the modified or modifier combination is inappropriate." (*Id.* ¶ 131.) Tillery sent a letter to UHC Services on October 19, 2015 with additional information. (*Id.* ¶ 132.) Bishop also submitted an appeal, but does not indicate the date of the appeal. (*Id.*) UHC Services responded that Tillery must indicate that her 10/19/15 letter was a "corrected claim." (*Id.*) Bishop resubmitted the claim and received a new EOB that denied the claim, but for reasons that were different than the reasons given for the original claim. (*Id.* ¶ 133.) Bishop did not appeal this denial. (*See generally id.*)

### 5.    Barber

After giving birth in February 2016, Barber used an out-of-network IBCLC[7] for lactation counseling and does not allege that she made any attempt to locate in-network services. (*Id.* ¶ 136.) Barber had two consultations for which she paid $590. (*Id.* ¶ 137.) Barber submitted a claim, which UHC Insurance denied on April 29, 2016. (*Id.* ¶ 138.) Nearly a year later, in February 2017, Barber appealed the denial, which UHC Insurance responded to, noting the claim had processed properly. (*Id.* ¶ 139.) Barber did not take a further appeal. (*See general id.*)

---

[6] Bishop complains only about $130 paid out-of-pocket for post-hospital services. (Am. Compl. ¶¶ 130, 135.)

[7] *See* UnitedHealthcare, https://connect.werally.com (last visited Mar. 31, 2017) (search for Barber's plan and location (San Francisco, CA) demonstrates Caroline Kerherve is not in Defendants' network).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### 6. Carroll

Like Barber, Carroll sought the services of an out-of-network IBCLC[8] without indicating whether she made any attempt to locate in-network services. (*Id.* ¶ 141.) Carroll submitted claims for two consultations she had on September 16 and 19, 2015, for which she paid $105 and UMR sent an EOB for the September 16, 2015 service indicating that the claim processed at the "out-of-network" level of benefits and that the charges exceeded "the usual, reasonable, and customary fees" for such services. (*Id.* ¶ 142.) The allowed amount was applied to Carroll's deductible, leaving her responsible for $65. (*Id.*) Carroll received another EOB on December 29, 2015 for the September 19, 2015 claim indicating that it had been denied as excluded from her health plan. (*Id.*) A customer service representative told Carroll that the claims were applied to her out-of-network deductible. (*Id.* ¶ 143.) Carroll sought services of another out-of-network provider in November 2015.[9] (*Id.* ¶ 144.) She received an EOB denying claims for those services as "excluded by [her] health plan." (*Id.* ¶ 145.) Carroll did not appeal either claim. (*Id.* ¶¶ 143, 145.)

### E. Plaintiffs Filed The Present Lawsuit.

The central allegation of Plaintiffs' Amended Complaint is that Defendants violated ACA's preventive services requirements when handling Plaintiffs' claims. (*See, e.g.*, *id.* ¶ 2 ("Defendants have wrongfully denied . . . Plaintiffs . . . access to and coverage for . . . breastfeeding support . . . which . . . is mandated by [ACA].").) Specifically, Plaintiffs assert Defendants violated ACA by:

(1) "failing to establish a network of lactation consultants" or providers who mainly provide lactation counseling services (*see id.* ¶¶ 84(A), 85), and, in the absence of such a network, imposing cost-shares on lactation counseling services Plaintiffs received from out-of-network providers;[10] and

(2) "imposing major administrative barriers to insureds seeking to receive information

---

[8] *See* UnitedHealthcare, https://connect.werally.com (last visited Mar. 31, 2017) (search for Carroll's plan and location (Fort Collins, CO) indicates that Virginia Martin and A Nurtured Path, LLC are not in Defendants' network).

[9] *See* UnitedHealthcare, https://connect.werally.com (last visited on Mar. 31, 2017) (noting that Cara Munson is not an in-network provider for Carroll's plan).

[10] *See id.* ¶ 86 ("Defendants have … improperly shifted costs to the insured by failing to establish networks of providers of Comprehensive Lactation Benefits")); *see also id.* at 5 n.2 (alleging that Defendants "have not established networks of [lactation counseling] providers … thereby circumventing …ACA[]"); *id.* ¶ 11(A) (Defendants "have not established networks of trained providers of" lactation counseling services).

about and access to" lactation counseling services, such as failing to create a separate list of providers in Defendants' general provider networks who provide such services[11] (*id.* ¶¶ 84(D)–(E)).[12]

Plaintiffs assert causes of action for breach of fiduciary duty under, and violation of § 503 of, the Employee Retirement Income Security Act of 1974 ("ERISA") (Counts I and II); co-fiduciary liability under ERISA (Count III); sex discrimination under ACA's nondiscrimination provision (Count IV); breach of contract (Count V); and unjust enrichment (Count VI). (*Id.* ¶¶ 187–226.)

