Kristen Law Sagafi (Bar No. 222249)
**TYCKO & ZAVAREEI LLP**
483 Ninth Street, Suite 200
Oakland, CA 94607
Phone: (510) 254-6808
Fax: (202) 973-0950
ksagafi@tzlegal.com

*Attorney for Plaintiffs, and Additional*
*Counsel for Plaintiffs identified in*
*Signature Block.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL CONDRY, JANCE HOY, CHRISTINE ENDICOTT, LAURA BISHOP, FELICITY BARBER, and RACHEL CARROLL on behalf of themselves and all others similarly situated, | Case Number: 3:17-cv-00183-VC |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |
| vs. | |
| UnitedHealth Group Inc.; UnitedHealthcare, Inc.; UnitedHealthcare Insurance Company; UnitedHealthcare Services, Inc.; and UMR, Inc., | |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     FACTS AND BACKGROUND .....................................................................2

        A.      Preventive Health Benefits ................................................................2

        B.      Comprehensive Lactation Benefits are a Covered Preventive Service.................3

        C.      Plaintiffs Were Wrongfully Denied Comprehensive Lactation Benefits ............4

III.    LEGAL STANDARDS ..................................................................................6

IV.     ARGUMENT ..................................................................................................6

        A.      Plaintiffs Sufficiently Allege that Defendants'
                Conduct Violates the ACA and Terms of the Plan Documents.........................6

        B.      Defendants' Attempt To Dismiss Count I Is Meritless.......................................11

                1.      Plaintiffs Condry, Hoy, Endicott, Bishop, and Barber
                        Have Alleged Breaches Of Fiduciary Duty Arising
                        From Defendants' Claims Review Process.............................................11

                2.      ERISA § 503 Applies To Defendants.......................................................14

        C.      Count III States A Claim ...................................................................................16

                1.      Defendants' Co-Fiduciary Liability........................................................16

                2.      Defendants Are Liable For
                        Participation In A Fiduciary's Breach ....................................................17

        D.      Plaintiffs Sufficiently Allege That
                Defendants' Conduct Violated Section 1557.....................................................18

        E.      The Complaint Alleges Viable Claims Under Counts V and VI ........................19

V.      CONCLUSION..............................................................................................20

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Acosta v. Pac. Enterprises*,
   950 F.2d 611 (9th Cir. 1991) .................................................................11, 14

4

5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................6

6

*Assoc. for L.A. Deputy Sheriffs v. Cnty. of L.A.*,
   648 F.3d 986 (9th Cir. 2011) ...................................................................6

7

8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................6

9

10

*Booton v. Lockheed Med. Ben. Plan*,
   110 F.3d 1461 (9th Cir. 1997) .................................................................12, 14

11

12

*Bush v. Liberty Life Assurance Co. of Boston*,
   130 F. Supp. 3d 1320 (N.D. Cal. 2015) ...................................................17, 18

13

*Christensen v. Harris Cnty*,
   529 U.S. 576 (2000).................................................................................10

14

15

*Gates v. United Health Grp. Inc.*,
   No. 11 CIV. 3487 KBF, 2012 WL 2953050 (S.D.N.Y. July 16, 2012)........15

16

17

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2nd Cir. 2003)......................................................................20

18

19

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000).................................................................................17, 18

20

*Landwehr v. DuPree*,
   72 F.3d 726 (9th Cir. 1995) ......................................................................18

21

22

*Lee v. ING Groep, N.V.*,
   829 F.3d 1158 (9th Cir. 2016) ..................................................................15

23

24

*Massachusetts Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985)..................................................................................15

25

*Medeiros v. Wells Fargo & Co. Long Term Disability Plan*,
   No. CV-14-01129-PHX-JZB, 2014 WL 6769190 (D. Ariz. Dec. 1, 2014)........15

26

27

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993)..................................................................................18

28

ii

*Moorestown Twp. Bd. of Educ. v. S.D.*,
   811 F. Supp. 2d 1057 (D.N.J. 2011) ..................................................................10

*Palmer v. Ill. Farmers Ins. Co.*,
   666 F.3d 1081 (8th Cir. 2012) ...........................................................................20

*Perez v. Brain*,
   No. 14-03911 JAK, 2015 WL 3505249 (C.D. Cal. Jan. 30, 2015)..........................18

*Phones Plus, Inc. v. The Hartford Fin. Servs. Grp., Inc.*,
   No. CIV. 3:06CV01835AVC, 2007 WL 3124733 (D. Conn. Oct. 23, 2007) .......................18

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
   No. CIV.A. 11-425 ES, 2012 WL 1135608 (D.N.J. Apr. 4, 2012) ........................15

*Raytheon Co. v. Hernandez*,
   540 U. S. 44 (2003)...........................................................................................19

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011).............................................................................18

*Ricci v. DeStefano*,
   557 U. S. 557 (2009).........................................................................................19

*Rollins v. Dignity Health*,
   830 F.3d 900 (9th Cir. 2016),
   *cert. granted on other grounds*, 137 S. Ct. 547 ................................................10

*Rumble v. Fairview Health Services*,
   No. 14-CV-2037, 2015 WL 1197415 (D. Minn. Mar. 16, 2015) ..........................18

*Russell v. Massachusetts Mut. Life Ins. Co.*,
   722 F.2d 482 (9th Cir. 1983),
   *rev'd on other grounds*, 473 U.S. 134, 105 S. Ct. 3085 (1985)............................14

*Salomaa v. Honda Long Term Disability Plan*,
   642 F.3d 666 (9th Cir. 2011) ........................................................................12, 14

*Scoles v. Intel Corp. Long Term Disability Benefit Plan*,
   657 F. App'x 667 (9th Cir. 2016) ......................................................................14

*SEPTA v. Gilead Sciences, Inc.*,
   102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015)......................................................18

*Solis v. Couturier*,
   No. 2:08CV02732-RRB-GGH, 2009 WL 1748724 (E.D. Cal. June 19, 2009) ....................17

iii

*Solis v. Tomco Auto Prod., Inc.*,
    No. CV1200618SJOAGRX, 2012 WL 12920838 (C.D. Cal. July 10, 2012) ..................16, 17

*Streit v. Matrix Absence Mgmt., Inc.*,
    No. 3:12-CV-01797-AC, 2014 WL 667535 (D. Or. Feb. 18, 2014) .......................................15


**STATUTES**

29 U.S.C. § 1002(1)(A) ...........................................................................................................2

29 U.S.C. § 1109 ...................................................................................................................16

29 U.S.C. § 1132(c) ...............................................................................................................15

42 U.S.C. § 300gg-13 ..............................................................................................................2

42 U.S.C § 18022(c)(3)(A) ......................................................................................................3

ERISA § 404, 29 U.S.C. § 1104 ..........................................................................11, 14, 15, 16

ERISA § 405(a), 29 U.S.C § 1105(a) ....................................................................................16

ERISA § 406, 29 U.S.C. § 1106 ............................................................................................17

ERISA § 502(a), 29 U.S.C. § 1132(a) ..............................................................................11, 15

ERISA § 503, 29 U.S.C. § 1133 .......................................................................................11, 14, 15

ERISA § 503's .......................................................................................................................14

ERISA Title I .........................................................................................................................17


**OTHER AUTHORITIES**

29 C.F.R. § 2560.503-1(f) ......................................................................................................12

