Karen A. Braje (SBN 193900)
Email: kbraje@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Martin J. Bishop (admitted *pro hac vice*)
Email: mbishop@reedsmith.com
Rebecca R. Hanson (admitted *pro hac vice*)
Email: rhanson@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6400

Attorneys for Defendants UnitedHealth Group Inc., UnitedHealthcare, Inc., UnitedHealthcare Insurance Company, United Healthcare Services, Inc., and UMR, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RACHEL CONDRY, JANCE HOY, CHRISTINE ENDICOTT, LAURA BISHOP, FELICITY BARBER, and RACHEL CARROLL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITEDHEALTH GROUP INC., UNITEDHEALTHCARE, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICES, INC., and UMR, INC.,<br><br>Defendants. | Case No.: 3:17-cv-00183-VC<br><br>**DEFENDANTS UNITEDHEALTH GROUP INC., UNITEDHEALTHCARE, INC., UNITEDHEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICES, INC., AND UMR, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**Date:** July 27, 2017<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 4<br><br>Compl. Filed: Jan. 13, 2017<br><br>Honorable Vincent Chhabria |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. Plaintiffs Have Not Alleged A Plausible Violation Of ACA In Counts II–VI. ........................................................................................................................ 1

        1. Plaintiffs Concede That ACA Does Not Require Defendants To Maintain A Separate Network And Fail To Establish That Defendants Lack In-Network Providers Who Offer Lactation Counseling Services On An Out-Patient Basis. ............................................... 2

        2. Neither ACA Nor Its Supporting Regulations Require Defendants To Maintain A Separate List Of In-Network Lactation Counseling Providers. ........................................................................................................ 3

    B. Plaintiffs Do Not State A Claim In Count I. ............................................................ 5

        1. Plaintiffs Have Not Alleged A Breach Of Plaintiffs' Plan Documents. ................................................................................................. 6

        2. Section 503 Of ERISA Does Not Apply To Defendants. .............................. 8

    C. Count III Does Not State A Cause Of Action. ......................................................... 9

        1. Plaintiffs' Response Does Not Save Their Co-Fiduciary Claim. .................. 9

        2. Non-Fiduciary Participation Liability Is Inapplicable Here. ....................... 10

    D. The Court Should Reject Plaintiffs' Supposed Disparate Impact Claim In Count IV ................................................................................................................ 11

    E. Counts V and VI Are Solely Based On ACA And Must Be Dismissed. ................ 11

III. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Booton v. Lockheed Medical Benefit Plan*,
 110 F.3d 1461 (9th Cir. 1997) ...................................................................................................7

*Broad Street Surgical Ctr., LLC v. UnitedHealth Group, Inc.*,
 Civ. No. 11-2775, 2012 WL 762498 (D.N.J. Mar. 6, 2012)..........................................................7

*Bush v. Liberty Life Assurance Co. of Boston*,
 130 F. Supp. 3d 1320 (N.D. Cal. 2015) ....................................................................................9

*Carpenter v. Pfeil*,
 617 Fed. App'x 658 (9th Cir. 2015) ........................................................................................10

*Cyr v. Reliance Standard Life Ins. Co.*,
 642 F.3d 1202 (9th Cir. 2011) ................................................................................................10

*Davidson v. Hewlett-Packard Co.*,
 No. 5:16-cv-01928-EJD, 2017 WL 106398 (N.D. Cal. Jan. 11, 2017) ..........................................10

*Delacruz v. State Bar of Cal.*,
 No. 5:14-CV-05336-EJD, 2015 WL 5697365 (N.D. Cal. Sept. 29, 2015).......................................3

*Escobar v. Lynch*,
 846 F.3d 1019 (9th Cir. 2017) ..................................................................................................4

*Gates v. United Health Group Inc.*,
 No. 11 Civ. 3487 (KBF), 2012 WL 2953050 (S.D.N.Y. July 16, 2012) ..........................................8

*Gomez v. Quicken Loans, Inc.*,
 629 Fed. App'x 799 (9th Cir. 2015) ........................................................................................11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
 534 U.S. 204 (2002)..................................................................................................................4

*Grochowski v. Phoenix Constr.*,
 318 F.3d 80 (2d Cir. 2003).....................................................................................................12

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
 530 U.S. 238 (2000)................................................................................................................10

*In re Anthem, Inc. Data Breach Litig.*,
 No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ....................................12

*In re Facebook Internet Tracking Litig.*,
 140 F. Supp. 3d 922 (N.D. Cal. 2015) ......................................................................................3

*In re McKesson HBOC, Inc. ERISA Litig.*,
   No. C00-20030RMW, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ........................................9

*Korte v. Sebelius*,
   735 F.3d 654 (7th Cir. 2013) ................................................................................................12

*Lamie v. U.S. Tr.*,
   540 U.S. 526 (2004).................................................................................................................5

*Landwehr v. DuPree*,
   72 F.3d 726 (9th Cir. 1995) ...................................................................................................10

*Lee v. ING Groep, N.V.*,
   829 F.3d 1158 (9th Cir. 2016) .................................................................................................8