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a plaintiff's complaint fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Facts that are "merely consistent with" liability are insufficient, *see Iqbal*, 556 U.S. at 678, and pleadings that offer mere "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" are insufficient to withstand Rule 12(b)(6) scrutiny. *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 950 (N.D. Cal. 2015) (quoting *Iqbal*, 556 U.S. at 678). Dismissal at the pleading stage is required when a complaint lacks plausible factual allegations or a cognizable legal theory. *See*

---

[11] Plaintiffs draw a distinction between providers who <u>primarily</u> provide lactation counseling services, such as lactation consultants (whose primary service is lactation counseling services) and providers who <u>can</u> perform lactation counseling services, but who perform numerous other services as well (pediatricians, obstetricians, and nurses). Plaintiffs assert that prior to ACA, lactation counseling services were not mandated and Defendants had no "established networks of trained providers," and that Defendants failed to establish "networks of trained providers in the wake of ACA's mandate." (*See* Am. Compl. at 5 n.2.) Plaintiffs allege that Defendants are obliged to create a specific network of lactation consultants.  (*See e.g.*, *id.* ¶ 84(A).) Separately, Plaintiffs allege that Defendants violate ACA because Defendants do not have a separate list of the general providers who are already in Defendants' network who provide lactation counseling services. (*Id.* ¶ 85.) As demonstrated in Section IV.A, Defendants are not required to create a separate network of specific lactation counseling providers or a list of those general in-network providers who provide lactation counseling services.

[12] *See also id.* (Defendants failed to provide list that delineates which in-network providers provide lactation counseling services); *id.* ¶¶ 84(B)–(C) (alleging Defendants provided inaccurate information to insureds, processed claims using out-of-network benefits, etc.).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  *Conservation Force*, 646 F.3d at 1242.[13]

2  **IV.    ARGUMENT**

3     **A.    Plaintiffs Have Not Alleged A Plausible Violation Of ACA In Counts II–VI.**

4        For Plaintiffs to establish the premise necessary to Counts II through VI, they must plausibly

5  plead that Defendants violated ACA.[14] Under ACA, Defendants must cover comprehensive lactation

6  counseling services without cost sharing if they <u>have</u> in-network lactation counseling providers and a

7  member receives in-network services. *See* 42 U.S.C. § 300gg-13(a)(4); 29 C.F.R. § 2590.715-

8  2713(a)(3)(ii). Further, if Defendants <u>have</u> in-network lactation counseling providers, they may deny

9  coverage, or impose cost-sharing requirements for, services received out-of-network. *See* 29 C.F.R.

10 § 2590.715-2713(a)(3)(i-) (denial of coverage or cost-sharing permitted when an insurer has "in its

11 network a provider who can provide [the] service"). If, however, Defendants <u>do not have</u> in-network

12 lactation counseling providers, they may not deny coverage or impose cost-sharing requirements for

13 services received out-of-network. *See* 29 C.F.R. § 2590.715-2713(a)(3)(ii) ("If a plan or issuer does

14 not have in its network a provider who can provide an item or service, … the plan or issuer must

15 cover the item or service … [without] cost sharing.").

16       Here, Plaintiffs assert that Defendants violate ACA by: (1) not creating a separate network of

17 lactation counseling providers yet nevertheless imposing cost-shares on out-of-network services; and

18 (2) erecting administrative barriers to access to lactation counseling services, such as failing to

19 maintain a separate list of providers in Defendants' general provider networks who offer such

20 services. (*See* Section II.E, *supra* (detailing allegations in the Complaint).) But Plaintiffs' own

21 allegations demonstrate that Defendants comply with ACA, and, therefore, Plaintiffs have not

22 plausibly pled an ACA violation and their Complaint must be dismissed.

23

24  [13] The facts are drawn from legal authorities, the Amended Complaint, documents referenced in the Amended Complaint that are central to Plaintiffs' claims, and materials subject to judicial notice, such as publicly available websites. *See La. Municipal Police Emps' Ret. Sys.*, 829 F.3d at 1063 (on a motion to dismiss, a court may consider the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Quan v. Gonzales*, 428 F.3d 883, 888 n.5 (9th Cir. 2005) (taking judicial notice of information found on publicly available website). Defendants reserve the right to challenge Plaintiffs' factual assertions at the appropriate time.

28  [14] Each of Plaintiffs' claims in Counts II - VI is premised on alleged breach of ACA. *See, e.g.*, Am. Compl. ¶ 198 (<u>Count II</u>); *id.* ¶ 202 (<u>Count III</u>); *id.* ¶ 213 (<u>Count IV</u>); *id.* ¶ 220 (<u>Count V</u>); *id.* ¶ 223 (<u>Count VI</u>).