29 C.F.R. § 2590.715-2713(a)(3)(ii) ....................................................................................7, 8

45 C.F.R. §156.23-(b)(2) .......................................................................................................11

75 Fed. Reg. 41726, 41738 (July 19, 2010) (codified at 26 CFR 54, 29 CFR 2590,
    45 CFR 147) .......................................................................................................................9

80 Fed. Reg. 41317, 41320 (July 14, 2015) (to be codified at 26 CFR 54.9815-
    2713, 29 CFR 2590.715-2713, and 45 CFR 147.130) ......................................................9

80 Fed. Reg. 41317, 41320 ...................................................................................9

81 Fed. Reg. 31375, 31439 (May 18, 2016) ..................................................19

v

Plaintiffs Rachel Condry, Jance Hoy, Christine Endicott, Laura Bishop, Felicity Barber, and Rachel Carroll (collectively, the "Plaintiffs") hereby oppose the Motion to Dismiss (Dkt. 48, "Motion" or "Memo") filed by Defendants UnitedHealth Group Inc. ("UnitedHealth Group"), UnitedHealthcare, Inc. ("UHC"), UnitedHealthcare Insurance Company ("UHC Insurance"), United Healthcare Services, Inc. ("UHC Services") and UMR, Inc. ("UMR") (collectively, "UnitedHealth" or "Defendants").

I.   **INTRODUCTION**

Defendants systemically fail to provide women statutorily and contractually required coverage for Comprehensive Lactation Benefits *i.e.*, breastfeeding support, supplies and counseling—a key preventive health benefit.[1]  In stark contrast to Defendants' identification of in-network providers of every other covered health benefit, Defendants do not identify or provide information about in-network trained providers of Comprehensive Lactation Benefits. As a result, women comprising the putative classes either forego or pay out-of-pocket for preventive services that are critical to their and their children's health and welfare, which services should have been covered at no-cost.

Securing Comprehensive Lactation Benefits from an in-network provider should not require a "needle in the haystack" search. Yet, as detailed in the Complaint and below, Defendants are playing that game with women who are trying to secure this critical and time-sensitive service. Defendants' Motion does not actually dispute their setup.  Instead, Defendants insinuate that they have providers in their network who can deliver these services but then contend that the burden is on the women to hunt down, out of the thousands of "network providers" such as RNs, OB/GYNs and Pediatricians, the providers who may be qualified to provide Comprehensive Lactation Benefits.

Not only do Defendants' positons eviscerate the coverage to which female plan participants are entitled contractually and as mandated by the ACA, but Defendants' contentions ignore (or demonstrate a fundamental misunderstanding about) the nature of this critical

---

[1] Unless otherwise indicated, capitalized and defined terms used herein have the same meaning as set forth in Plaintiffs' Amended Complaint [Dkt. No. 29] ("Complaint" or "Am. Compl. ¶___").

preventive health benefit, including that: (i) all RNs, OB/GYNs and Pediatricians *are not trained providers* of Comprehensive Lactation Benefits, and Defendants provide no way of identifying which, if any, of such providers have had any training to provide the services; (ii) the services are needed in the *postpartum, post-hospital discharge* time period; and (iii) there is an inherent, unalterable *time-sensitivity* during which lactation consultants need to be identified *and* the services delivered.

In other words, Defendants' concept of having a "network" is litigation posturing and a red herring. Defendants failed to establish the necessary infrastructure, policy and procedure to administer and provide insureds with Comprehensive Lactation Benefits as a preventive service as required by the ACA and plan documents. Defendants' Motion is an exercise in sophistry and requires an acceptance of their version of the "facts," which ignores the Complaint's allegations, the real-world experiences of insureds, the statutory provisions of the ACA, and the plan documents.  Accordingly, Defendants' Motion to Dismiss should be denied.

## II.    FACTS AND BACKGROUND

Defendants are insurers and/or administrators of non-grandfathered health care plans nationwide, including Employee Welfare Benefit plans as that term is defined in 29 U.S.C. § 1002(1)(A), and individual and family health care plans offered directly by Defendants or on an insurance exchange pursuant to the applicable provisions of the ACA ("ACA Exchanges").  All such Plans by their terms, and as mandated by the ACA, are required to cover certain preventive health services, including Comprehensive Lactation Benefits. Am. Compl. ¶¶13, 26-36.

### A.    Preventive Health Benefits.

Enacted in March 2010, a key initiative and directive of the ACA was that all individual and group health Plans would provide access to and coverage for preventive health care benefits because "too many Americans did not get the preventive care they need to stay healthy, avoid or delay the onset of disease, and reduce health care costs, [and,] [o]ften because of cost, Americans used preventive services at about half the recommended rate." *Id.* ¶3 (*quoting* statements by the Department of Health and Human Services ("HHS")).

Section § 2713 of the ACA, which is codified at 42 U.S.C. § 300gg-13, requires non-

grandfathered group health care plans and health insurers offering group or individual health insurance to provide coverage for a range of preventive services and "at a minimum provide coverage for and shall not impose any cost sharing requirements" for such services. Am. Compl. ¶63.  The term "cost-sharing" "in general" includes "deductibles, co-insurance, copayments, or similar charges; and any other expenditure required of an insured individual which is a qualified medical expense….with respect to essential health benefits covered under the plan." 42 U.S.C § 18022(c)(3)(A); Am. Compl. ¶64.

The ACA enumerates the categories of covered preventive health services which include: (1) items or services that have an "A" or "B" rating from the United States Preventive Services Task Force; (2) preventive care and screenings for infants, children and adolescents as provided for by the guidelines supported by the Health Resources and Services Administration ("HRSA"), a component of the HHS; and (3) preventive care and  screenings for women, also as provided by guidelines supported by the HRSA.  Am. Compl. ¶¶65-67.

**B.**    **Comprehensive Lactation Benefits are a Covered Preventive Service.**

On August 1, 2011, HHS adopted its HRSA Health Plan Guidelines for Women's Preventive Services ("HHS Guidelines"), which require access to and coverage for certain women's preventive services by most non-grandfathered health plans starting with the first plan or policy year beginning on or after August 1, 2012.  *Id.* ¶¶4, 62-70.  The HHS Guidelines, which were recommended by the independent Institute of Medicine ("IOM") and based on scientific evidence, ensure women's accessibility to a comprehensive set of preventive services, including health services related to breastfeeding support, supplies and counseling.  Under the HHS Guidelines, women must have access to comprehensive lactation support and counseling provided by a trained provider during pregnancy and/or in the postpartum period, as well as breastfeeding equipment.  *Id.* ¶¶5, 51-52, 63-70.  Accordingly, the ACA specifically recognized the need to address the vast and well-founded health benefits of breastfeeding for infants, children, and mothers, by expanding women's preventive services under the ACA to cover Comprehensive Lactation Benefits.  *Id.* ¶¶3-4, 43-56.

Furthermore, Defendants' health plans and plan documents set forth, in substantially the

3

same manner, that each health plan provides preventive care benefits for breastfeeding support, supplies and consultation.  *Id.* ¶¶79-82.

### C.    Plaintiffs Were Wrongfully Denied Comprehensive Lactation Benefits.

Defendants make speculative assertions and unsupported factual contentions about each Plaintiff's experience to distract the Court from the Complaint's allegations about Defendants' systemic and structural failures in providing coverage for Comprehensive Lactation Benefits. This approach is unpersuasive and irrelevant on a Motion to Dismiss.