*LoPresti v. Ctigroup, Inc.*,
   No. 02-cv-6492(SJ), 2005 WL 195521 (E.D.N.Y. Jan. 18, 2005) ..................................................9

*LYMS, Inc. v. Millimaki*,
   No. 08-CV-1210-GPC-NLS, 2013 WL 1147534 (S.D. Cal. Mar. 19, 2013) ..............................8, 9

*Palmer v. Ill. Farmers Ins. Co.*,
   666 F.3d 1081 (8th Cir. 2012) ...............................................................................................12

*Personal Elec. Transports, Inc. v. Office of U.S. Tr.*,
   313 Fed. App'x 51 (9th Cir. 2009) .......................................................................................2, 9

*Powers v. AT&T*,
   No. 15-cv-01024-JSC, 2015 WL 5188714 (N.D. Cal. Sept. 4, 2015) ...........................................7

*Premier Health Center, P.C. v. UnitedHealth Group*,
   No. 11-425 (ES), 2012 WL 1135608 (D.N.J. Apr. 4, 2012)........................................................8

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011)..................................................................................................10

*Rollins v. Dignity Health*,
   830 F.3d 900 (9th Cir. 2016) ...................................................................................................4

*Salomaa v. Honda Long Term Disability Plan*,
   642 F.3d 666 (9th Cir. 2011) ...................................................................................................7

*Scoles v. Intel Corp. Long Term Disability Benefit Plan*,
   657 Fed. App'x 667 (9th Cir. 2016) .........................................................................................7

*Shenzhen Tech. Co. v. Altec Lansing, LLC*,
   No. 3:12-cv-2188-GPC-BGS, 2013 WL 6145553 (S.D. Cal. Nov. 21, 2013) .........................9, 11

*Solis v. Couturier*,
   2:08-cv-02732-RRB-GGH, 2009 WL 1748724 (E.D. Cal. June 19, 2009)................................10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Steelman v. Prudential Ins. Co. of Am.*,
    No. S-06-2746, 2007 WL 1080656 (E.D. Cal. Apr. 4, 2007) ........................................................ 7

*Streit v. Matrix Absence Mgmt., Inc.*,
    No. 3:12-cv-01797-AC, 2014 WL 667535 (D. Or. Feb. 18, 2014) ................................................ 8

*Thomas v. San Francisco Hous. Auth.*,
    No. 3:16-CV-03819-CRB, 2017 WL 878064 (N.D. Cal. Mar. 6, 2017) ...................................... 11

**Statutes**

29 U.S.C. § 1132(a)(3) ............................................................................................................................ 8

42 U.S.C. § 300gg-13(a)(4) ............................................................................................................... 1, 5

42 U.S.C. § 18022(c)(3)(A) ................................................................................................................... 1

**Regulations**

28 C.F.R. § 79.51(s) ............................................................................................................................... 5

29 C.F.R. § 2590.715-2713(a)(3)(ii) ..................................................................................................... 1

42 C.F.R. § 412.96(c)(3) ........................................................................................................................ 5

45 C.F.R. § 156.230(b)(2) ...................................................................................................................... 4

75 Fed. Reg. 41726 (July 19, 2010) ...................................................................................................... 4

80 Fed. Reg. 41318 (July 14, 2015) ...................................................................................................... 4

81 Fed. Reg. 31376 (May 18, 2016) .................................................................................................... 11

**Other Authorities**

Accreditation Council for Graduate Medical Education, http://www.acgme.org/What-
    We-Do/Overview# ......................................................................................................................... 5

American Board of Medical Specialties, Specialty and Subspecialty Certificates,
    http://www.abms.org/member-boards/specialty-subspecialty-certificates/ .................................. 5

UnitedHealthcare, https://connect.werally.com ................................................................................... 3

## I. INTRODUCTION

Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss illustrates why the Amended Complaint cannot withstand a challenge under Federal Rule of Civil Procedure 12(b)(6).[1] Rather than address the applicable statutory text that forms the foundation of Plaintiffs' claims, Plaintiffs rely on a supposed spirit and intent of the law, and seek to impose requirements on Defendants that are untethered to the text of ACA and its supporting regulations. Plaintiffs also make statements about Defendants' conduct that are unsupported by the actual facts pled in the Amended Complaint. That Plaintiffs do so largely without citation to supporting legal authority only further demonstrates the meritless nature of the present lawsuit. Because Plaintiffs have not pled a plausible violation of ACA, and their claims suffer from numerous previously identified additional defects, the Court should bring this litigation to a close and dismiss Plaintiffs' Amended Complaint in its entirety.