3:17-cv-00183-VC       – 9 –

1.   **ACA Does Not Require Defendants To Create A Separate Network Of Lactation Counseling Providers, And Plaintiffs Admit That Defendants Have In-Network Providers Who Offer Lactation Counseling Services.**

Plaintiffs allege that Defendants violated ACA by imposing cost-shares on Plaintiffs' out-of-network services because they failed to create a separate network of providers who mainly provide lactation counseling services, such as lactation consultants. (*See, e.g.*, Am. Compl. ¶¶ 84–86.) Under ACA, however, Defendants are not required to create a separate network of lactation counseling providers. *See* 42 U.S.C. §300gg-13(a)(4) (containing no such requirement); *see also* 29 C.F.R. 2590.715-2713 (same); FAQ at Q.3 (lactation counseling can be performed by "another provider type acting within the scope of his or her license or certification (for example, a registered nurse)"). Rather, as explained above, ACA only prohibits cost-sharing if a plan does not have lactation counseling providers in its general provider network. *See* 29 C.F.R. § 2590.715-2713(a)(3)(ii) (coverage without cost-sharing is required "[i]f a plan or issuer does not have [an in-network provider] who can provide a[] … service").

Plaintiffs admit that Defendants have providers in their general provider networks who offer lactation counseling services, among other services. (*See, e.g.*, Am. Compl. ¶¶ 97, 99 (acknowledging that Hoy received covered lactation counseling services from a hospital-based lactation consultant); *id.* ¶ 117 & n. 2, *supra* (admitting that Endicott located a lactation consultant through Hartford Hospital).) And several Plaintiffs did not even attempt to find an in-network provider of lactation counseling services. (*See* Am. Compl. ¶ 89 (Condry accepted a referral to an out-of-network lactation consultant, making no effort to locate an in-network provider); ¶ 136 (Barber, similar); ¶ 141 (Carroll, similar).)

Plaintiffs' personal choices to obtain out-of-network lactation services do not constitute ACA violations. *See, e.g.*, 29 C.F.R. § 2590.715-2713(a)(3)(i-) (cost-sharing permitted if an insurer has an in-network "provider"); *see also Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 381 (4th Cir. 2001) (even ERISA fiduciaries do not have an obligation "to ascertain on an individual basis whether each beneficiary understands the collateral consequences of his or her particular election"); *Killian v. Concert Health Plan*, 742 F.3d 651, 701 (7th Cir. 2013) (Manion, J., concurring in part

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

and dissenting in part) ("[T]he defendants did not have a fiduciary duty to remind [the plaintiffs] … that payment reimbursement rates depend … on the provider's status as in-network or out-of-network"). Because Defendants offer in-network lactation counseling services, they have not violated ACA by denying or imposing cost-sharing on Plaintiffs' out-of-network claims. *See* 29 C.F.R. § 2590.715-2713(a)(3)(i-). Plaintiffs admit this and, accordingly, have pled themselves out of court. *See Weisbuch v. City of Los Angeles*, 119 F.3d 778, 783 (9th Cir. 1997) ("[A] plaintiff may plead herself out of court." (alteration in original)); *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-cv-01143 YGR, 2013 WL 316023, at *7-8 (N.D. Cal. Jan. 24, 2013) (plaintiff pled itself out of court by admitting facts that were fatal to its claims).

### 2. ACA Does Not Require Defendants To Maintain A Separate List Of In-Network Lactation Counseling Providers.

Plaintiffs next argue that Defendants erected "significant administrative barriers" to accessing lactation counseling services, chiefly by failing to provide a separate list of Defendants' in-network providers who offer such services. (Am. Compl. ¶ 85.) As a threshold matter, the "administrative barriers" Plaintiffs allege are not addressed by ACA's detailed requirements. Thus, even if Plaintiffs' allegations were true (they are not), Plaintiffs' appeal to the spirit of the law falls short of stating a viable claim. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220 (2002) ("[V]ague notions of a statute's basic purpose are ... inadequate to overcome the words of its text." (internal quotation marks and emphasis omitted)); *Schroeder v. United States*, 793 F.3d 1080, 1083 (9th Cir. 2015) (same).

Plaintiffs' theory that Defendants are required to maintain a separate list of in-network lactation counseling providers is based solely on a terse and informal agency pronouncement in an FAQ document jointly issued by the Departments of Health and Human Services, Labor, and the Treasury. That FAQ affirmatively states that "plans and issuers [are] required to provide a list of the lactation counseling providers within the network," (Am. Compl. ¶ 73; FAQ at Q.1), but even the agencies that adopted the informal FAQ acknowledged that ACA requires no such list. (*See* FAQ at Q.1 ("the preventive services requirements … do not include specific disclosure requirements").)