At bottom, each Plaintiff was a participant in a non-grandfathered health plan insured or administered by Defendants, under which Comprehensive Lactation Benefits were to be covered as a preventive health benefit; each Plaintiff sought coverage for such benefits from Defendants; each Plaintiff was subjected to a myriad of uniform and unhelpful processes concerning such coverage; and each Plaintiff could not obtain timely and full coverage.  In sum, Plaintiffs were, among other things, denied coverage because of Defendants' structural failures, including: failing to identify qualified and trained in-network providers; not conveying any information (putting aside such information being timely conveyed) about their provider network; communicating misleading and wrong guidance through Defendants' customer care representatives and online provider search; impermissibly restricting coverage of the benefits to a hospital setting; and changing the purportedly applicable billing codes for such benefits. *Id.* ¶¶89-92, 96-147.

Defendants claim that they "offer in-network lactation counseling services," yet Defendants offer no supporting evidence that any such in-network providers exist or existed at the time the benefits were sought.  Memo at 11, l.3.  Rather, Defendants point to three of the six Plaintiffs' experiences – Plaintiffs Hoy, Endicott and Bishop –who received some form of lactation counseling from hospital-based consultants shortly after giving birth and while still admitted to the hospital. *Id.* at 3, n.2; 4, l.14; 5, l.11-13; 6, l.2-3; *see also* Am. Compl. ¶¶97, 117, 126-35. According to Defendants, such "coverage" ostensibly confirms that "Defendants have providers in their networks who offer lactation counseling services." Memo at 3, l.13-16. But, contrary to Defendants' position, upon discharge from the hospital, all three Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, 3:17-CV-00183-VC

encountered barriers when seeking additional services and were ultimately denied full coverage for Comprehensive Lactation Benefits.  Am. Compl. ¶¶97-135.

Using UHC Services' online provider search and various lactation-related keywords, Plaintiff Hoy was unable to identify in-network lactation providers in the metropolitan Philadelphia area. *Id.* ¶98. Then, when she called customer care on several occasions, UHC Services representatives stated that, (1) there were no in-network providers, and (2) that lactation services were limited to a hospital setting.  *Id.* ¶¶98-99; *see also* Exhibit G to Motion, Dkt. 48-7, Oct. 23, 2015 Letter at 7.  Meanwhile, Plaintiff Endicott tried, on several occasions, to secure services from the hospital-based consultant, who Defendants claim is "an in-network lactation consultant" (Memo at 3, n.2), but the consultant refused to see Plaintiff Endicott. Am. Compl. ¶117.  After several unsuccessful attempts to identify in-network lactation providers through Defendants' online provider portal, Plaintiff Bishop sought an out-patient consultation from the hospital-based consultant who, according to Defendants "is associated with an in-network hospital that provides lactation counseling services *even after* discharge" (Memo at 3, l.27-28) (emphasis added), *yet* Plaintiff Bishop was still fully denied any reimbursement for the post-discharge service. Am. Compl. ¶¶131-35.

Defendants employ a similar, disingenuous tactic to suggest that Plaintiffs Condry, Barber and Carroll had in-network providers available to each of them, but that they made a "personal choice[]" to utilize out-of-network providers.[2] Memo at 10, l.22-11.  Defendants refer to searches conducted on March 31, 2017 through Defendants' online provider portal as purported proof that the providers selected by Plaintiffs Condry, Baber and Carroll are not in Defendants' network.[3] *See id.* at 4, l.1-2 ("search for Condry's location (Oakland, CA) and plan indicate Schwerin is not in Defendants' network"); 6, n.7 ("search for Barber's plan and location (San Francisco, CA) demonstrates Caroline Kerherve is not in Defendants' network'); 7, n.8-9 ("search for Carroll's plan and location (Fort Collins, CO) indicates that Virginia

---

[2] A hospital-based lactation consultant was not a viable option for Plaintiff Condry since she had a home birth.  *See* Am. Compl. ¶89.
[3] *See* UnitedHealthcare, https://connect.werally.com.

Martin and A Nurtured Path, LLC are not in Defendants' network"; "noting that Cara Munson is not an in-network provider for Carroll's plan").  However, contrary to Defendants' skewed presentation, Defendants' online provider search does not list _any_ in-network providers of lactation services within 20 miles of Plaintiffs Condry and Barber, and none within 100 miles of Plaintiff Carroll.[4]

As a result of Defendants' wrongful conduct with respect to the failure to establish and identify in-network providers of Comprehensive Lactation Benefits, each named Plaintiff was compelled to seek lactation services from out-of-network providers for which they incurred out-of-pocket expenses that should have been covered by their respective Plans.

## III.    LEGAL STANDARDS

In adjudicating Defendants' Rule 12(b)(6) motion, the Court should "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." _Assoc. for L.A. Deputy Sheriffs v. Cnty. of L.A._, 648 F.3d 986, 991 (9th Cir. 2011).  The complaint need allege "only enough facts to state a claim to relief that is plausible on its face." _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009). Applying these standards here, there is no basis to dismiss Plaintiffs' claims.

## IV.    ARGUMENT

### A.    Plaintiffs Sufficiently Allege that Defendants' Conduct Violates the ACA and Terms of the Plan Documents.

Instead of addressing their utter failure since 2012 to establish policies, procedures and infrastructure to provide Comprehensive Lactation Benefits in accordance with the ACA and plan documents, Defendants argue that they did not need to "create a separate network" or "maintain a separate list" of lactation consultants (Memo at 10-13).

---

[4] _Id._ Lactation-related searches done on April 27-28, 2017, using the same geographic locations that Defendants used and based on Plaintiffs Hoy, Endicott and Bishop's plans, returned the following message: "We're sorry, your search doesn't match any of our doctors. Please try updating your location or adjusting your search filters within Refine Results."

The ACA and the plan documents require Defendants to provide coverage and administer covered benefits for "trained provider[s]" of "[c]omprehensive lactation support"[5] and for "provider[s] *who can provide* [the] item or service."[6]  It is obvious that only Defendants, not the insureds, can and thus must identify such in-network providers.  Indeed, Defendants readily identify in-network providers for other covered benefits through their provider directory, on-line search tools and inform insureds that the means to access such in-network provider information is through the Defendants' website and customer care center (via phone, email, social media, messaging, etc.).[7]

Fundamentally, Defendants' argument concedes that they refuse to identify the professed in-network trained providers of Comprehensive Lactation Benefits and/or Defendants cannot do so because they do not actually know who are those in-network trained providers.  Either way, Defendants' failure to provide for and identify in-network lactation consultants has the direct and immediate consequence of denying women no-cost preventive benefit coverage in contravention of the ACA, ERISA and plan documents' coverage requirements.  Plaintiffs state viable claims and Defendants' Motion must be denied.

Further, contrary to Defendants' assertion, the Complaint does not admit that Defendants have "providers in their general provider networks who offer lactation counseling services"

---

[5] *See, e.g.,* Exhibit E to Motion, Dkt. 48-5 at 52, "**Breastfeeding Support, Supplies and Counseling** in conjunction with each birth. Comprehensive lactation support and counseling, by a trained provider during pregnancy and/or in the postpartum period…."