## II. ARGUMENT

### A. Plaintiffs Have Not Alleged A Plausible Violation Of ACA In Counts II–VI.

The crux of Plaintiffs' claims in Counts II through VI is that Defendants violated ACA by (1) not creating a separate network of lactation counseling providers yet nevertheless imposing cost-shares on out-of-network services; and (2) erecting administrative barriers to access to lactation counseling services, such as failing to maintain a separate list of providers in Defendants' general provider networks who offer such services. (*See* Dkt. 29 ("Am. Compl.") ¶¶ 84(A), 84(D)–(E), 85–86.) As explained in detail in Defendants' Motion to Dismiss, however, ACA does not require Defendants to create a separate network of lactation counseling providers, or to maintain a list of such providers who are within Defendants' networks. (*See* Dkt. 48 ("Motion to Dismiss") at 9–14.) Rather, ACA only prohibits cost-sharing if a plan does not have lactation counseling providers in its general provider network.[2] *See* 29 C.F.R. § 2590.715-2713(a)(3)(ii). Plaintiffs plead themselves out

---

[1] Capitalized terms carry the meanings attributed to them in Defendants' Motion to Dismiss.

[2] Throughout their Response, Plaintiffs state that ACA requires Defendants to provide coverage for lactation counseling services at "no cost." (*See, e.g.*, Dkt. 59 at 1, 7, 8.) Plaintiffs are wrong. ACA requires plans and insurers to cover such services at no cost-share, meaning without the application of "deductibles, co-insurance, copayments, or similar charges." *See* 42 U.S.C. §§ 300gg-13(a)(4), 18022(c)(3)(A).

of court because they admit that Defendants have providers in their general provider networks who offer lactation counseling services. (*See, e.g.*, Am. Compl. ¶ 97 (admitting that Hoy accessed lactation counseling services from a hospital-based lactation consultant); *id*. ¶ 117 (admitting that Endicott located an in-network provider of lactation counseling services at Hartford Hospital <u>after</u> she had been discharged from the hospital).) As a result, Counts II through VI should be dismissed.

### 1. Plaintiffs Concede That ACA Does Not Require Defendants To Maintain A Separate Network And Fail To Establish That Defendants Lack In-Network Providers Who Offer Lactation Counseling Services On An Out-Patient Basis.

Plaintiffs do not respond to Defendants' argument that ACA does not require Defendants to create a separate network of lactation counseling providers and, therefore, concede it. *See Personal Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 Fed. App'x 51, 52 (9th Cir. 2009) (failure to respond to argument raised in motion to dismiss results in waiver). Plaintiffs take issue with the proposition that Defendants have in-network providers of lactation counseling services, contending "that while [Plaintiffs] may have received some form of lactation counseling during their hospital stay," Defendants lack in-network providers who can offer such services "in the postpartum period." (*See* Dkt. 59 ("Response") at 8.) But even the most liberal reading of the Amended Complaint does not establish that Defendants lack in-network providers who offer lactation counseling services on an out-patient basis – a necessary prerequisite to all of Plaintiffs' claims.

The only plausible inference to be drawn from the facts pled in the Amended Complaint is that Plaintiffs made personal choices to obtain lactation counseling services from providers outside of Defendants' networks. Specifically, Endicott acknowledges that she located an in-network provider of lactation counseling services at Hartford Hospital <u>after</u> she had been discharged from the hospital. (*See* Am. Compl. ¶ 117; *see also* Response at 5 (noting that "Endicott tried … to secure services from the hospital-based consultant" and that the in-network provider determined that Endicott did not require care).) Bishop opted to see an in-network provider on a private-patient basis, precluding the services from being billed through the in-network practice and ensuring that they would be covered as out-of-network benefits. (*See* Am. Compl. ¶ 130.) Hoy limited her searches for in-network providers to "lactation consultants," thereby excluding providers who offer lactation

counseling services in other out-patient settings.[3] (*See* Motion to Dismiss, Ex. G (Hoy's 12/29/2015 letter), Dkt. 48-7, at 15/28); *see also* FAQ at Q.3 (services can be performed by "another provider type acting within the scope of his or her license or certification"). Notably, Condry, Barber, and Carroll made no attempt to find in-network providers of lactation counseling services. (*See* Am. Compl. ¶¶ 89, 91 (Condry accepted a referral to an out-of-network lactation consultant, making no effort to locate an in-network provider, and continued to seek out-of-network services after her initial claim was denied); ¶ 136 (Barber, similar); ¶ 141 (Carroll, similar).) Plaintiffs' allegations, therefore, do not establish that Defendants lack in-network providers of out-patient lactation counseling services. The Amended Complaint merely suggests that Plaintiffs did not do much to find them, which is insufficient to state a viable claim. *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (plaintiffs' "allegations d[id] not suffice to 'nudge' their … claim[s] … from conceivable to plausible"); *Delacruz v. State Bar of Cal.*, No. 5:14-CV-05336-EJD, 2015 WL 5697365, at *6 (N.D. Cal. Sept. 29, 2015) (same).

### 2. Neither ACA Nor Its Supporting Regulations Require Defendants To Maintain A Separate List Of In-Network Lactation Counseling Providers.