Agency interpretations contained in informal materials such as FAQs, opinion letters, policy

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

statements, and agency manuals – unlike those arrived at after "formal adjudication or notice-and-comment rulemaking" – are entitled to deference "only to the extent that [they] have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)); *Rollins v. Dignity Health*, 830 F.3d 900, 909 (9th Cir. 2016) (same), *cert. granted on other grounds*, 137 S. Ct. 547 (Mem.); *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1075 (D.N.J. 2011) (FAQs properly analyzed under "power to persuade" framework). In other words, the weight assigned to the agency's interpretation depends upon "the thoroughness evident in its consideration" and "the validity of its reasoning." *Gonzales v. Or.*, 546 U.S. 243, 268 (2006); *see also Escobar v. Lynch*, 846 F.3d 1019, 1025 (9th Cir. 2017) (same).

Here, the Court should accord no deference to the FAQ, as the reasoning underlying its position is flawed and unpersuasive. In particular, the regulations relied upon by the agencies merely provide that specified insurers must: (A) "provide a written summary of benefits and coverage (SBC)" that includes "an Internet address (or similar contact information) for obtaining a list of network providers," *see, e.g.*, 29 C.F.R. § 2590.715-2715(a)(2)(i)(K); (B) include in a "summary plan description … provisions governing the use of network providers, the composition of the provider network, and whether, and under what circumstances, coverage is provided for out-of-network services," *see* 29 C.F.R. § 2520.102-3(j)(3); and (C) "publish an up-to-date, accurate, and complete provider directory, including information on which providers are accepting new patients, the provider's location, contact information, specialty, medical group, and any institutional affiliations," *see* 45 C.F.R. § 156.230(b)(2). But none of these provisions remotely supports the conclusion that ACA requires insurers to have a separate list of lactation counseling providers, separate and apart from a standard provider directory (which, notably, Plaintiffs admit Defendants maintain). (*See* Am. Compl. ¶¶ 98, 109 (acknowledging that Defendants have an online portal to locate in-network providers).).

Significantly, the FAQ seeks to <u>add</u> a requirement to ACA without grounding the addition in the statute itself, which courts have consistently found to be a hallmark of unpersuasive reasoning. *See, e.g.*, *Rollins*, 830 F.3d at 910 (rejecting agency interpretation that was based on a "misreading of the statutory text"); *Horn v. Provident Life & Acc. Ins. Co.*, 351 F. Supp. 2d 954, 962–64 & n.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   (N.D. Cal. 2004) (same when the statutory section cited by the agency in support of its position

2   "sa[id] nothing" about the matter under consideration). Accordingly, the agencies' guidance is

3   unsupported. *See Escobar*, 846 F.3d 1019, 1025–26 (declining deference to agency decision when

4   sources it cited in support of its position did not corroborate its conclusion); *Voss v. C.I.R.*, 706 F.3d

5   1051, 1066–67 (9th Cir. 2015) (same for informal memorandum that "d[id] not grapple" with the

6   statutory scheme at issue); *see also Moorestown Twp. Bd. of Educ.*, 811 F. Supp. 2d at 1075 (same).

7        A court in this district faced a similar situation in *Horn*, where the beneficiary of a salary

8   protection insurance plan filed suit against the plan administrator, challenging the administrator's

9   calculation of disability benefits. *Horn*, 351 F. Supp. 2d at 954-55. There, the plaintiff relied on an

10   opinion letter issued by the California Insurance Commissioner to argue that a "discretionary clause"

11   in the plan – purporting to give the plan administrator discretionary authority to interpret plan terms

12   – was invalid. *Id.* at 959. In rejecting the interpretation that such clauses were "fraudulent and

13   unsound," *id.* at 955, the court found the pronouncement lacked the power to persuade, because the

14   section of the Insurance Code cited by the Commissioner "sa[id] nothing about the substantive

15   allocation of authority between insurer and insured." *Id.* at 962. The court concluded that "[w]here

16   an agency makes an argument that has no reasoned basis in the governing law … its opinion is due

17   no respect whatsoever." *Id.* at 964 & n.4. Likewise, here, the FAQ's interpretation is due no

18   deference because it attempts to add requirements to ACA without any support in the underlying

19   statutory scheme.[15]

20        Plaintiffs suggest that a separate list of in-network providers is required to alleviate the

21   burden on new mothers of finding an in-network provider of lactation counseling services. (*See* Am.