[6] 29 C.F.R. § 2590.715-2713(a)(3)(ii), referencing network providers "who can provide" the preventive care service.

[7] *See, e.g.,* Hoy's Benefit Booklet, Ex. A to Motion, Dkt. 48-1 at 13 ("…**www.myuhc.com**, UnitedHealthcare's consumer website, contains a directory of health care professionals and facilities in UnitedHealthcare's Network. While Network status may change from time to time, **www.myuhc.com** has the most current source of Network information. Use **www.myuhc.com** to search for Physicians available in your Plan. . .To verify a provider's status or request a provider directory, you can call UnitedHealthcare at the toll-free number on your ID card or log onto **www.myuhc.com**."). Substantially similar references appear in each Plaintiff's Benefit Booklet: Condry, Ex. B to Motion, Dkt. 48-2 at 36; Endicott, Ex.C to Motion, Dkt. 48-3, at 28; Barber, Ex. D to Motion, Dkt. 48-4 at 28; Carroll, Ex. E to Motion, Dkt. 48-5 at 104; Bishop, Exhibit F to Motion, Dkt. 48-6 at 104 ("You can verify the provider's status by calling *Customer Care*. A directory of providers is available online at www.myuhc.com or by calling *Customer Care* at the telephone number on your ID card to request a copy).

7

(Memo at 10, l.14). Rather, certain Plaintiffs allege that while they may have received some form of lactation counseling during their hospital stay (Am. Compl. ¶¶97, 126), upon discharge from the hospital Defendants did not identify in-network trained providers of Comprehensive Lactation Benefits in the postpartum period.[8] *See, supra* at 4-6. Because of Defendants' failures, Plaintiffs and the members of the Classes who they represent were wrongly denied access to and full coverage for Comprehensive Lactation Benefits.  Am. Compl. ¶¶ 10-19, 83-87.

In addition, Defendants' effort to place the onus of their failures on the insureds is unpersuasive.  In mischaracterizing Plaintiffs' use of out-of-network providers as a "personal choice" (Memo at 10, l.22-11, l.3) (as if the women sought coverage for an elective procedure), rather than the direct offshoot of Defendants' failures, Defendants cite to 29 CFR § 2590.715-2713(a)(3)(i) for the proposition that cost-sharing is permitted if an insurer has an in-network "provider".  The illogic of Defendants' position, however, is glaring -- if Defendants did have trained providers in their network, then the ACA did not intend for Defendants to keep that information secret, so as to then be able to shift the costs of the otherwise no-cost preventive service to Plaintiffs and insureds.

On July 14, 2015, the IRS, the Employee Benefits Security Administration and the Health and Human Services Department published a Rule in the Federal Register entitled "Coverage of Certain Preventive Services Under the Affordable Care Act."  Section III of "Supplementary Information" in that Rule, titled "Out-of-Network Providers," notes that pursuant to July 2010 interim final regulations, an insurer was given two choices with respect to

---

[8]  Breastfeeding issues arise after hospital discharge, during which time it is critical for nursing mothers to establish a healthy milk supply. The first milk present at birth is called colostrum which is easily digested by the newborn and essential in boosting an infant's immune system. Colostrum, although present only in small amounts, provides concentrated and sufficient nutrition for a newborn until transition to mature milk occurs beginning between the second and sixth day after birth. This process is characterized by a significant increase in milk production volume occurring over approximately two weeks. During this time, inadequate milk production and/or breastfeeding problems put mothers and infants at risk, indicating that immediate intervention by a trained provider in Comprehensive Lactation Benefits is required to facilitate successful breastfeeding.  *See,*  http://www.lalecheleague.org/faq/colostrum.html; http://www.llli.org/faq/engorgement.html; Am. Compl. ¶¶57-59.

dealing with preventive services by out-of-network providers, but only if "a plan or health insurance coverage . . . <u>maintains a network of providers</u>": (a) not "to provide coverage" or (b) "impose cost sharing." 80 Fed. Reg. 41317, 41320 (July 14, 2015) (to be codified at 26 CFR 54.9815-2713, 29 CFR 2590.715-2713, and 45 CFR 147.130) (emphasis added). Those options evaporated if the insurer did not maintain and identify a network of providers that could perform the preventive services. The Final Rule, at §147.130(a)(3)(ii) "Coverage of preventive health services," provides:

> "If a plan or issuer that does not have in its network a provider who can provide [a particular recommended preventive service], the plan or issuer must cover the item or service when performed by an out-of-network provider, and may not impose cost sharing with respect to the preventive service."

80 Fed. Reg. 41317, 41320.[9]

Without the critical information about the network of trained providers being timely provided to insureds, Defendants cannot be found to have complied with the ACA and plan documents and cannot get the benefit of any cost-share. Indeed, the galling nature of Defendants' response to this issue is even more pronounced considering that some insured women cannot take on the financial risk of non-reimbursement or afford to pay out-of-pocket; those women, tragically, forego the preventive care to which they and their children are entitled.

The Complaint's allegations about Defendants' conduct, including Defendants' failure to provide in-network provider information to insureds and properly process the claims which result in a circumventing of the plan's and ACA's preventive service coverage requirements, are

---

[9] Further supporting the principle that an insured can only be subjected to any type of charge for preventive services performed by an out-of-network provider when the insured is presented with a "choice" of using an in-network provider for such services is the following excerpt from the Interim Final Rules Relating to Coverage of Preventive Services Under the ACA:

> "Plans and issuers negotiate allowed charges with in-network providers as a way to promote effective, efficient health care, and allowing differences in cost sharing in- and out-of-network enables plans to encourage use of in-network providers. Allowing zero cost sharing for out of network providers could reduce providers' incentives to participate in insurer networks. The Departments decided that permitting cost sharing for recommended preventive services provided by out-of-network providers is the appropriate option to preserve choice of providers for individuals, while avoiding potentially larger increases in costs and transfers as well as potentially lower quality care."

75 Fed. Reg. 41726, 41738 (July 19, 2010) (codified at 26 CFR 54, 29 CFR 2590, 45 CFR 147).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, 3:17-CV-00183-VC

sufficient bases standing alone on which to deny Defendants' Motion.  Moreover, though, the Complaint's allegations and the sound logic of Plaintiffs' position, are affirmed by the "FAQs" which were jointly prepared and issued by the Department of Labor, HHS, and the Treasury Department (the "Departments"), <u>which are the federal entities specifically charged with establishing regulations and guidelines to  implement the ACA</u>. Am. Compl. ¶71.  As Defendants concede, "[t]he FAQ affirmatively states that 'plans and issuers [are] required to provide a list of the lactation counseling providers within the network.'" Memo at 11, l.23-25.  Notwithstanding that concession, Defendants try to downplay the import of the FAQ and contend that it should not be given deference. *Id.* at 12.[10]  Plaintiffs' position, as confirmed by the FAQ, is straightforward and inescapably logical: without such list, in-network trained providers of Comprehensive Lactation Benefits simply cannot be identified in a timely fashion by the insureds via the Defendants' provider directory, Defendants' online portal, or by Defendants' customer service department.  Thus, to advocate as Defendants do (Memo at 12, l.10-11) that there is "flawed and unpersuasive" reasoning underlying Plaintiffs' and the FAQ's position is frivolous, bordering on being reprehensible. *Cf., Rollins*, 830 F.3d at 910 (holding that the interpretation contained in the Memorandum was unpersuasive because it was "based on an obvious misreading of the statutory text, and it ignores the relevant legislative history.")[11]