Plaintiffs also argue extensively that the policies underlying ACA require Defendants to maintain a list of in-network lactation counseling providers.[4] (*See, e.g.*, Response at 8 ("[I]f Defendants did have trained providers in their network, then … ACA did not intend for Defendants

---

[3] Plaintiffs misstate the Amended Complaint's allegations when they contend that a customer service representative told Hoy that "there were no in-network providers" of lactation counseling services and "that lactation services were limited to a hospital setting." (*See* Response at 5.) The Amended Complaint alleges that a customer service representative informed Hoy "that UHC Services would not cover the out-of-network services" and that "outpatient lactation services were not necessarily required to be covered by … ACA." (Am. Compl. ¶ 99.) Additionally, the Court should disregard Plaintiffs' claim that searches performed in April 2017 on Defendants' website indicate that Defendants lack in-network providers of lactation counseling services for Hoy's, Endicott's, and Bishop's plans. (*See* Response at 6 n.4.) These alleged searches are not part of the Amended Complaint, and Plaintiffs do not disclose the search terms they used, so as to give rise to any plausible inference regarding the composition of Defendants' provider networks. As noted in Defendants' Motion, Hoy only searched the term "lactation consultant" on Defendants' website, clearly failing to attempt to locate other provider types, such as pediatricians or OB/GYNs who may offer the service. (*See* Motion to Dismiss at 4.)

[4] Contrary to Plaintiffs' assertion, Defendants do not "concede[] that they refuse to identify" in-network providers of lactation counseling services. (*See* Response at 7.) Members and insureds may access a list of in-network providers through Defendants' online provider portal, among other locations. *See* UnitedHealthcare, https://connect.werally.com (last visited May 16, 2017).

to keep that information secret.").) "[V]ague notions of a statute's basic purpose are ... inadequate to overcome the words of its text." *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220 (2002). Plaintiffs do not and cannot point to a single statute or regulation that supports their reading of ACA. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 80 Fed. Reg. 41318, 41335 (July 14, 2015) (cited in Response at 9) (merely noting, like ACA's supporting regulations, that "if the plan or issuer does not have in its network a provider … the plan or issuer must cover the item or service when performed by an out-of-network provider" without cost-sharing); Interim Final Rules Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 41726, 41738 (July 19, 2010) (cited in Response at 9 n.9) (providing rationale for permitting cost-sharing with respect to out-of-network services).

Plaintiffs' only support for their theory that Defendants are required to maintain a separate list of in-network lactation counseling providers is the FAQ, but they fail to cite any cases in which a court accorded deference to an administrative pronouncement under similar circumstances. (*See* Response at 10.) Instead, Plaintiffs incorrectly maintain that "Defendants' cases are inapposite, each characterized by mere agency utterances that obviously contrast with the comprehensive FAQ[]." (*Id.* at 10 n.10.) The cases cited in the Motion compel the conclusion that no deference is owed to the FAQ because the regulations upon which it relies do not support a conclusion that a list of lactation counseling providers is required, and the FAQ seeks to add a requirement to ACA without grounding its supplementation in the complex and detailed statutory and regulatory scheme. *See Escobar v. Lynch*, 846 F.3d 1019, 1025–26 (9th Cir. 2017) (sources cited in support of agency's position did not corroborate its conclusion); *Rollins v. Dignity Health*, 830 F.3d 900, 910 (9th Cir. 2016) (agency interpretation based on a "misreading of the statutory text").

Plaintiffs seize upon one regulation cited by the FAQ, which requires specified insurers to "publish an up-to-date, accurate, and complete provider directory, including information on which providers are accepting new patients, the provider's location, contact information, <u>specialty</u>, medical group, and any institutional affiliations." *See* 45 C.F.R. § 156.230(b)(2) (emphasis added). According to Plaintiffs, the word "specialty" in the regulation requires Defendants to identify in-network lactation counseling providers. "Specialty," however, means board certification by one of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the major medical accreditation organizations, and none of these organizations recognize lactation counseling as a "specialty." *See* 28 C.F.R. § 79.51(s) ("Relevant specialties include: family practice, internal medicine, pathology, preventive medicine, radiology, surgery, and thoracic surgery … as listed by the American Board of Medical Specialties." (emphasis added)); 42 C.F.R. § 412.96(c)(3) (requiring that "[m]ore than 50 percent of the hospital's active medical staff are specialists who meet one of the following conditions: (i) [a]re certified as specialists by one of the Member Boards of the American Board of Medical Specialties or the Advisory Board of Osteopathic Specialists; (ii) [h]ave completed the current training requirements for admission to the certification examination of one of the Member Boards of the American Board of Medical Specialties or the Advisory Board of Osteopathic Specialists; [or] (iii) [h]ave successfully completed a residency program in a medical specialty accredited by the Accreditation Council of Graduate Medical Education or the American Osteopathic Association" (emphasis added)); American Board of Medical Specialties, Specialty and Subspecialty Certificates, http://www.abms.org/member-boards/specialty-subspecialty-certificates/ (last visited May 12, 2017); Accreditation Council for Graduate Medical Education, http://www.acgme.org/What-We-Do/Overview# (last visited May 12, 2017).