22   Compl. ¶¶ 84-86.) But this "burden" does not justify departing from the plain language of the statute.

23   *See supra*. Indeed, ACA only requires Defendants to provide lactation counseling services at no-

24   cost-share. *See* 42 U.S.C. §300gg-13(a)(4); 29 C.F.R. 2590.715-2713(a). While Congress placed an

---

25   [15] By contrast, the Court should accord deference to the agencies' statement in the same FAQ that lactation
26   counseling services need not be provided by an IBCLC/lactation consultant, and instead can be performed "by
     another provider type acting within the scope of his or her license or certification." *See* FAQ at Q.3; *see also
     supra* pp. 4, 6, 9, 11 (citing same). Indeed, the agencies' answer to Q.3 has the "power to persuade," because
27   it is consistent with the generic use of the word "provider" in ACA's implementing regulations. *See* 29 C.F.R.
     § 2590.715-2713(a)(3)(i) (making no reference to a specific type of provider and noting that cost-sharing is
28   permitted so long as the plan has in its network "a provider" who can perform lactation counseling services).

3:17-cv-00183-VC                                    – 13 –

economic burden on plans and insurers by requiring the coverage of cost-shares, it did not place the burden on Defendants to do the traditional work of the patient and doctors – to link appropriate service providers to specific provider treatments (here, lactation counseling services). *Id.*; *see Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004) (courts cannot rewrite statutes).

* * *

As demonstrated by the above analysis, Counts II through VI are undermined by Plaintiffs' own allegations, which establish that Defendants comply with ACA's requirements. Indeed, ACA does not require Defendants to create a separate network of specialized lactation counseling providers or to maintain a separate list of in-network providers who offer such services. Further, Plaintiffs have not plausibly alleged that Defendants lack in-network providers who offer lactation counseling services, such that Defendants violated ACA when they denied coverage or imposed cost-shares for Plaintiffs' out-of-network services. In fact, Plaintiffs admit that Defendants have such providers. Thus, Plaintiffs fall short of stating a claim and have pled themselves out of court. *See Weisbuch*, 119 F.3d at 783; *Cascades Computer Innovation*, 2013 WL 316023, at *7-8. Dismissal of Counts II through VI is warranted.

### B.       Plaintiffs Do Not State A Viable Claim In Count I.

In Count I, Plaintiffs contend that Defendants violated (i) the terms of Plaintiffs' plan documents and (ii) § 503 of ERISA, when they "fail[ed] to provide timely and substantive responses to requests for out-of-network benefits and/or appeals to denials of [such] requests." (Am. Compl. ¶¶ 192–93.) Both allegations fall short of stating a claim.

#### 1.       Defendants Complied With Claims Procedures In The Plan Documents.

As a threshold matter, only Hoy's and Condry's allegations are implicated by Plaintiffs' broad allegation that Defendants violated their fiduciary duties by failing to timely respond to "requests for out-of-network benefits and/or appeals to denials of [such] requests." (*Id.*)[16] Plaintiffs' assertion that UHC mischaracterized Hoy's alleged appeals is without support, because Hoy has not

---

[16] Indeed, Carroll is not named as a Plaintiff in Count I, and Endicott, Bishop, and Barber acknowledge that Defendants promptly contacted them after they submitted their claims. (*Id.* ¶¶ 119, 131–32, 138–39.) Further, Plaintiffs do not plead any information about the terms of the Plans for Plaintiffs other than Hoy, precluding Plaintiffs from plausibly pleading that Defendants violated such terms. *See Conservation Force*, 646 F.3d at 1242 (a plaintiff must "state a facially plausible claim to relief").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

adequately alleged that she filed a proper appeal. Only <u>denied</u> claims can be appealed under Hoy's plan. (*See* Ex. A (Hoy's Benefit Booklet) at 71 (appeals may be taken of claims for benefits that are denied in whole or in part).) Hoy merely alleges she participated in telephone calls with UHC representatives on September 9 (before she even received services) and October 22, in which a representative noted that out-of-network lactation counseling claims would not process under in-network benefits. (Am. Compl. ¶¶ 98, 101.) Hoy acknowledges that she received a letter from the PA DOI, relating that she had not complied with her plan's claims procedures. (*See* Am. Compl. ¶ 108.) Regardless, as noted above, ACA does not require Defendants to process out-of-network claims for lactation counseling services where Defendants have in-network providers, as Plaintiffs admit they do. (*See supra* Section IV.A.) Thus, even if Hoy's letters constituted "appeals," the result would be the same.

Similarly, Condry has not properly alleged a breach of any duty based on the processing of her gap exception. Condry acknowledges that the gap exception expired. (Am. Compl. ¶ 93.) Condry's provider did not properly contact UHC Insurance and thus no extension was granted. (*Id.* ¶ 94 (noting provider had problems contacting UHC and that gap exception could not be retroactively granted).) Thus, because the gap exception would not be extended, Condry's home birth claim was correctly processed as an out-of-network service, rather than at the in-network level of benefits. As with Hoy, therefore, Condry's allegations do not support a claim based on improper claims processing on any of the Defendants' part and the Amended Complaint fails in this respect, as a matter of law. *See Twombly*, 550 U.S. at 570.