---

[10]  Defendants' cases are inapposite, each characterized by mere agency utterances that obviously contrast with the comprehensive FAQ's generated by three federal departments to effectuate the ACA's preventive health care mandates: In *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1075 (D.N.J. 2011) (Memo at 12), the court held that the New Jersey Department of Education's FAQs were not entitled to deference because of the attendant disclaimer that "the FAQ's are not 'legal advice or state directives'" and there was "no basis to determine the thoroughness of the agency's consideration or the validity of its reasoning." In *Christensen v. Harris Cnty*, 529 U.S. 576, 587 (2000), the court did not give deference to the Department of Labor's opinion letter interpreting a regulation that was not ambiguous. In *Rollins v. Dignity Health*, 830 F.3d 900, 909 (9th Cir. 2016), *cert. granted on other grounds*, 137 S. Ct. 547 (Mem.), the court declined to defer to the view expressed by an Internal Revenue Service General Counsel Memorandum which was prepared in response to a request for legal advice and included a disclaimer that it was "not to be relied upon or otherwise cited as precedent by taxpayers."

[11]  Defendants' flip-flop on the import of the FAQs also undermines their argument. *See* Memo at 13, n.15. Defendants' point concerning IBCLCs is beside the point, but again, Defendants fail to read and give meaning to the full text of the ACA's implementing regulation which provides

In fact, Defendants' CFR citations (Memo at 12, l.10-24) undermine their characterization of the Plaintiffs' position and the FAQ.  Defendants cite to 45 C.F.R. §156.23-(b)(2) which requires a provider directory that includes information on "**speciality**….**and any institutional affiliations",** the precise information about the providers of Comprehensive Lactation Benefits that Defendants admit they omit.  The reason for the requirement is obvious: without such information insureds would not know which of all "medical" providers or "MDs" were able to provide the needed service and do so as an in-network provider.  The result here, of course, is Defendants' circumvention of preventive service coverage requirements.

### B. <u>Defendants' Attempt To Dismiss Count I Is Meritless.</u>

Count I asserts that Defendants have breached their general fiduciary duties of loyalty and prudence under ERISA § 404, 29 U.S.C. § 1104, as well as the specific duty to provide adequate notice in writing to participants and beneficiaries under ERISA § 503, 29 U.S.C. § 1133, by failing to provide a timely, full and fair review of their Comprehensive Lactation Benefits claims.  Am. Compl. ¶¶16-17, 187-93.  As such, Plaintiffs seek relief on behalf of themselves and the Claims Review Class under ERISA § 502(a), 29 U.S.C. § 1132(a).  *Id.* ¶188. Defendants make two arguments to dismiss Count I: first, that Defendants complied with the claims procedures, and second, that ERISA § 503 does not apply to them as claims administrators.  Both arguments are without merit.

#### 1. **Plaintiffs Condry, Hoy, Endicott, Bishop, and Barber Have Alleged Breaches Of Fiduciary Duty Arising From Defendants' Claims Review Process**

Aside from a general duty to disclose "where the interests of the beneficiaries so require," *Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991), ERISA § 503 specifically requires that participants and beneficiaries be informed in writing of the precise reasons for their claim denials and a reasonable opportunity for a "full and fair review" of those denials.  As Judge Kozinski explained two decades ago:

---

that the Plan has to have in its network not just any "provider" but a provider who can perform comprehensive lactation counseling services. *Id.* Defendants do not identify those providers and that constitutes a failure to provide coverage and administration for the required benefit.

> In simple English, what [29 C.F.R. § 2560.503-1(f), the regulation promulgated in accordance with ERISA § 503] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it. There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters.

*Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).  In other words, an "administrator does not do its duty under [ERISA] by saying merely 'we are not persuaded' or 'your evidence is insufficient[,]' [n]or does it do its duty by elaborating upon its negative answer with meaningless medical mumbo jumbo.'" *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 680 (9th Cir. 2011).  As alleged in the Complaint, Defendants resorted to bureaucratic "mumbo jumbo" for denying or refusing to even consider the claims and appeals of Plaintiffs Condry, Hoy, Endicott, Bishop, and Barber:

- **Plaintiff Condry:** Plaintiff Condry requested and received a gap exception for her claim, and pursuant to UHC Insurance's instructions, sought to extend the gap exception prior to its expiration. Am. Compl. ¶ 93.  Plaintiff Condry was then informed that an extension would not be granted, but that UHC Insurance would contact her for more information so that she could make a new application. *Id.*  Plaintiff Condry did not receive any further contact from UHC Insurance, and her claim was later denied on the basis that, among other things, she had Medicare coverage, even though she did not. *Id.* ¶94. When Plaintiff Condry appealed, UHC Insurance again denied coverage, expressly recognizing, but finding it irrelevant, that UHC Insurance had failed to timely inform Plaintiff Condry that her gap exception had been denied.  Moreover, contrary to the 30-day appeal response deadline outlined in the plan documents and represented by UHC Insurance, Plaintiff Condry received a decision letter *65* days after her appeal was acknowledged. *Id.* ¶¶93-94.

- **Plaintiff Hoy:** Plaintiff Hoy followed UHC Services' instructions to file an appeal for her denial-of-coverage on two different occasions, only to be informed—both times via identical form letters—that her appeals did not qualify as "appeals."  Moreover, in violation of the claim response deadlines in the plan documents and represented by UHC Services, Plaintiff Hoy has yet to receive a substantive response to her appeals. *Id.* ¶¶101-07, 113-14.

- **Plaintiff Endicott:** UHC Services informed Plaintiff Endicott that her claims were denied because the diagnosis codes had changed and her medical providers refused to use the new codes. *Id.* ¶ 122.  Further, contradicting prior communications from UHC Services informing Plaintiff Endicott that UHC Services had asked her medical provider for more information, Plaintiff Endicott was told that it was her responsibility to request further information from her medical provider. *Id.* ¶¶122-23.

- **Plaintiff Bishop:** UHC Services rejected Plaintiff Bishop's claim on the basis that she used

12

the wrong diagnosis codes, but when she submitted her written appeal as instructed by UHC Services, Plaintiff Bishop's appeal was rejected on the basis that her claim was "already reviewed and processed." *Id.* ¶132. When Plaintiff Bishop re-submitted her claim in accordance with the instructions from her appeal denial, her claim was again denied, this time on the basis that the service was already reported, the service did not qualify as a "medical supply," and that UHC Services ostensibly asked for but did not receive more information from Plaintiff Bishop's provider. *Id.* ¶¶133-34.

- **Plaintiff Barber:** UHC Insurance denied Plaintiff Barber's claim on the basis that the lactation services she received were "non-medical" and/or a "personal item," and her appeal was summarily denied on the basis that her claim denial was "processed correctly." *Id.* ¶¶138-39.

Ironically, the Kafkaesque responses that Plaintiffs Condry, Hoy, Endicott, and Bishop received from Defendants when filing and appealing their claims mirror Defendants' first argument.