In the end, ACA did not reassign to Defendants a patient's obligation to locate healthcare providers.[5] *See* 42 U.S.C. § 300gg-13(a)(4) (simply requiring coverage without cost-sharing). Plaintiffs' unsupported statements regarding the burden on members and insureds and ACA's intent do not justify departing from the plain language of the statute, and the Court should dismiss Counts II through VI. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004) (only Congress can amend a statute).

### B.  Plaintiffs Do Not State A Claim In Count I.

Dismissal is also required with respect to Count I, which alleges that Defendants violated (1) the terms of Plaintiffs' plan documents and (2) § 503 of ERISA when they "fail[ed] to provide timely and substantive responses to requests for out-of-network benefits and/or appeals to denials of" such requests. (Am. Compl. ¶¶ 192–93.) Plaintiffs have not plausibly alleged that Defendants breached any plan terms, and § 503 of ERISA does not apply to claims administrators like

---

[5] Plaintiffs offer no support for their erroneous statement that Defendants identify "in-network providers of every … covered health benefit" besides lactation counseling services. (*See* Response at 1.)

3:17-cv-00183-VC — 5 —
DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants. (*See* Motion to Dismiss at 14–16.) Count I, therefore, should be dismissed in its entirety.

### 1.     Plaintiffs Have Not Alleged A Breach Of Plaintiffs' Plan Documents.

Plaintiffs assert in their Response that UnitedHealthcare, Inc. ("UHC") breached its fiduciary duty to comply with the terms of Hoy's plan by (1) "forestall[ing] … Hoy from initiating an appeal on the premise that [her] denied claims did not qualify for appeal," and (2) failing to "comply with the plan's [thirty]-day response deadline" for responding to appeals. (Response at 13.) But only denied claims can be appealed under Hoy's plan, (*see* Motion to Dismiss, Ex. A (Hoy's Benefit Booklet), Dkt. 48-1, at 71), and Hoy merely alleges she participated in telephone calls with UHC representatives on September 9 and October 22, 2015. (*See* Am. Compl. ¶¶ 98, 101.) Because neither of these calls constitutes a claim for benefits under Hoy's plan, the Amended Complaint lacks any plausible allegations of a claim denial upon which an "appeal" could be based. (*See* Motion to Dismiss, Ex. A (Hoy's Benefit Booklet), Dkt. 48-1, at 69 (claims must be submitted in writing).) Moreover, even if Hoy's October 23 and December 29, 2015 letters to UHC constituted appeals (they did not), UHC complied with the time frames for Post-Service claims by notifying Hoy that her claims were incomplete within thirty days. (*See id.* at 74 (thirty-day response time); Am. Compl. ¶¶ 103, 107 (discussing November 17, 2015 and January 11, 2016 letters from UHC).)

Plaintiffs also misstate the allegations of the Amended Complaint when they assert that "Defendants did not fulfill their duties when … Condry contacted [UnitedHealthcare Insurance Company ("UHC Insurance")] requesting an extension" of her gap exception, and "UHC Insurance instructed her to await further instructions that she never received." (*See* Response at 13.) The Amended Complaint alleges that Condry's <u>provider</u> contacted UHC Insurance the day before the gap exception expired, and that a UHC Insurance representative informed Condry's provider that a new application would have to be filed. (*See* Am. Compl. ¶ 93.) Neither Condry nor her provider filed a new application, and the gap exception expired. (*Id.*) Condry's home birth claim, therefore, was correctly processed as an out-of-network service, rather than at the in-network level of benefits. (*Id.* ¶ 94.) Plaintiffs offer no explanation as to why the processing of Condry's gap exception was

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"untimely" or otherwise deviated from the terms of her plan.[6]

Lastly, Plaintiffs do not plead any information about the terms of the plans for Endicott, Bishop, or Barber, precluding Plaintiffs from plausibly pleading that Defendants violated such terms. *Steelman v. Prudential Ins. Co. of Am.*, No. S-06-2746, 2007 WL 1080656, at *7 (E.D. Cal. Apr. 4, 2007) (dismissing ERISA claim when the plaintiff failed to plead the terms of the plan at issue, because an ERISA plaintiff "must identify a specific plan term that confers the benefit in question"); *Broad Street Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, Civ. No. 11-2775, 2012 WL 762498, at *15 (D.N.J. Mar. 6, 2012) (same). Plaintiffs misinterpret Defendants' argument, devoting the bulk of their Response to arguing that Defendants violated § 503 of ERISA by providing "Kafkaesque responses" to Endicott's, Bishop's, and Barber's claims for reimbursement. (*See* Response at 13.) But § 503 of ERISA does not apply to Defendants. (*See* Motion to Dismiss at 15–16.) Further, even if it did, Plaintiffs' allegations merely reflect a disagreement with, or misunderstanding of, the reasons given by Defendants for denying their claims. (*See, e.g.*, Response at 13–14 (arguing that Defendants "convey[ed] unfavorable claim determinations").) Such allegations "do not plausibly suggest that the plan failed to provide notice in writing explaining the specific reason for the denial in violation of … [§] 503."[7] *See Powers v. AT&T*, No. 15-cv-01024-JSC, 2015 WL 5188714, at *5