### 2. Section 503 Of ERISA Does Not Apply To Defendants.

Count I also alleges that Defendants violated § 503 of ERISA, which provides that "every employee benefit plan shall … (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits … has been denied … and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. §§ 1133(1)–(2). Section 503's plain language, however, only imposes duties on "employee benefit plans," not claims administrators like UHC. *See Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016) (§ 503 sets forth "claims procedures imposed on benefit plans," not third-party

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    administrators, who carry "separate definitions under ERISA"). As a result, § 503 does not apply.

2    *See, e.g.*, *Gates v. United Health Group Inc.*, No. 11 Civ. 3487(KBF), 2012 WL 2953050, at *10–11

3    (S.D.N.Y. July 16, 2012) (dismissing ERISA § 503 claim against claims administrator because that

4    section only imposes obligations on the plan); *Premier Health Center, P.C. v. UnitedHealth Group*,

5    No. 11-425 (ES), 2012 WL 1135608, at *13 (D.N.J. Apr. 4, 2012) (lack of § 503 liability for "third

6    parties … who merely process claims for benefits"); *see also Streit v. Matrix Absence Mgmt., Inc.*,

7    No. 3:12-cv-01797-AC, 2014 WL 667535, at *6 (D. Or. Feb. 18, 2014) (penalties not available

8    under ERISA § 502(c) for plan administrator's alleged violation of § 503, because § 503 only

9    applies to plan). Allegations based on that section must be dismissed with prejudice.[17]

10       **C.**       **Count III Does Not State a Claim.**

11              **1.**       **Plaintiffs Have Not Alleged That Defendants Are Fiduciaries Of "The**
                **Same Plan" Or Adequately Pled Their Co-Fiduciary Claim.**

12

13       Count III seeks to impose co-fiduciary liability on Defendants pursuant to § 405 of ERISA.

14   (Am. Compl. ¶¶ 200–02.) That provision states that "a fiduciary with respect to a plan shall be liable

15   for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" if the

16   fiduciary (1) "participates knowingly in, or knowingly undertakes to conceal" another fiduciary's

17   breach of duty; (2) "enable[s] such other fiduciary to commit a breach"; or (3) "has knowledge of a

18   breach by such other fiduciary, unless [it] makes reasonable efforts . . . to remedy the breach." 29

19   U.S.C. § 1105(a)(1)–(3). The statute's plain language reveals that a key component of a claim for co-

20   fiduciary liability is that defendants be fiduciaries of "the same plan." *See id.* § 1105(a) ("a fiduciary

21   with respect to a plan shall be liable for a breach … of another fiduciary … <u>with respect to the same</u>

22   <u>plan</u>" (emphasis added)); *LoPresti v. Ctigroup, Inc.*, No. 02-cv-6492(SJ), 2005 WL 195521, at *5

23   (E.D.N.Y. Jan. 18, 2005) (plaintiff must identify two or more fiduciaries "of the same plan" to state

24   claim for co-fiduciary liability). Plaintiffs admit, however, that each is a member of a <u>different</u> plan,

25   and nowhere in their Amended Complaint do Plaintiffs allege that more than one Defendant is a

26   fiduciary of the same plan. (*See* Am. Compl. ¶¶ 20–25); *LoPresti*, 2005 WL 195521, at *5

27   ────────────

28   [17] Hoy's § 503 claim fails for the additional reason that she has not plausibly pled that any claims for benefits
were <u>denied</u>. (*See* Section IV.A.1, *supra*; 29 U.S.C. § 1133(1) (plans must "provide adequate notice in writing
to any participant or beneficiary whose claim for benefits … <u>has been denied</u>" (emphasis added)).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  (dismissing co-fiduciary claim for failure to allege defendants were fiduciaries "of the same plan").

2  Even if Defendants were fiduciaries of "the same plan" for purposes of ERISA § 405,

3  Plaintiffs have not alleged facts to support such a claim. To assert a claim for co-fiduciary liability,

4  Plaintiffs must allege enough facts "to put each defendant on notice of what it is that he, she, or it

5  has done that allegedly gives rise to liability." *See In re McKesson HBOC, Inc. ERISA Litig.*, No.

6  C00-20030RMW, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002); *see also In re Syncor*

7  *ERISA Litig.*, 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004) (same). Here, Plaintiffs merely allege that

8  "[e]ach Defendant knowingly participated in" the other Defendants' breaches. (Am. Compl. ¶ 202.)