Defendants' position is that their superficial efforts with respect to the plans' claims and appeals process are sufficient to satisfy their fiduciary duty to provide a "meaningful dialogue" and a "full and fair review." Memo at 14-15. That is incorrect. Defendants forestalled Plaintiff Hoy from initiating an appeal on the premise that Plaintiff Hoy's denied claims did not qualify for appeal. According to Defendants, Plaintiff Hoy's claims were not eligible for appeal because, "[o]nly denied claims can be appealed" (Memo at 15, l.1) (emphasis in original) and claims processed, even erroneously, as out-of-network do not result in a denied claim. *Id.* at 14, l.24-15, l.11. Such a constructive denial for out-of-network claims prevented Defendants from discharging the fiduciary duties owed to Plaintiff Hoy. Moreover, Defendants actually did not comply with the plan's 30-day response deadline—Plaintiff Hoy has yet to receive a substantive response to her appeals, the first of which was filed on October 23, 2015. *Id.* ¶114. Likewise, in alleging that Plaintiff Condry did not "properly" request an extension for her gap exception, Defendants did not fulfill their duties when Plaintiff Condry contacted UHC Insurance requesting an extension, but UHC Insurance instructed her to await further instructions that she never received. *Id.* ¶¶93-94. And, as with Plaintiff Hoy, Defendants also did not comply with the 30-day appeal response deadline—Plaintiff Condry was notified that her appeal was denied *65* days after UHC Insurance acknowledged her appeal. Nor did Defendants satisfy their fiduciary duties with respect to Plaintiffs Endicott, Bishop, and Barber, as Defendants argue in a conclusory footnote, by "promptly" (Memo at 14, n.16) conveying unfavorable claim

determinations which contained contradictory and nonsensical messages.  In sum, Defendants'
contentions do not begin to address the substance of Plaintiffs' allegations that Defendants'
administration of the claim and appeals process created a bureaucratic twilight zone for
Plaintiffs and other plan participants and beneficiaries.[12]

## 2. ERISA § 503 Applies To Defendants

Next, Defendants argue that they cannot be liable for violation ERISA § 503 because
ERISA § 503's "plain language . . . only imposes duties on 'employee benefit plans,' not claims
administrators" like Defendants.  Memo at 15-16.  This argument is without merit and fails to
address Defendants' general fiduciary duties under ERISA § 404.

First, with respect to ERISA § 503, Count I asserts that Defendants breached their
fiduciary duties by causing the plans to violate ERISA § 503 through Defendants' failure to
provide a timely, full and fair review of Plaintiffs' Comprehensive Lactation Benefits claims.
Am. Compl. ¶¶191, 193.[13]  This cause of action is expressly recognized in the Ninth Circuit.
*See Russell v. Massachusetts Mut. Life Ins. Co.*, 722 F.2d 482, 485, 489 (9th Cir. 1983), *rev'd
on other grounds*, 473 U.S. 134, 105 S. Ct. 3085 (1985) (holding that "a cause of action exists

---

[12] Such an arbitrary and capricious administration of reviewing claims and appeals flies in the
face of an ERISA fiduciary's general duty to disclose and ERISA § 503's specific requirements.
*See, e.g.*, *Scoles v. Intel Corp. Long Term Disability Benefit Plan*, 657 F. App'x 667, 670 (9th
Cir. 2016) (finding no "meaningful dialogue" where claims administrator "left unclear the
precise reasons for denial, the standard by which [the claims administrator was reviewing the
claim], and the threshold to qualify" for that claimed benefit); *Salomaa v. Honda Long Term
Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011) (finding the claims administrator's "continual
shifting of the plan's grounds for denial" an indication of abuse of discretion); *Booton*, 110 F.3d
at 1463 (finding the claims administrator's "conduct in handing Booton's claim did not comply
with this common sense standard" because the claim and appeal rejection letters "denied
benefits without a rational explanation, without even acknowledging Booton's argument"
justifying that her claim was covered, and failed to ask for motion information that would have
helped substantiated Booton's claim even though Booton's providers "were ready and able to
explain their work").  In short, Defendants' administration of the claims and appeals review
process came nothing close to "civilized," and Defendants' attempt to argue otherwise fails.
[13] Such claim cannot be asserted against the plans, which, as "employee benefit plans,"
Defendants impliedly insist is the proper defendant, because the Plans are not fiduciaries.  *See
Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991) (a "plan covered by ERISA
cannot, as an entity, act as a fiduciary with respect to its own assets," so "a plan itself cannot be
sued for breach of fiduciary duty").

under ERISA for a breach of fiduciary duty based on an alleged improper or untimely handling of benefit claims," including "processing claims in a perfunctory or arbitrary manner or in bad faith, or without the exercise of reasonable care," citing ERISA § 503)[14]; *Medeiros v. Wells Fargo & Co. Long Term Disability Plan*, No. CV-14-01129-PHX-JZB, 2014 WL 6769190, at *4 (D. Ariz. Dec. 1, 2014) (finding plaintiff "pled a distinct claim for relief under § 1132(a)(3)" in seeking equitable relief against claims administrator for "alleged procedural violations by [claims administrator] in administrating [p]laintiff's claim").[15]

Moreover, aside from ERISA § 503, Plaintiffs also allege that Defendants' failure to provide a timely, full and fair review of Plaintiffs' Comprehensive Lactation Benefits claims violates Defendants' general fiduciary duty to disclose under ERISA § 404.  Am. Compl. ¶¶189-90, 192.  As fiduciaries, Defendants' violations of their general fiduciary duties subject

---

[14]  The Supreme Court reversed the Ninth Circuit's other holding that such liability includes extra-contractual damages, finding that ERISA only entitles the participant or beneficiary to "recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract . . . to enjoin the plan administrator from improperly refusing to pay benefits in the future . . . removal of the fiduciary," and attorney's fees.  *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 147 (1985).

[15]  Defendants rely mainly on *Lee v. ING Groep, N.V.*, 829 F.3d 1158 (9th Cir. 2016) for the proposition that ERISA § 503 does not apply to them.  But in *Lee*, the Ninth Circuit simply held that "a failure to follow claims procedures imposed on benefit plans . . . does not give rise to **penalties under 29 U.S.C. § 1132(c)(1)** for plan administrators." *Lee*, 829 F.3d at 1162 (emphasis added).  Here, Plaintiffs are requesting relief from Defendants' actions that led the Plans to violate ERISA § 503 for breach of fiduciary duties under 29 U.S.C. § 1132(a), not penalties under 29 U.S.C. § 1132(c)(1).  As with *Lee*, Defendants' other authorities provide no support.  In *Gates v. United Health Grp. Inc.*, No. 11 CIV. 3487 KBF, 2012 WL 2953050 (S.D.N.Y. July 16, 2012), the plaintiff asserted that the defendants violated ERISA § 503 without framing it as a breach of fiduciary duty claim.  *See Gates*, 2012 WL 2953050, at *11 ("[b]reach of fiduciary duty, however, is a distinct claim—one which plaintiff does not assert against any of the United Defendants").  The same was true in *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. CIV.A. 11-425 ES, 2012 WL 1135608 (D.N.J. Apr. 4, 2012).  *See Premier Health Ctr., P.C.*, 2012 WL 1135608, at *13 ("[p]laintiffs have not provided any evidence or argument explaining why § 503 imposes liability on Health Net of New York").  As for *Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-CV-01797-AC, 2014 WL 667535 (D. Or. Feb. 18, 2014), the court there found, as in *Lee*, that violations of ERISA § 503 do not give rise to penalties for plan administrators under 29 U.S.C. § 1132(c).  *See Streit*, 2014 WL 667535, at *6.  *Streit* and *Lee* are inapplicable here since Plaintiffs are not requesting penalties under 29 U.S.C. § 1132(c)(1).  Indeed, courts in the Ninth Circuit routinely acknowledge ERISA § 503 claims against claims administrators, as reflected in *Medeiros* and discussed *supra*.