---

[6] Likewise, Plaintiffs' claim that Defendants denied Condry's claim for reimbursement for her home birth "on the basis that … she had Medicare coverage, even though she did not" is wrong. (*See* Response at 12.) Condry was told that because the services she received were out of network, the eligible amount was determined based off of the Medicare rate. (*See* Am. Compl. ¶ 94.) Condry's benefit booklet plainly informed her that this is how her out-of-network claims would be processed. (*See* Motion to Dismiss, Ex. B (Condry's Benefit Booklet), Dkt. 48-2, at 26–27 (noting that for "Non-Network Benefits, Eligible Expenses are based on" certain methodologies that may involve the Medicare rate for the service, depending on the particular circumstances of the member's claim).) Furthermore, Plaintiffs' statement that "Defendants … did not comply with the [thirty]-day appeal response deadline" with respect to Condry is meritless. (*See* Response at 13.) As will be established in discovery, Condry received two letters from UHC Insurance between June 2 and August 7, 2015, thereby complying with the terms of her plan.

[7] Not surprisingly, the cases cited by Plaintiffs are readily distinguishable from the case at hand because they involved perfunctory and illogical explanations for denying benefits, rather than sufficiently detailed denial letters with which Plaintiffs merely disagree. *Cf. Scoles v. Intel Corp. Long Term Disability Benefit Plan*, 657 Fed. App'x 667, 670 (9th Cir. 2016) (denial letter was "opaque and uninformative" and "left unclear the precise reasons for denial"); *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 680 (9th Cir. 2011) (denial based on absence of medical evidence failed to explain "what additional evidence [was] needed"); *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) (benefits denied "without a rational explanation" or "acknowledging [the plaintiffs] argument" for coverage). Here, Defendants offered enough information to put Plaintiffs on notice of why their claims were denied. (*See, e.g.*, Am. Compl. ¶ 121 (processing Endicott's claim under out-of-network benefits and explaining that "[y]our deductible has not been met. The amount shown is owed to your physician or health care provider."); ¶ 131 (denying Bishop's

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(N.D. Cal. Sept. 4, 2015) (dismissing § 503 claim based on the allegation "that the explanations … provided were not legitimate bases for denying [the plaintiff's] claim").

### 2. Section 503 Of ERISA Does Not Apply To Defendants.

Although conceding that ERISA § 503 only applies to "employee benefit plan[s]," Plaintiffs maintain that they have asserted a viable cause of action against Defendants, the claims administrators, because "Count I asserts that Defendants breached their fiduciary duties by causing the plans to violate ERISA § 503," rather than a stand-alone violation of § 503. (Response at 14.) Plaintiffs' argument fails.

To state a claim for breach of fiduciary duty, a plaintiff must allege that the defendant violated ERISA. *See* 29 U.S.C. § 1132(a)(3) ("[a] civil action may be brought" to challenge "any act or practice which violates any provision of this subchapter"); *see also LYMS, Inc. v. Millimaki*, No. 08-CV-1210-GPC-NLS, 2013 WL 1147534, at *9 (S.D. Cal. Mar. 19, 2013) (similar). Asserting a claim for breach of fiduciary duty, therefore, "does not relieve [a plaintiff] from having to establish an underlying violation of the statute." *See, e.g.*, *Gates v. United Health Group Inc.*, No. 11 Civ. 3487 (KBF), 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012). Because § 503 does not apply to Defendants, Plaintiffs have not plausibly pled an underlying violation of ERISA. *See id.* (rejecting argument that ERISA § 502(a)(3) allows a plaintiff to sue a claims administrator for alleged violations of § 503); *Premier Health Center, P.C. v. UnitedHealth Group*, No. 11-425 (ES), 2012 WL 1135608, at *13 (D.N.J. Apr. 4, 2012) (rejecting same argument because "[a]lthough § 502 provides the private right of action to bring a claim to recover benefits due, § 503 sets forth the basic requirements governing ERISA plans" (internal quotation marks and citations omitted)).[8] Likewise, Plaintiffs' generic reference to Defendants' purported "duty to disclose" under ERISA § 404, (*see*

---

claim as "not a reimbursable service" and noting that "[t]here may be a more appropriate CPT or HCPCS code that describes this service and/or the use of the modified or modifier combination is inappropriate").)

[8] Plaintiffs miss the point in attempting to distinguish *Lee v. ING Groep, N.V.*, 829 F.3d 1158 (9th Cir. 2016) and *Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC, 2014 WL 667535 (D. Or. Feb. 18, 2014). Those cases held that alleged violations of § 503 could not give rise to penalties against plan administrators under § 502(c), because § 503 only applies to "employee benefit plan[s]." *See Lee*, 829 F.3d at 1161; *Streit*, 2014 WL 667535, at *6. Similarly, here, Plaintiffs cannot assert a claim for breach of fiduciary duty against Defendants based on purported violations of § 503 – a statutory provision that does not apply to claims administrators.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Response at 15–16), does not change the fact that Plaintiffs have failed to plausibly plead a breach of any such duty. *See LYMS, Inc.*, 2013 WL 1147534, at *9 (a plaintiff must allege a breach of fiduciary responsibility to state a claim). Count I should be dismissed.