9  But this conclusory allegation lumps Defendants together, parrots the statutory language, and fails to

10  give each Defendant "fair notice of what the … claim is and the grounds upon which it rests." *See*

11  *Twombly*, 550 U.S. at 555 (alteration in original); *In re Syncor*, 351 F. Supp. 2d at 988 (dismissing

12  co-fiduciary claim because plaintiffs "provide[d] no facts to support" their conclusory allegations

13  that defendants "knew of the breaches, participated in the breaches, or made no effort to remedy

14  them"); *In re McKesson*, 2002 WL 31431588, at *17 (same when plaintiffs merely alleged that

15  defendants "either had knowledge of the fiduciary breaches … or … concealed relevant

16  information"). For this reason, Count III should be dismissed with prejudice.

17  **2.  Non-Fiduciary Participation Liability Is Inapplicable Here.**

18  Plaintiffs also allege in Count III that "to the extent Defendants are not deemed fiduciaries or

19  co-fiduciaries under ERISA," they are liable as "non-fiduciar[ies] that knowingly participated in a

20  breach of trust." (Am. Compl. ¶ 206.) A non-fiduciary, however, may not be held liable solely "for

21  participating in another's breach of fiduciary duty." *Landwehr v. DuPree*, 72 F.3d 726, 734 (9th Cir.

22  1995); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253-54 (1993) ("no [ERISA] provision

23  explicitly requires [nonfiduciaries] to avoid participation … in a fiduciary's breach of duty"); *Renfro*

24  *v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011) (same). Instead, non-fiduciary liability under

25  ERISA is limited to "nonfiduciaries who: (1) are 'parties' in interest' with respect to the plan … and

26  (2) engage in transactions prohibited by [section 406 of ERISA]." *Landwehr*, 72 F.3d at 733; *Harris*

27  *Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244-45 (2000).

28  Here, Plaintiffs do not allege that any of the Defendants is a "party in interest" that engaged

3:17-cv-00183-VC                               – 17 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

in a prohibited transaction, and instead merely assert that Defendants "knowingly participated in a breach of trust." (*See* Am. Compl. ¶ 206; *see also id.* ¶¶ 187–98 (alleging that Defendants violated their obligations under § 404 of ERISA, not § 406).) Count III, consequently, is foreclosed, and dismissal is warranted. *See Landwehr*, 72 F.3d at 733; *Renfro*, 671 F.3d at 325.

>   **D.    Count IV Should Be Dismissed Because Plaintiffs Fail To Allege That Defendants' Coverage Decisions Were Based On Plaintiffs' Sex.**

In Count III, Plaintiffs assert a claim for intentional sex discrimination under Section 1557 of ACA, which provides that:

> [A]n individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 … title IX of the Education Amendments of 1972 … the Age Discrimination Act of 1975 … or section 504 of the Rehabilitation Act of 1973 … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity ….

*See* 42 U.S.C. § 18116(a). Section 1557 also provides that "[t]he enforcement mechanisms provided for and available under . . . title IX" and the other referenced statutes "shall apply." *Id.* § 18116(b). Thus, analysis of Count III is governed by Title IX's framework. *See Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015).

"Title IX prohibits <u>intentional</u> discrimination." *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1120 (N.D. Cal. 2013) (emphasis added); *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (acknowledging same). To state a claim for sex discrimination under Title IX, therefore, a plaintiff must allege "that the defendant discriminated against … her *because of sex.*" *Doe v. Regents of Univ. of Cal.*, No. 2:15-cv-02478-SVW-JEM, 2016 WL 5515711, at *4 (C.D. Cal. July 25, 2016) (emphasis in original). Where, as here, a plaintiff does not plead facts supporting the inference that the plaintiff's sex "was a substantial or motivating factor for the defendant's actions," dismissal is required. *Id.* (internal quotation marks and citations omitted).

Plaintiffs allege only that "Plaintiffs and the members of the Class, who are necessarily all women, are being excluded from participation in, being denied the benefits of, and being subjected to discrimination by Defendants … on the basis of their sex." (*See* Am. Compl. ¶ 211.) Plaintiffs' boilerplate allegation of discrimination – which merely recites statutory language untethered to any factual support – does not give rise to a reasonable inference that Plaintiffs' gender motivated

Defendants' coverage decisions. *See Doe*, 2016 WL 5515711, at *4 (dismissing Title IX claim when the complaint "lack[ed] … factual allegations giving rise to a plausible inference that the [challenged conduct] was caused by gender bias"); *Lopez*, 5 F. Supp. 3d at 1122 (same). Accordingly, because Plaintiffs have pled no facts supporting their conclusory allegation that Defendants discriminated against them on the basis of sex, dismissal with prejudice is warranted.