15

them to "equitable or remedial relief as the court may deem appropriate, including removal." 29 U.S.C. § 1109.  Defendants' failure to address the ERISA § 404 prong of their fiduciary liability is fatal to this argument.

**C.**   **Count III States A Claim.**

**1.**   **Defendants' Co-Fiduciary Liability**

ERISA § 405(a), 29 U.S.C § 1105(a) imposes liability upon a co-fiduciary:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C.A. § 1105(a); Am. Compl. ¶201.  Here, each of the relevant fiduciaries of Plaintiffs' plans had, under the ACA and ERISA, a duty to ensure that their plans provided Comprehensive Lactation Benefits to the plan participants and beneficiaries and that benefit claims receive a "full and fair review" in a timely manner.  Am. Compl. ¶¶2, 62-78, 189-91.  But Plaintiffs' plans did not provide such benefits and adequate claims review processes, and, as such, the relevant plan fiduciaries breached their fiduciary duties.  *Id.* ¶¶192-98.

Among other things, at all relevant times, Defendants knew that there was no network of lactation consultants (and were indeed responsible for the lack of a network) and knew that their procedures for processing and reviewing Comprehensive Lactation Benefits claims were inconsistent and misleading (Defendants were responsible for this as well).  *Id.* ¶¶83-87.  So to the extent Defendants are not deemed the fiduciaries directly responsible for those breaches, Defendants would still be liable as co-fiduciaries because they knowingly participated and/or took no steps to prevent such breaches despite knowing of those breaches.  *Id.* ¶¶199-204.[16]

---

[16] Plaintiffs are not obligated to join the Plans' other fiduciaries because "ERISA fiduciaries may be held jointly and severally liable for a breach by a co-fiduciary," so Plaintiffs may receive complete relief from Defendants "even where the other fiduciaries are absent from the litigation." *Solis v. Tomco Auto Prod., Inc.*, No. CV1200618SJOAGRX, 2012 WL 12920838, at

1    Thus, the Complaint has pled a claim for co-fiduciary liability.  *See, e.g.*, *Bush v. Liberty Life*

2    *Assurance Co. of Boston*, 130 F. Supp. 3d 1320, 1328 (N.D. Cal. 2015) (co-fiduciary liability

3    adequately pled against insurer for providing "deficient plan documents to plan administrators

4    with the knowledge that those administrators would distribute said documents to members").

5        Defendants appear to misconstrue the nature of Count III, arguing that the co-fiduciary

6    liability claim fails because there are no allegations that any two Defendants are co-fiduciaries

7    of the same plan.  Memo at 16-17.  This argument, of course, does not address the basis for

8    Plaintiffs' co-fiduciary claim, and, as such, should be rejected.

9            **2.      Defendants Are Liable For Participation In A Fiduciary's Breach**

10       ERISA also imposes liability on non-fiduciaries for knowingly participating in a

11   fiduciary's breach of its duties.  *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,

12   530 U.S. 238, 248 (2000) ("§ 502(a)(3) admits of no limit . . . on the universe of possible

13   defendants . . . on redressing the '*act or practice* which violates any provision of [ERISA Title

14   I]") (emphasis and brackets in original).  Under this theory, even if only one Defendant is a

15   fiduciary with respect to a particular plan, the rest of the Defendants would be jointly liable as

16   participating non-fiduciaries.  Alternatively, even if no Defendant was deemed a fiduciary with

17   respect to the plans, they would still be jointly and severally liable for the relevant fiduciary's

18   breach.  Am. Compl. ¶206.[17]

19       Defendants argue, however, that they are precluded from liability as non-fiduciaries

20   because there are no allegations that the Defendants are "parties in interest" engaged in

21   transactions prohibited under ERISA § 406, 29 U.S.C. § 1106.  But the "parties in interest" and

22   prohibited transaction elements that Defendants invoke were expressly rejected in *Harris Trust*,

23   which Defendants' ironically cite.  *See Solis v. Couturier*, No. 2:08CV02732-RRB-GGH, 2009

24   WL 1748724, at *4 (E.D. Cal. June 19, 2009) ("to the extent that Ninth Circuit case law

25

26   ───────────────────────────

27   *3 (C.D. Cal. July 10, 2012) (citing *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207
     F.3d 1143, 1157 (9th Cir. 2000)).

28   [17] As with the co-fiduciary claim, Plaintiffs are not obligated to join the plans' fiduciaries
     because of the doctrine of joint and several liability.  *Cf. Solis*, 2012 WL 12920838, at *3.

17

previously limited the universe of § 502(a)(3) or § 502(a)(5) defendants to fiduciaries and parties in interest (the Court is unconvinced that it did so), that case law has been superseded by *Harris Trust*"); *see, e.g.*, *Bush*, 130 F. Supp. 3d at 1330 (a "non-fiduciary may be liable for knowingly participating in the administrator's breach" of the duty to provide adequate disclosures) (citing *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206 (9th Cir. 2011)); *see Phones Plus, Inc. v. The Hartford Fin. Servs. Grp., Inc.*, No. CIV. 3:06CV01835AVC, 2007 WL 3124733, at *5 (D. Conn. Oct. 23, 2007) ("the elements for [a non-fiduciary's knowing participation] claim are '1) breach by a fiduciary of a duty owed to plaintiff, 2) defendant's knowing participation in the breach, and 3) damages'") (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281-82 (2d Cir. 1992)).[18] As such, Defendants' argument has no merit.

### D.  Plaintiffs Sufficiently Allege That Defendants' Conduct Violated Section 1557.

Defendants' only basis for arguing that Court IV should be dismissed is that Plaintiffs fail to allege that Defendants' coverage decisions were based on Plaintiffs' sex (Memo at 18) for which argument Defendants' rely on *SEPTA v. Gilead Sciences, Inc.,* 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015).  However, Defendants' reliance on *SEPTA* is inaccurate.

Subsequent to *SEPTA*, the Office for Civil Rights (OCR), Office of the Secretary HHS, issued the underline final rule (81 FR 31375) implementing Section 1557 of the ACA ("Final Rule"), which rejects the *SEPTA* holding and Defendants' position, and instead adopts the holding in *Rumble v. Fairview Health Services*, No. 14-CV-2037, 2015 WL 1197415 (D. Minn. Mar. 16, 2015) (which the *SEPTA* Court had declined to follow):

> Comment: Many commenters requested that OCR clarify that all enforcement mechanisms available under the statutes listed in Section 1557 are available to each Section 1557 plaintiff, regardless of the plaintiff's protected class.…

---

[18] Besides *Harris Trust*, which defeats their argument, Defendants also rely on *Landwehr v. DuPree*, 72 F.3d 726 (9th Cir. 1995), *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), and *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011).  Both *Landwehr* and *Mertens* predate *Harris Trust*, and *Renfro*, "which is not Ninth Circuit precedent," based its interpretation on "earlier Third Circuit cases and a pre-*Harris Trust* Supreme Court case, *Mertens*".  *Perez v. Brain*, No. 14-03911 JAK, 2015 WL 3505249, at *12 n.11 (C.D. Cal. Jan. 30, 2015)).