### C. Count III Does Not State A Cause Of Action.

#### 1. Plaintiffs' Response Does Not Save Their Co-Fiduciary Claim.

A key component of a claim for co-fiduciary liability under ERISA is that Plaintiffs identify two or more fiduciaries of "the same plan." (*See* Motion to Dismiss at 16.) Plaintiffs admit that each is a member of a different plan, precluding any Defendant from being held liable for the others' purported acts. (*See* Am. Compl. ¶¶ 20–25); *LoPresti v. Ctigroup, Inc.*, No. 02-cv-6492(SJ), 2005 WL 195521, at *5 (E.D.N.Y. Jan. 18, 2005) (dismissing co-fiduciary claim on this basis).

Plaintiffs suggest in their Response that the co-fiduciaries for purposes of this claim are not Defendants, but other unspecified fiduciaries of Plaintiffs' plans, who are not named as defendants here. (*See* Response at 16 n.16.) As a threshold matter, Plaintiffs did not advance this theory in the Amended Complaint, and the Court should reject it on this basis alone. (*See* Am. Compl. ¶ 202 ("Each Defendant knowingly participated in and enabled the other Defendants' breaches of fiduciary duty." (emphasis added)); *Shenzhen Tech. Co. v. Altec Lansing, LLC*, No. 3:12-cv-2188-GPC-BGS, 2013 WL 6145553, at *7 (S.D. Cal. Nov. 21, 2013) ("[A]n opposition brief is not the appropriate vehicle for … add[ing] claims beyond those challenged in the motion to dismiss."). Furthermore, even if they had, Plaintiffs have not offered – and have therefore waived – any opposition to Defendants' argument that Plaintiffs have failed to plead their co-fiduciary claim with the requisite particularity. (*See* Motion to Dismiss at 17; *Personal Elec. Transp., Inc.*, 313 Fed. App'x at 52 (failure to respond to argument raised in motion to dismiss results in waiver)). Plaintiffs' newfound theory that Defendants are liable as co-fiduciaries for the purported acts of other, unidentified fiduciaries falls well short of the federal pleading standards.[9] *See In re McKesson HBOC, Inc. ERISA*

---

[9] *Bush v. Liberty Life Assurance Co. of Boston*, 130 F. Supp. 3d 1320 (N.D. Cal. 2015) (cited in Response at 17), is distinguishable, because there, the plaintiff specifically alleged that the defendant enabled plan administrators to breach their fiduciary duties. *See id.* at 1328. Plaintiffs' allegations are not similarly particularized.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Litig.*, No. C00-20030RMW, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002) (to assert a claim for co-fiduciary liability, Plaintiffs must allege enough facts "to put each defendant on notice of what it … has done").

### 2. Non-Fiduciary Participation Liability Is Inapplicable Here.

Non-fiduciary liability under ERISA is limited to "nonfiduciaries who: (1) are 'parties in interest' with respect to the plan … and (2) engage in transactions prohibited by [section 406 of ERISA]." *Landwehr v. DuPree*, 72 F.3d 726, 733 (9th Cir. 1995). Neither the Amended Complaint nor Plaintiffs' Response alleges that any of the Defendants is a "party in interest" that engaged in a prohibited transaction. *See id.*; *see also Renfro v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011).

Plaintiffs boldly declare that the Ninth Circuit's limitations on non-fiduciary liability "were expressly rejected" by the Supreme Court in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). (*See* Response at 17.) But *Harris* merely held that a participant, beneficiary, or fiduciary of an ERISA plan may file suit "against a nonfiduciary 'party in interest' to a transaction barred by § 406(a)," *see Harris*, 530 U.S. at 241 – a holding entirely consistent with Ninth Circuit precedent. *See Landwehr*, 72 F.3d at 733 (the Ninth Circuit "allows actions for equitable relief against nonfiduciaries who … are 'parties in interest' … and … engage in [prohibited transactions]"). Plaintiffs fail to identify any binding Ninth Circuit case law that allows their claim to proceed.[10] The Court should reject Plaintiffs' attempts to rewrite Ninth Circuit law, and dismiss Plaintiffs' non-fiduciary claim with prejudice. *See Carpenter v. Pfeil*, 617 Fed. App'x 658, 661 (9th Cir. 2015) (recognizing that circuit precedent may be overruled only by the Ninth Circuit sitting en banc or by a panel of the Ninth Circuit if Supreme Court decisions have called a Ninth Circuit decision into doubt); *Davidson v. Hewlett-Packard Co.*, No. 5:16-cv-01928-EJD, 2017 WL 106398, at *2 (N.D. Cal. Jan. 11, 2017) (dismissing claim because the plaintiff "ha[d] not alleged that the [non-fiduciaries] engaged in [prohibited] transactions," making *Harris* inapplicable).