**E.     ERISA Preempts Breach Of Contract And Unjust Enrichments Claims Asserted By Plaintiffs Condry, Hoy, Endicott, Bishop, And Barber In Counts V And VI.**

In Counts V and VI, Plaintiffs assert claims for breach of contract and unjust enrichment, respectively, contending that Defendants (1) breached the Plans by violating ACA, which Plaintiffs allege is incorporated by reference, and (2) were unjustly enriched by charging cost-shares to Plaintiffs for lactation services. (*See* Am. Compl. ¶¶ 219–220, 223.) The Court should dismiss these Counts as to the ERISA Plaintiffs – Condry, Hoy, Endicott, Bishop, and Barber.

ERISA preempts state-law causes of action that fall within ERISA's "comprehensive scheme of civil remedies." *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" is unequivocally barred. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *see also Groves v. Kaiser Found. Health Plan Inc.*, 32 F. Supp. 3d 1074, 1086 (N.D. Cal. 2014) (same). ERISA demands dismissal of state-law claims that serve as an "alternative enforcement mechanism" to ERISA's remedial framework. *Botsford v. BCBS of Mont., Inc.*, 314 F.3d 390, 398 n.44 (9th Cir. 2002) (internal quotation marks and citations omitted). Plaintiffs' breach of contract and unjust enrichment claims impermissibly provide an alternative enforcement mechanism to ERISA and even mirror Plaintiffs' allegations in Counts II and III.[18] ERISA prohibits Plaintiffs' efforts to supplement its comprehensive enforcement scheme. *See Cleghorn*, 408 F.3d at 1225-26 (dismissing state-law claims supplementing ERISA rights); *Serpa v. SBC Telecomm., Inc.*, 318 F. Supp. 2d 865, 871 (N.D. Cal. 2004) (same); *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 590 (6th Cir. 2016) (dismissing ACA-based state-law claim as duplicative of ERISA claims). The Court, therefore,

---

[18] *Compare, e.g.*, Am. Compl. ¶ 202 (alleging Defendants breached their fiduciary duties by "causing Plaintiffs … to wrongfully pay for Comprehensive Lactation Benefits"), *with id.* ¶ 223 (Defendants have been unjustly enriched by "shifting the cost" of ACA-mandated services to Plaintiffs).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   should dismiss Counts V and VI with prejudice as to Condry, Hoy, Endicott, Bishop, and Barber.

2      **F.      Counts V and VI Are Solely Based On ACA And Must Be Dismissed.**

3          Finally, the Court should dismiss Counts V and VI as to all Plaintiffs as impermissible

4   attempts to bypass Congressional intent. ACA has no private right of action. *See Mills v. BCBS of*

5   *Tenn., Inc.*, No. 3:15-cv-552-PLR-HBG, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017)

6   (dismissing ACA claim for lack of private right action). Instead, Congress entrusted enforcement

7   authority to the States and Departments of Health and Human Services, Labor, and the Treasury. *See*

8   *Korte v. Sibelius*, 735 F.3d 654, 669 (7th Cir. 2013). Where, as here, Congress has chosen not to

9   enact a private right of action, plaintiffs may not circumvent that decision by styling federal claims

10  as state-law causes of action. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1086 (8th Cir.

11  2012) (dismissing plaintiffs' state-law claim as attempt to "create a private right of action when the

12  legislature has not"); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (same).

13         Plaintiffs label Count V as "Violation of [ACA] through Incorporation by Reference in

14  Defendants' Plan Documents" and allege that they can seek to enforce ACA because the plans

15  reference "the preventive care provisions" of the statute. (*See* Am. Compl. ¶¶ 219–20.) Similarly,

16  Count VI alleges that Defendants have been unjustly enriched by (a) holding money Plaintiffs paid

17  for lactation services; (b) blocking Plaintiffs from receiving such services; and "(c) shifting the cost

18  of ACA-mandated … services to Plaintiffs." (*Id.* ¶ 223.) Plaintiffs do not identify a non-ACA basis

19  for either cause of action and simply repackage alleged ACA violations as state-law claims.

20  Accordingly, Counts V and VI are an "impermissible 'end run' around" ACA's lack of a private

21  right of action and should be dismissed. *See Grochowski*, 318 F.3d at 86.

22  **V.     CONCLUSION**

23         For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs'

24  Amended Complaint in its entirety and grant such other relief as the Court deems just and proper.

25  DATED:  April 14, 2017                      Reed Smith LLP

26                                                By:   */s/ Karen A. Braje*
                                                      Karen A. Braje
27                                                    Martin J. Bishop (admitted *pro hac vice*)
                                                      Rebecca R. Hanson (admitted *pro hac vice*)
28                                                    Attorneys for Defendants

REED SMITH LLP
A limited liability partnership formed in the State of Delaware