The commenters primarily rely on reasoning in *Rumble v. Fairview Health Services*, in which the U.S. District Court for the District of Minnesota discussed the standards to be applied to Section 1557 private right of action claims and stated: "It appears Congress intended to create a new, health-specific, anti-discrimination cause of action that is subject to a singular standard, regardless of plaintiff's protected class status. Reading Section 1557 otherwise would lead to an illogical result, as different enforcement mechanisms and standards would apply to a Section 1557 plaintiff depending on whether plaintiff's claim is based on her race, sex, age, or disability. For example, it would not make sense for a Section 1557 plaintiff claiming race discrimination to be barred from bringing a claim using a disparate impact theory but then allow a Section 1557 plaintiff alleging disability discrimination to do so."

Similarly, many commenters requested that the regulation clarify that a private right of action exists for disparate impact claims, arguing, like commenters discussed above, that all enforcement mechanisms should be available to all Section 1557 complainants. A few commenters requested that the availability of a private right of action be addressed in the final rule itself, rather than in the preamble.

*Response*: **OCR interprets Section 1557 as authorizing a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the legislation.**

81 Fed. Reg. 31375, 31439 (May 18, 2016) (emphasis added).

Accordingly, the Final Rule authorizes a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the ACA (45 CFR 92; 81 FR 31375). Therefore, for Count IV and Plaintiffs' Section 1557 claim, Defendants are wrong that Plaintiffs can only allege "intentional" discrimination, discrimination "*because of sex*" and "gender motivated coverage decisions" to sufficiently state a Section 1557 claim (*see* Memo at 18-19). Instead, Plaintiffs can also allege facts demonstrating disparate impact, based on the effects of Defendants' practice, and allege that such practice is unlawful irrespective of motivation or intent. *See Raytheon Co. v. Hernandez*, 540 U. S. 44, 52-53 (2003); *see also Ricci v. DeStefano*, 557 U. S. 557, 578 (2009). Plaintiffs have sufficiently alleged that Defendants' conduct with respect to providing and administrating benefits and coverage for Comprehensive Lactation Benefits as a preventive service has a discriminatory and disparate impact on women in violation of Section 1557. *See, e.g.,* Am. Compl. ¶¶2, 8, 11, fn. 2, 60-61, 83-87, 148-161.

### E.   The Complaint Alleges Viable Claims Under Counts V and VI.

Defendants' arguments and case law (Memo at 20) concerning the availability of state law claims to Plaintiffs and that no private right of action exists under the ACA are misplaced.

19

In *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1084, 1086 (8th Cir. 2012), relied on by Defendants (Memo at 20), the Eighth Circuit specifically stated that the plaintiff's breach of contract claims, which challenged the defendant car insurer's failure to take a premium reduction for antitheft protection devices, arose under and were to "be considered in the context of Minnesota's comprehensive regulatory scheme," including that the regulations "allowed insureds to challenge their rates and seek remedies."  Under those circumstances, the *Palmer* court, which was presiding over the matter based on diversity jurisdiction, declined to depart from the "Minnesota courts' reluctance to intervene in the administrative scheme of enforcement." *Id.*  Unlike the "Minnesota's comprehensive regulatory scheme," the ACA does not have an analogous mechanism giving insureds the opportunity to enforce the ACA.

Similarly, in *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 85 (2nd Cir. 2003), which Defendants also rely upon (Memo at 20), state-law claims were not available to plaintiffs who sought compensation pursuant to the Davis-Bacon Act ("DBA"), which requires that laborers working on federally funded construction projects be paid not less than the wages set forth in the wage schedules contained in the DBA. State-law claims were not available because governmental administrative remedies were available under the DBA to plaintiffs to enforce such wage schedules. *Id.* at 85-86.  Here, there is no analogous ACA enforcement mechanism.

Accordingly, Counts V and VI are not, as Defendants seek to have this Court hold, impermissible attempts to bypass Congressional intent of the ACA.  Importantly, Counts V and VI assert viable claims and seek important protections and remedies on behalf of insureds, like Plaintiff Carroll, who are non-ERISA plan participants, who have been denied their contractual and just entitlement to Comprehensive Lactation Benefits.[19]

## V.   **CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

---

[19] At this time, Plaintiffs Condry, Hoy, Endicott, Bishop and Barber will not seek relief pursuant to Counts V and VI of the Complaint (*see, e.g., Memo*, Section E at 19).  However, Plaintiff Carroll, who is not insured under a plan governed by ERISA, and therefore, was not the subject of the arguments made in Defendants' Memo, Section E at 19, asserts claims on behalf of herself and the Class under Counts V and VI.

1  **DATED**:  May 8, 2017

2                                    **CHIMICLES & TIKELLIS LLP**

3

4                              By: */s/ Kimberly Donaldson Smith*_____
                               Nicholas E. Chimicles (admitted *pro hac vice*)
5                              Kimberly Donaldson Smith (admitted *pro hac vice*)
                               Stephanie E. Saunders (admitted *pro hac vice*)
6                              CHIMICLES & TIKELLIS LLP
7                              361 W. Lancaster Avenue
                               Haverford, PA 19041
8                              (610) 642-8500
9                              NEC@Chimicles.com
                               KMD@Chimicles.com
10                             SES@Chimicles.com

11                             Marc A. Goldich (admitted *pro hac vice*)
12                             Noah Axler (to seek admission *pro hac vice*)
                               **AXLER GOLDICH LLC**
13                             1520 Locust Street
                               Suite 301
14                             Philadelphia, PA 19102
                               Phone: (267) 534-7400
15                             Fax: (267) 534-7407
16                             mgoldich@axgolaw.com
                               naxler@axgolaw.com
17

18                             James E. Miller (CA Bar No. 262553*)*
                               Laurie Rubinow (to seek admission *pro hac vice*)
19                             **SHEPHERD, FINKELMAN, MILLER AND
                               SHAH, LLP**
20                             65 Main Street
                               Chester, CT 06412
21                             Phone: (860) 526-1100
22                             Fax: (866) 300-7367
                               jmiller@sfmslaw.com
23                             lrubinow@sfmslaw.com

24                             Jonathan W. Cuneo (to seek admission *pro hac vice*)
25                             Pamela B. Gilbert (to seek admission *pro hac vice*)
                               Matthew E. Miller (to seek admission *pro hac vice*)
26                             Katherine Van Dyck (to seek admission *pro hac vice*)
27                             **CUNEO GILBERT & LADUCA, LLP**
                               4725 Wisconsin Ave. NW, Suite 200
28                             Washington, DC 20016

1

Phone: (202) 789-3960
Fax: (202) 789-1813

2

3

Attorneys for Plaintiffs and the Proposed Classes

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT, 3:17-CV-00183-VC

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I, Kimberly M. Donaldson Smith, hereby certify that on May 8, 2017, I

3

electronically filed a true and correct copy of the foregoing Plaintiffs' Memorandum of

4

Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint

5

with the Clerk of the Court using the CM/ECF system. Participants in the case who are

6

registered CM/ECF users will be served by the CM/ECF system.

7

8

9

/s/  *Kimberly M. Donaldson Smith*
Kimberly M. Donaldson Smith

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28