---

[10] The Ninth Circuit's decision in *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011), merely held "that potential defendants in actions brought under § 1132(a)(1)(B) should not be limited to plans and plan administrators." *Id.* at 1206. Similarly, Plaintiffs' reliance on *Solis v. Couturier*, 2:08-cv-02732-RRB-GGH, 2009 WL 1748724 (E.D. Cal. June 19, 2009), is misplaced, because that case involved a claim under § 502(a)(5), not § 502(a)(3). *Id.* at *4.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### D. The Court Should Reject Plaintiffs' Supposed Disparate Impact Claim In Count IV.

Plaintiffs' boilerplate allegation of discrimination does not give rise to a plausible inference that Plaintiffs' gender motivated Defendants' coverage decisions, and Count IV, therefore, fails to state a cause of action for sex discrimination under ACA. (*See* Motion to Dismiss at 18–19.) Plaintiffs attempt to salvage their claim by asserting that the final rule issued by the Office for Civil Rights "authorizes a private right of action for claims of disparate impact."[11] (*See* Response at 19.) Like their newfound – and dubious – theory of co-fiduciary liability, Plaintiffs' purported claim for disparate impact is not alleged in the Amended Complaint, which instead focuses on intentional gender discrimination. (*See, e.g.*, Am. Compl. ¶ 211 (alleging that Plaintiffs "are … being subjected to discrimination by Defendants … <u>on the basis of their sex</u>." (emphasis added)); *Shenzhen Tech. Co.*, 2013 WL 6145553, at *7 (plaintiffs cannot amend their complaints in response brief)). Moreover, to state a claim for disparate impact, a plaintiff must allege, among other things, "the occurrence of certain outwardly neutral practices." *See Gomez v. Quicken Loans, Inc.*, 629 Fed. App'x 799, 802 (9th Cir. 2015). Here, Plaintiffs do not explain how Defendants' coverage decisions with respect to lactation counseling services could possibly be considered "outwardly neutral," given that they only affect women. *See id.* (affirming dismissal of disparate impact claim when the plaintiff failed to "allege how the challenged policy could be facially neutral"); *Thomas v. San Francisco Hous. Auth.*, No. 3:16-CV-03819-CRB, 2017 WL 878064, at *5 (N.D. Cal. Mar. 6, 2017) (same). Accordingly, dismissal of Count IV is warranted.

### E. Counts V and VI Are Solely Based On ACA And Must Be Dismissed.

Finally,[12] the Court should dismiss Counts V and VI as impermissible attempts to bypass ACA's lack of a private right of action. (*See* Motion to Dismiss at 20.) Plaintiffs do not dispute that ACA lacks a private right of action to enforce its provisions, or that their state-law claims are based

---

[11] Plaintiffs overstate the implications of the final rule, which merely interprets Section 1557 to authorize disparate impact claims. *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31376, 31440 (May 18, 2016) ("OCR interprets Section 1557 as authorizing a private right of action for claims of disparate impact."). Plaintiffs point to no language in the final rule indicating that Title IX standards do not apply to a claim for intentional discrimination.

[12] Plaintiffs concede that ERISA preempts Counts V and VI as to Condry, Hoy, Endicott, Bishop, and Barber. (*See* Response at 20 n.19.) As a result, the Court should dismiss these claims with prejudice as unopposed.

entirely on violations of ACA's preventive services provisions. (*See* Response at 19–20.) Instead, Plaintiffs endeavor to limit the principles articulated in *Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081 (8th Cir. 2012) and *Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003), arguing that unlike the statutes at issue in those cases, "ACA does not have an analogous mechanism giving insureds the opportunity to enforce … ACA." (*See* Response at 20.)

The cornerstone of *Palmer* and *Grochowski*, however, is that plaintiffs cannot circumvent legislative decisions regarding the manner of statutory enforcement – a policy that applies regardless of whether administrative remedies are available to plaintiffs. *See Palmer*, 666 F.3d at 1085 ("We have declined to create a judicial avenue to enforce the state's statutes when the Minnesota legislature has not."); *Grochowski*, 318 F.3d at 86 ("[T]he plaintiffs' state-law claims are indirect attempts at privately enforcing [federal law]."). Here, Congress entrusted enforcement authority to the States and Departments of Health and Human Services, Labor, and the Treasury. *See Korte v. Sebelius*, 735 F.3d 654, 669 (7th Cir. 2013). Thus, Counts V and VI are an "impermissible 'end run' around" Congressional choices regarding ACA's enforcement. *See Grochowski*, 318 F.3d at 86; *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *20 (N.D. Cal. May 27, 2016) ("[P]laintiffs must … do something more … than merely point to allegations of a statutory violation."). The Court should dismiss Counts V and VI with prejudice.

## III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint in its entirety and grant such other relief as the Court deems just and proper.

DATED:  May 22, 2017                         Reed Smith LLP

                                             By:  */s/ Karen A. Braje*
                                                  Karen A. Braje
                                                  Martin J. Bishop (admitted *pro hac vice*)
                                                  Rebecca R. Hanson (admitted *pro hac vice*)
                                                  Attorneys for Defendants