1   Martin J. Bishop (admitted *pro hac vice*)
    Email: mbishop@reedsmith.com
2   Rebecca R. Hanson (admitted *pro hac vice*)
    Email: rhanson@reedsmith.com
3   REED SMITH LLP
    10 South Wacker Drive
4   Chicago, IL  60606-7507
    Telephone: +1 312 207 1000
5   Facsimile: +1 312 207 6400

6   Raymond A. Cardozo (SBN 173263)
    Karen A. Braje (SBN 193900)
7   Email: kbraje@reedsmith.com
    REED SMITH LLP
8   101 Second Street
    Suite 1800
9   San Francisco, CA  94105-3659
    Telephone: +1 415 543 8700
10  Facsimile: +1 415 391 8269

11  Attorneys for Defendants UnitedHealth Group
    Inc., UnitedHealthcare, Inc., UnitedHealthcare
12  Insurance Company, UnitedHealthCare
    Services, Inc. and UMR, Inc.

13

14

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

                       SAN FRANCISCO DIVISION
17
    RACHEL CONDRY, JANCE HOY,                   Case No. 3:17-cv-00183-VC
18  CHRISTINE ENDICOTT, LAURA BISHOP,
    FELICITY BARBER, and RACHEL CARROLL         **DEFENDANTS' RESPONSE IN**
19  on behalf of themselves and all others similarly   **OPPOSITION TO PLAINTIFFS' MOTION**
    situated,                                   **FOR CLASS CERTIFICATION**
20
                      Plaintiffs,
21
            v.                                  **Hearing Date:** April 25, 2019
22
    UNITEDHEALTH GROUP INC.;                    **Time:** 10:00 AM
23  UNITEDHEALTHCARE, INC.; UNITED
    HEALTHCARE INSURANCE COMPANY;               **Place:** Courtroom 4
24  UNITEDHEALTHCARE SERVICES, INC.; and
    UMR, INC.,                                  Honorable Vince Chhabria
25
                      Defendants.
26

27

28

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................................... 1

II.  BACKGROUND .......................................................................................................... 4

     A.   Lactation and Related Care Present a Range of Issues That Vary Based on Individual Circumstances. ............................................................................. 4

     B.   ACA Gives Health Plans Discretion to Implement the Lactation Benefit. .................. 4

     C.   Defendants Have Established A Network of Providers of Lactation Services as Well as Billing Guidance for Those Providers. ................................................ 5

     D.   Defendants' Members Have Accessed and Obtained Coverage for In-Network Lactation Services Across Markets and Over Time. ......................................... 8

     E.   When Claims Are Not Fully Paid, Defendants' Remark Codes Initiate A Dialogue With the Member and Provider, Leading to Various Outcomes. ................. 8

     F.   The Named Plaintiffs Sought Lactation Services From Out-of-Network Providers, But Their Individual Experiences Varied Substantially. ........................... 9

     G.   Plaintiffs Sue for Damages Based on Cost-Shares for Out-of-Network Services. ...................................................................................................... 11

     H.   The Court's Summary Judgment Ruling Reaches Different Outcomes Based on Each Plaintiff's Facts. ............................................................................. 11

     I.   Plaintiffs' Motion Seeks Certification of Expanded Classes Under 23(b)(1) and (b)(2) Without Identifying a Common Injury. ............................................. 12

III. ARGUMENT .............................................................................................................. 13

     A.   Plaintiffs Face a Significant Burden Under Rule 23. ......................................... 13

     B.   Plaintiffs Cannot Satisfy the Prerequisites of Rule 23(a). ................................. 14

          1.   Plaintiffs' Three Classes Lack Commonality. ............................................ 14

               a.   The ACA and Lactation Services Classes. ......................................... 14

                    (1)   Plaintiffs Have Failed To Establish Common Policies or Practices or Common Injuries. ............................................. 14

                    (2)   Defendants' Purportedly "Narrow" Coverage Compounds the Individualized Inquiries. ..................................... 18

               b.   The Claims Review Class. ............................................................. 21

          2.   The Named Plaintiffs are Not Typical or Adequate Class Representatives. ...................................................................................... 22

     C.   Plaintiffs Cannot Satisfy the Prerequisites of Rule 23(b). ................................. 23

          1.   Bishop, Hoy, Endicott, and Carroll Lack Standing to Certify the ACA and Lactation Services Classes Under Rule 23(b)(1) and (2). ........................ 24

          2.   Plaintiffs' Classes do not Meet the Requirements of Rule 23(b)(1) .............. 24

          3.   Plaintiffs' Classes do not Meet the Requirements of Rule 23(b)(2). ............. 25

IV.  CONCLUSION .......................................................................................................... 25

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- i -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)....................................................................................................13

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................................23, 26

*Booton v. Lockheed Med. Benefit Plan*,
    110 F.3d 1461 (9th Cir. 1997) ...............................................................................22

*Cholakyan v. Mercedes Benz, USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) .......................................................................25, 26

*Coleman v. Am. Int'l Grp., Inc. Group Benefit Plan*,
    87 F. Supp. 3d 1250 (N.D. Cal. 2015) .................................................................22

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................................13, 25

*Davis v. AT&T Corp.*,
    No. 15CV2342-DMS (DHB), 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017)............20

*Dennis F. v. Aetna Life Ins.*,
    No. 12-cv-02819, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013)...............................21

*Des Roches v. California Physicians' Serv.*,
    320 F.R.D. 486 (N.D. Cal. 2017)............................................................................21

*Doiron v. Conseco Health Ins. Co.*,
    279 F. App'x 313 (5th Cir. 2008) .........................................................................19

*DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*,
    469 F. App'x 762 (11th Cir. 2012) .......................................................................22

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..................................................................16, 23, 25

*Gordon v. New W. Health Servs.*,
    No. CV 15-24-GF-BMM, 2017 WL 365484 (D. Mont. Jan. 25, 2017) ........................24

*Graddy v. BlueCross BlueShield of Tenn., Inc.*,
    No. 4:09-cv-84, 2010 WL 670081 (E.D. Tenn. Feb. 19, 2010)..................................21

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Case No. 3:17-cv-00183-VC        - ii -

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ................................................................24

*Jamie S. v. Milwaukee Pub. Sch.*,
   668 F.3d 481 (7th Cir. 2012) .................................................................25

*Jimenez v. Domino's Pizza, Inc.*,
   238 F.R.D. 241 (C.D. Cal. 2006) ...........................................................25

*Kandel v. Brother Int'l Corp.*,
   264 F.R.D. 630 (C.D. Cal. 2010) ...........................................................23

*Kennedy v. Connecticut Gen. Life Ins. Co.*,
   924 F.2d 698 (7th Cir. 1991) .................................................................18

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) .................................................................14

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) .................................................................17

*Palmer v. Unum Life Ins. Co. of Am.*,
   No. C04-2735 MJJ, 2005 WL 1562800 (N.D. Cal. June 24, 2005) ...........22

*Phillips v. Ford Motor Co.*,
   No. 14-cv-2989, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016)................14

*Phillips v. Sheriff of Cook County*,
   828 F.3d 541 (7th Cir. 2016) .................................................................16

*Sanchez v. Capital Contractors, Inc.*,
   No. 14-cv-2622, 2017 WL 2462055 (N.D. Cal. June 7, 2017)..............23, 24

*Schilling v. Kenton Cnty., Ky.*,
   No. 10-143-DLB, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011)....................16

*Thomasson v. GC Servs. Ltd. P'Ship*,
   539 F. App'x 809 (9th Cir. 2013) ...........................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................ *passim*

*Wit v. United Behavioral Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) ...........................................................21

*York et al. v. Wellmark*,
   Case No. 4:16-cv-00627 (S.D. Iowa)......................................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 3:17-cv-00183-VC                    - iii -

1

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ........................................................................14, 25

2

3

**Statutes**

28 U.S.C. § 2072(b) ........................................................................................................26

4

42 U.S.C. § 300gg-13(a)(4) ...........................................................................................4, 5

5

6

42 U.S.C. § 18022(c)(3)(A)(i) ..........................................................................................4

7

Cal. Health & Safety Code § 1367.27 ..............................................................................6

8

**Rules**

9

Fed. R. Civ. P. 23(a) ................................................................................................13, 15

10

Fed. R. Civ. P. 23(b) .....................................................................................13, 24, 25

11

**Regulations**

12

29 C.F.R. § 2520.102-3....................................................................................................6

13

29 C.F.R. § 2590.715-2713(a)(2).....................................................................................19

14

29 C.F.R. § 2590.715-2713(a)(3)(i) ................................................................................5

15

29 C.F.R. § 2590.715-2713(a)(3)(ii) ...............................................................................5

16

29 C.F.R. § 2590.715-2713(a)(4)................................................................................5, 19

17

10 CCR § 2240.1 ..............................................................................................................6

18

Cal. Code Regs. tit. 10, § 2240.6 .....................................................................................6

19

28 Pa. Code § 9.679(d) .....................................................................................................6

20

28 Pa. Code § 9.679(e) .....................................................................................................6

21

28 Pa. Code § 9.681 ..........................................................................................................6

22

28 Tex. Admin. Code § 11.1607 .......................................................................................6

23

24

**Other Authorities**

25

HRSA, Women's Preventive Services Guidelines, https://www.hrsa.gov/womens-
guidelines/index.html .............................................................................................4

26

27

HRSA, Women's Preventive Services Guidelines, https://www.hrsa.gov/womens-
guidelines-2016/index.html .....................................................................................4

28

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Mental Health Parity Implementation, https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/affordable-care-act/for-employers-and-advisers/aca-implementation-faqs ..................................................................................................5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I.   **INTRODUCTION**

Plaintiffs' motion for class certification asks this Court to certify national, multiyear classes of present and former UnitedHealth members who allegedly were denied access to comprehensive lactation services and harmed as a result. No such classes can be certified consistent with Rule 23.

Each Plaintiff presents individualized claims with unique factual and legal underpinnings. Each Plaintiff sought lactation services, but each one's particular needs and preferences varied substantially, as did each one's approaches to seeking care and coverage for that care. Some Plaintiffs searched for network providers; others never looked. Some contacted Defendants' customer service line; others had no interactions with Defendants. Some received an array of services in-network before seeking out-of-network care; others went directly out-of-network. At least one contested the Defendant's coverage decision; others took no action prior to filing suit. These steps and others—and how they unfolded for each Plaintiff—are all critical to the adjudication of each putative class member's claims.

In its summary judgment ruling, this Court reached *different* outcomes based on each Plaintiff's facts regarding their respective decisions to seek lactation services from an out-of-network provider. The ruling shows how individual issues permeate the putative classes, as that approach would need to be replicated for each putative class member. No Plaintiff's proof is common to any other Plaintiff's proof, let alone to the proof of the putative classes. Plaintiffs have not met and cannot meet their burden to satisfy Rule 23's requirements, so no class can properly be certified.

Ignoring this, Plaintiffs attempt to homogenize these disparate claims and urge the Court to focus solely on what they contend are improperly "narrow" policies and practices by Defendants, with no assessment of the *impact* of those policies and practices on any particular class member in terms of liability, remedies, and available defenses. In contrast to their operative Second Amended Complaint, Plaintiffs avoid references to the monetary recovery they seek and refrain from moving for certification under 23(b)(3), which requires that common questions "predominate."

These tactics, however, cannot mask the individualized nature of the issues to be determined. The Supreme Court has made clear that a plaintiff cannot meet her Rule 23 burden merely by identifying common questions that a defendant's conduct raises. Rather, the plaintiff must assert a

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

common injury among class members, such that the class action device facilitates common answers through common proof. Plaintiffs have not satisfied that burden here.

Such is the case, for example, with Plaintiffs' contention that Defendants adopted practices of listing few lactation specialists on their website and directing members back to their network physicians. In fact, claims data and other evidence show that, over time and across markets, the majority of women who submitted claims for lactation services using authorized billing codes received the services in-network from various provider types and obtained coverage for those services without cost-sharing. Further, some members were able to obtain in-network coverage for out-of-network services through Defendants' "gap exception" or appeals processes. In other words, members were *aware of* and ***able to obtain*** lactation services without cost-shares. Thus, no assumption can be made that any given cost-share incurred by a member for out-of-network care resulted from misconduct by Defendants. Instead, individual inquiries would be required to determine, among other things:

- If a provider was available within a "reasonable" distance;
- If the member applied for a gap exception or submitted an appeal;
- If the member looked for a network provider or spoke to customer service;
- If the member received services from a network provider;
- If the member chose an out-of-network provider for personal reasons;
- If the provider collected any amounts due from the member.

While Plaintiffs may disagree with the quality and scope of the services rendered in certain instances, the fact remains that no common injury exists across the putative classes. Rather, to resolve any member's claim, the Court would first be required to legislate what the alleged "full complement" of lactation services entails—including state or regional variations. What constitutes a "reasonable distance" under local network adequacy rules? How long must visits be to satisfy Plaintiffs' standards? What particular counseling methods must providers employ? Next, assuming such determinations were feasible on a class-wide basis (they are not), the Court would then need to adjudicate whether the alleged unavailability of the determined level of services in Defendants' network injured each class member. None of these questions are susceptible to class-wide resolution.

Plaintiffs only compound the individualized nature of the issues at stake by expanding the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  putative classes to include members whose circumstances require different proof. For example,

2  Plaintiffs seek to include members who received lactation services in-network. But by definition,

3  such members were not injured by a lack of network providers, thus rendering them subject to

4  unique defenses. Plaintiffs also seek to sweep in thousands of potential members whose claims were

5  billed by their providers under medical codes that do not on their face indicate that lactation services

6  were provided and could reflect a different type of service. In fact, for the vast majority of the codes

7  Plaintiffs seek to include in the putative classes, the Court would need to review individual medical

8  records (which Defendants typically do not have) to determine if lactation services were even

9  provided. Finally, Plaintiffs have revised their putative class definition to include members who

10  purportedly received lactation services but never submitted claims. Even if such members could

11  somehow be identified—and they cannot be—their claims would present numerous unique issues

12  and defenses, including *why* no claim was submitted. In any event, adding these varying cohorts

13  with no scrutiny of their individual circumstances would expand substantive rights and

14  fundamentally alter the scope of the benefits at issue, in violation of the Rules Enabling Act.

15       Plaintiffs' singular focus on Defendants' conduct, as opposed to proof of whether that

16  conduct gave rise to a common injury, similarly undermines the Claims Review Class. Even

17  assuming that the denial codes at issue were confusing in the abstract, individual assessments of each

18  member's circumstances—including whether additional contact with Defendants occurred or an

19  appeal was filed—would be required to determine whether the alleged procedural violation

20  prevented a "meaningful dialogue" under ERISA. Moreover, to the extent Plaintiffs contend they are

21  entitled to a substantive remedy (*i.e.,* additional coverage for lactation services), all of the

22  individualized issues that swamp the lactation classes would come into play.

23       Plaintiffs seek to fundamentally redefine the scope of the lactation benefit through litigation

24  and the prosecution of overly broad classes. This is not a permissible use of the class action device.

25  Because Plaintiffs' claims cannot be resolved on a class-wide basis with common proof, Plaintiffs'

26  motion for class certification should be denied.

27

28  Case No. 3:17-cv-00183-VC                    - 3 -

## II.    BACKGROUND

### A.    Lactation and Related Care Present a Range of Issues That Vary Based on Individual Circumstances.

Lactation is the process of milk production and secretion by women in connection with childbirth. (Mar. 21, 2019 Abraham J. Souza Decl., Ex. A (Feb. 13, 2019 Hanley Dep.), at 78:8-9.) Socioeconomic, workplace, cultural, and other factors play a role in individual breastfeeding decisions, including whether a woman chooses to breastfeed, the level and type of care sought, and the extent to which breastfeeding is maintained. (Souza Decl., Ex. B (Feb. 11, 2019 Morton Dep.), at 233:19-235:14, 279:10-19.)

Some women do not need or want lactation assistance and are able to breastfeed their children without lactation care, such as mothers who have prior breastfeeding experience. (*Id.* at 227:15-18, 230:4-12.) Others benefit from lactation assistance, but the specific services that facilitate successful breastfeeding for each individual "vary tremendously" based on a "myriad of issues." (*Id.* at 232:1-15.) Some women need only high-level educational information and support, while others are at higher risk of premature cessation of breastfeeding and may benefit from other levels and types of services. (*Id.* at 231:16-21.) A woman's choice of provider for breastfeeding services may be affected by language barriers, personal preference, comfort level with a particular provider, or other circumstances. (*Id.* at 232:1-15.)

### B.    ACA Gives Health Plans Discretion to Implement the Lactation Benefit.

The Patient Protection and Affordable Care Act of 2010 ("ACA") requires health plans to cover without cost-sharing certain preventive services for women as specified in guidelines supported by the Health Resources and Services Administration ("HRSA"). 42 U.S.C. § 300gg-13(a)(4). ACA defines "cost-sharing" to include "deductibles, coinsurance, [and] copayments." 42 U.S.C. § 18022(c)(3)(A)(i). HRSA's Guidelines identify "breastfeeding support, supplies, and counseling" as one of the ACA-mandated preventive services for women, which HRSA describes as "[c]omprehensive lactation support and counseling, by a trained provider during pregnancy and/or in the postpartum period." HRSA Guidelines, https://www.hrsa.gov/womens-guidelines/index.html.

Plaintiffs suggest that ACA clearly delineates how health plans should implement the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    lactation benefit, including what quantum of service satisfies the term "comprehensive." In reality,

2    ACA and HRSA do not elaborate on what constitutes "[c]omprehensive lactation support and

3    counseling" or specify the level of instruction that qualifies a provider to offer lactation services.[1]

4    *See generally* 42 U.S.C. § 300gg-13(a)(4); HRSA Guidelines. Similarly, lactation services need not

5    be provided by a specific provider type, such as a lactation consultant, and instead can be rendered

6    by any "provider type acting within the scope of his or her license or certification (for example, a

7    registered nurse)."[2] Health plans have discretion to "rely on … established reasonable medical

8    management techniques to determine the frequency, method, treatment, or setting for coverage,"

9    including adopting procedure and diagnosis codes that pay at no cost-share. 29 C.F.R. § 2590.715-

10    2713(a)(4); *see also* Pls.' Ex. 18 (D'Apuzzo Am. Expert Report), ¶ 14.

11       ACA's implementing regulations also allow health plans to deny coverage for, or impose

12    cost-shares on, lactation counseling services rendered by out-of-network providers, so long as those

13    health plans have providers in their networks who offer the services. 29 C.F.R. § 2590.715-

14    2713(a)(3)(i)-(ii). When a health plan does not have in its network a provider who can offer lactation

15    services, the regulations require the health plan to cover out-of-network services without cost

16    sharing. 29 C.F.R. § 2590.715-2713(a)(3)(ii).

17      **C.**     **Defendants Have Established A Network of Providers of Lactation Services as Well as Billing Guidance for Those Providers.**

18

19       Defendants provide coverage without cost-shares for lactation services when rendered by an

20    in-network provider. (Pls.' Ex. 12 (Oct. 1, 2018 Preventive Care Services Coverage Determination

21    Guideline ("CDG")), at UHC_196573.)[3] In fact, Defendants have thousands of in-network providers

22    of lactation services, with OB/GYNs, pediatricians, and lactation specialists making up the majority

23    [1] HRSA removed the term "trained provider" from its guidance on December 20, 2016. *See* https://www.hrsa.gov/womens-guidelines-2016/index.html.

24    [2] FAQs About Affordable Care Act Implementation (Part XXIX) and Mental Health Parity Implementation, at

25    Q.3, https://www.dol.gov/agencies/ebsa/laws-and-regulations/laws/affordable-care-act/for-employers-and-advisers/aca-implementation-faqs; *see also* Dkt. 161 at 8 n.13 (acknowledging that "some pediatricians or

26    OB/GYNs may provide CLS").

27    [3] "Pls.' Ex." as used herein refers to the Declaration of Kimberly Donaldson-Smith filed in this matter at Dkt. 161-1 and the associated exhibits filed at Dkt. 161-2.

28    Case No. 3:17-cv-00183-VC      - 5 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  of these providers. (Mar. 20, 2019 dos Santos Decl., Ex. A (Dec. 11, 2018 Expert Report of Joao dos

2  Santos), ¶ 31.)

3      The number and location of network providers vis-à-vis Defendants' members varies by

4  geographic region and depends, in part, on federal and state-specific network adequacy laws, which

5  identify the number of providers with whom health plans must contract to maintain sufficient

6  networks.[4] Similarly, federal and state-law rules differ with respect to member notification

7  requirements, such as provider directories, and the particular requirements may vary by plan type.[5]

8      Women receive and are exposed to lactation services from various provider types—including

9  OB/GYNs, pediatricians, and lactations specialists—throughout their pregnancy, during the

10 hospitalization associated with delivery, and during expected postpartum visits. (Mar. 20, 2019 Lee

11 Decl., Ex. A (Lee Expert Report), at 8; *see also* Souza Decl., Ex. A (Hanley Dep.), at 102:25-

12 103:13.) And, to facilitate in-network care, Defendants direct members to network providers,

13 including through Defendants' provider directory, which is available online and in print. (Mar. 18,

14 2019 Dietz Decl., ¶¶ 4-21.) Further, customer service representatives encourage members to work

15 with their primary care providers to obtain the services they need. (Pls.' Ex. 27, Member Services

16 Breast Pump Benefit SOP, at UHC_003920.) If in-network providers are unavailable within a certain

17 distance of members' zip codes, depending on their plan, members may be eligible to receive the in-

18 network level of benefits for out-of-network services—including ACA-mandated services—through

19 Defendants' "gap exception" process. (Mar. 20, 2019 Cappiello Decl., ¶¶ 4, 17, 24, 26.) Members

20 may also appeal claim denials. (Mar. 19, 2019 Seay Decl., ¶ 8.)

21     In accordance with ACA's grant of discretion, Defendants identify in publicly available

22 policies and procedures the medical codes providers should select when billing preventive care.

23

24 [4] *See, e.g.*, 10 CCR § 2240.1 (listing California's requirements for "adequacy and accessibility of provider services"); 28 Tex. Admin. Code § 11.1607 (similar for Texas for HMOs). Such laws may distinguish
25 between different geographic regions within states, requiring, for example, a higher concentration of providers in urban, as opposed to rural, areas. *See, e.g.*, 28 Pa. Code § 9.679(d)-(e) (identifying different
26 adequacy requirements for counties designated as metropolitan statistical areas and other counties).

27 [5] *See, e.g.*, Cal. Code Regs. tit. 10, § 2240.6 (identifying provider directory requirements for network providers); Cal. Health & Safety Code § 1367.27 (similar); 28 Pa. Code § 9.681 (similar); 29 C.F.R.
28 § 2520.102-3 (listing requirements applicable to summary plan descriptions for ERISA plans).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

(Pls.' Ex. 12, (CDG), at UHC_196610.) These medical codes are the language used between providers and insurance/managed care companies to indicate the services rendered for reimbursement purposes. (Pls.' Ex. 18 (D'Apuzzo Am. Expert Report), ¶¶ 11, 17.) With respect to CPT and HCPCS procedure level codes, which describe the overall procedure performed by the provider, no industry standard has emerged regarding which codes denote lactation services. (*Id.* ¶¶ 14, 15.) Providers must follow a payor's guidance regarding coding to communicate the service they have rendered if they want to be reimbursed accordingly. (*Id.* ¶¶ 22-23.) It is the industry expectation that a provider will bill services using the most-specific coding possible, which in this case means that providers should select diagnoses codes that use the term "lactation" in their description. (*Id.* ¶ 25, 31) Nevertheless, the structure of Defendant's guidelines for coding preventive services, including lactation counseling and support, allows providers to bill wide-ranging services—including treatment of ***conditions***—because certain CPT and HCPCS procedure codes will process in Defendants' systems as preventive services regardless of the diagnosis code used. (Pls.' Ex. 10 (Defs.' Second Am. Objections & Resps. to First Set of Interrogs.), No. 2.) However, because these procedure codes could apply to a myriad of preventive services, and numerous diagnosis codes with which they could be paired say nothing on their face about lactation, determining which claims involve lactation services would require individualized inquiries, including examination of medical records. (*See* Pls.' Ex. 12 (CDG), at UHC_196610; Pls.' Ex. 18 (D'Apuzzo Am. Expert Report), ¶ 36.)

If a provider deviates from Defendants' coding guidance, it becomes even more difficult to determine whether the service involved related to lactation. (Pls.' Ex. 18 (D'Apuzzo Am. Expert Report) ¶ 31.) With respect to diagnosis codes, for example, while some codes specify lactation, and others ***might*** relate to lactation, "the only way to determine whether visits … involved breastfeeding issues would be to perform a patient-by-patient review of medical records." (*Id.*) Defendants do not typically request or collect medical records for lactation services, as the claims are usually auto-adjudicated. (Mar. 19, 2019 Seay Decl., ¶ 4.)

**D.      Defendants' Members Have Accessed and Obtained Coverage for In-Network Lactation Services Across Markets and Over Time.**

Contrary to Plaintiffs' allegations regarding a systemic unavailability of lactation services, Defendants' claims data confirms that tens of thousands of members found and received lactation services in-network during the class period. (Mar. 20, 2019 dos Santos Decl., Ex. A (Dec. 11, 2018 Expert Report of Joao dos Santos), ¶ 19(a).) In fact, the majority of women who submitted claims using Defendants' coding guidance between 2012 and mid-2018 received the services in-network from various provider types and obtained coverage without cost-shares, both over time and across markets. (*Id.*) Approximately 73% of adjudicated lactation claims during this time period involved services by network providers, with approximately 83% of those claims being covered without cost-shares. (*Id.* ¶¶ 19(a), 32-33.) OB/GYNS, pediatricians, and lactation specialists were responsible for 63% of total claims. (*Id.* ¶ 31.) Additional members likely received lactation services through global billing and post-partum wellness visits, which do not appear in Defendants' claims data in a manner that can be identified as lactation services. (*Id.* at 16 n.17; *see also* Souza Decl., Ex. A (Hanley Dep.), at 172:24-173:14; Pls.' Ex. 18 (D'Apuzzo Am. Expert Report), ¶ 27.) Further, some members unable to locate a network provider obtained gap exceptions, and others have successfully appealed claim denials. (Cappiello Decl., ¶¶ 17, 24, 26; Mar. 19, 2019 Seay Decl., ¶ 7.)

**E.      When Claims Are Not Fully Paid, Defendants' Remark Codes Initiate A Dialogue With the Member and Provider, Leading to Various Outcomes.**

Consistent with industry custom and practice, Defendants use remark codes to provide information to members about how their claims are processed. (Pls.' Ex. 33 (Thompson Decl.), ¶ 5.) Defendants include remark codes in the Explanation of Benefits ("EOB") documents sent to members after processing their claims. (*Id.* ¶ 6.) The remark codes provide information to members in accordance with industry-standard language. (*Id.* ¶¶ 7, 14.) The remark codes are designed to initiate a dialogue between the member, the member's provider, and Defendants. (*Id.*; *see also* Pls.' Ex. 18 (D'Apuzzo Am. Expert Report), ¶ 42; Miller Decl., Ex. A (Miller Expert Report), at 2, 5, 9.) Thus, after receiving an EOB, members may consult their providers, benefit booklets, or customer service for additional information, and some members have had the denial decision adjusted. (Pls.'

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Ex. 33 (Thompson Decl.), ¶ 9; Dec. 11, 2018 Debbie Savercool Decl., ¶¶ 11-12.) The claim outcomes in each of these instances, and the financial impact to the member, if any, are diverse and individualized. (Savercool Decl., ¶ 11.)

### F. The Named Plaintiffs Sought Lactation Services From Out-of-Network Providers, But Their Individual Experiences Varied Substantially.

Plaintiffs here were members or beneficiaries of employer-sponsored health benefit plans administered by one of the Defendants during the relevant time period. (Dkt. 104-4 at 4.) Only Barber is a current plan member. (Mar. 20, 2019 Seay Decl., ¶ 8.) Each of these Plaintiffs received lactation services from out-of-network providers. (Dkt. 104-4 at 8-17.) The similarities stop there.

*Condry* sought services from an out-of-network lactation consultant after her network provider diagnosed her daughter with poor weight gain. (*Id.* at 9.) She did not attempt to locate other in-network providers or to determine her lactation consultant's network status, yet sought to be reimbursed for an out-of-network visit. (*Id.*) UnitedHealthcare Insurance Company denied her claim, explaining in the EOB "[t]his is not a reimbursable service" and "[t]here may be a more appropriate CPT or HCPCS code." (*Id.*) Condry understood the out-of-network lactation consultant had provided the codes on the bill but did not ask her for "more appropriate" codes. (*Id.*) She did not appeal her denied claim or file claims for the services she received on two other occasions. (*Id.* at 9-10.)

*Barber* was seen by lactation consultants at the in-network hospital where she gave birth. (*Id.* at 15.) Without attempting to locate in-network care, she saw an out-of-network provider who was referred to her by her doula. (*Id.*) Barber sought reimbursement, which UnitedHealthcare Insurance Company denied, explaining "[y]our plan does not cover this non-medical service or personal item." (*Id.*) Barber disagreed but understood what the denial was communicating to her. (*Id.*) She submitted an untimely appeal detailing her understanding of the denial reason she was given. (*Id.*)

*Endicott* received lactation services prior to discharge from her in-network hospital. (*Id.* at 10.) Aware that in-network services were available, Endicott nevertheless located an out-of-network lactation consultant on the Internet and received services to treat oversupply and feeding difficulties. (*Id.*) After Endicott submitted a claim for reimbursement, UnitedHealthCare Services, Inc. asked her out-of-network lactation consultant to submit corrected claims with valid diagnosis codes, which the

Case No. 3:17-cv-00183-VC                      - 9 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  provider never did. (*Id.* at 11.) Consequently, UnitedHealthCare Services, Inc. denied Endicott's

2  claim, and although Endicott contends she appealed, neither Endicott nor Defendants have any

3  record of such an appeal. (*Id.*)

4    ***Carroll*** also received lactation counseling at her in-network hospital after giving birth to her

5  daughter and continued to receive lactation services from the hospital-based lactation consultants

6  following discharge. (*Id.*) Nevertheless, Carroll received services from out-of-network providers to

7  address her daughter's slow weight gain and other breastfeeding issues, such as sore nipples. (*Id.* at

8  12.) When UMR, Inc. denied her claims, Carroll did not appeal. (*Id.* at 13.)

9    ***Bishop*** received in-network services from a lactation consultant during her hospital stay but

10  decided to seek additional services out-of-network to treat her decreased milk supply and cracked

11  nipples, among other things. (*Id.* at 13.) Bishop claims that she tried unsuccessfully to find an in-

12  network provider on Defendants' website. (*Id.* at 14.) Bishop also claims that she spoke to customer

13  service and was told that there were no in-network lactation providers. (*Id.*) Bishop attempted to

14  obtain a gap exception but failed to submit her request in advance. (*Id.*) After Bishop submitted a

15  claim for reimbursement, UnitedHealthcare Insurance Company denied her claim, explaining that

16  "[t]his is not a reimbursable service" and "[t]here may be a more appropriate CPT or HCPCS code."

17  (*Id.*) Bishop understood that her out-of-network provider selected the codes but did not ask the

18  provider if there were alternative codes. (*Id.* at 14-15.) Bishop claims she submitted an appeal, but

19  neither she nor UnitedHealthcare Insurance Company have any record of such an appeal. (*Id.* at 15.)

20    Lastly, ***Hoy*** received in-network lactation services in the hospital after giving birth, and she

21  sought additional services out-of-network after her pediatrician expressed concern about her son's

22  weight. (*Id.* at 15-16.) Hoy did not ask her in-network providers for a network referral but claims

23  that she attempted to locate a provider on Defendants' website and was unable to do so. (*Id.* at 15.)

24  Hoy failed to submit a claim for reimbursement for several months, instead choosing to participate in

25  calls with customer service and submit letters to Defendants, the latter of which she erroneously

26  characterized as "appeals." (*Id.* at 16.) Ultimately, UnitedHealthCare Services, Inc. denied Hoy's

27  claim, explaining that "[t]his is not a reimbursable service" and that "[t]here may be a more

28  Case No. 3:17-cv-00183-VC   - 10 -

appropriate CPT or HCPCS code." (*Id.* at 16-17.) Hoy also understood that her provider supplied the codes at issue but never followed up regarding coding alternatives. (*Id.* at 17.) Hoy submitted an appeal but did not address the coding issues identified in her EOB. (*Id.*)

### G. Plaintiffs Sue for Damages Based on Cost-Shares for Out-of-Network Services.

Plaintiffs filed this action on January 13, 2017. (Dkt. 1.) They allege that Defendants violated ACA when they failed "to provide … in-network lactation service providers within a reasonable distance of the plan participants and/or beneficiaries," causing Plaintiffs to pay for out-of-network services. (Dkt. 78 ("Second Am. Compl.") ¶ 212.) Plaintiffs also allege that Defendants utilized "a system when administering claims from ERISA plan participants and beneficiaries that fails to provide timely and substantive responses to requests for out-of-network benefits and/or appeals to denials of [such] requests." (*Id.* ¶ 207.) Plaintiffs seek damages and other relief. (*Id.* at pp. 74-75.)

Plaintiffs plead three classes, two of which pertain to the lactation claims (the ACA and Lactation Services Classes) and one of which pertains to the claims processing allegations (the Claims Review Class). (*Id.* ¶ 184.) Plaintiffs allege that the classes are certifiable under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), with no mention of 23(b)(1). (*Id.*)

### H. The Court's Summary Judgment Ruling Reaches Different Outcomes Based on Each Plaintiff's Facts.

The parties filed cross-motions for summary judgment. On June 27, 2018, the Court issued an opinion and order granting those motions in part and denying them in part. (Dkt. 146 ("Summ. J. Order").) With respect to Plaintiffs' ACA claims, the Court analyzed the circumstances of each named Plaintiff, engaging in an individualized fact-specific examination of: (i) whether each named Plaintiff attempted to locate in-network providers of the service prior to seeking services out-of-network; (ii) whether "nearby" providers who could render the service to each named Plaintiff were available; and (iii) whether customer service informed (or misinformed) each named Plaintiff about the availability of the benefit or network providers. (*Id.* at 3-5.) Based on this analysis, the Court granted summary judgment in Hoy's and Bishop's favor; granted summary judgment in Defendants' favor with respect to Barber and Condry; and denied summary judgment to both sides with respect to Endicott and Carroll. (*Id.*) As to Endicott, the Court identified a fact dispute regarding her

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

communications with a customer service representative, and regarding Carroll, the Court focused on a dispute regarding a network provider's enrollment requirements. (*Id.*)

With respect to Defendants' alleged claims processing deficiencies, the Court granted summary judgment in favor of the Plaintiffs whose plans were governed by ERISA (*i.e.*, all Plaintiffs but Carroll). (*Id.* at 5-6.) As to remedies, the Court stated that, "[t]o the extent … equitable remedies may be shaped by the extent to which the defendants breached their statutory obligations, the plaintiffs can continue to litigate other claimed violations of section 1133." (*Id.* at 7.)

## I.  Plaintiffs' Motion Seeks Certification of Expanded Classes Under 23(b)(1) and (b)(2) Without Identifying a Common Injury.

On February 20, 2019, Plaintiffs moved for class certification, seeking certification of three classes (collectively, the "Classes"), all of which vary from the class definitions alleged in the Second Amended Complaint. (*Compare* Second Am. Compl. ¶ 184 *with* Dkt. 161 ("Pls.' Mot.") at 13-14.) Most notably, in addition to encompassing claims for in-network services, Plaintiffs modified the text of the lactation classes, apparently to facilitate their argument that the class includes members who supposedly received lactation services but never submitted claims. (*See* Pls.' Mot. at 14.) While the class definitions in the Second Amended Complaint refer to participants as to whom Defendants "fail and refuse to provide payment or reimbursement" or who "did not receive full coverage and/or reimbursement," the certification motion refers more broadly to participants "***who received . . . Comprehensive Lactation Services***, for which Defendants did not provide coverage and/or imposed cost-sharing." (*Id.* (emphasis added).)

Plaintiffs' motion urges the Court to focus solely on what Plaintiffs contend are unlawful policies and practices used by Defendants. (*See id.* at 1.) For example, with respect to the lactation classes, Plaintiffs allege that Defendants adopted a practice of listing few lactation specialists on their website and utilized customer service policies that directed members back to their primary care providers, rather than identifying for members providers of lactation services. (*Id.* at 1-2.) Plaintiffs also contend that Defendants' construction of the ACA benefit is unduly narrow because it reimburses a limited set of billing codes without cost-shares and assumes that all OB/GYNs and pediatricians render the services. (*Id.* at 2.)  Plaintiffs then attempt to contrast Defendants'

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  supposedly "narrow" benefit with overly broad classes, by sweeping in members who received

2  lactation services in-network, possibly received an entirely different service, or did not even submit

3  claims. (*Id.* at 15 n.21.) While Plaintiffs only seek certification of the Classes under Rule 23(b)(1)

4  and (2), they acknowledge that they still seek damages by asserting that they are entitled to have

5  Defendants "reprocess [their lactation] claims under a corrected standard." (*Id.* at 25.)

6  **III.   ARGUMENT**

7      **A.   Plaintiffs Face a Significant Burden Under Rule 23.**

8      Federal Rule of Civil Procedure 23 requires a court to deny a  motion for class certification

9  unless the plaintiff can satisfy all of the requirements of Rule 23(a)—numerosity, commonality,

10  typicality, and adequacy—and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23(a)-

11  (b). The Supreme Court has made clear that class treatment is "an exception to the usual rule that

12  litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v.*

13  *Behrend*, 569 U.S. 27, 33 (2013). Rule 23 requires a plaintiff to "affirmatively demonstrate [her]

14  compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Supreme

15  Court has held that Rule 23 "imposes stringent requirements for certification that in practice exclude

16  most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Consequently, a

17  plaintiff must satisfy Rule 23 with "evidentiary proof." *Comcast*, 569 U.S. at 33. A court must deny

18  certification if it finds, after a "rigorous analysis," that the plaintiff has not met her burden under

19  Rule 23. *Id.*

20      These standards are not relaxed when, as here, a plaintiff seeks certification under Rule

21  23(b)(1) or (2), rather than (b)(3). Indeed, the Supreme Court has directed courts to carefully

22  scrutinize classes in this context to ensure that the plaintiff ***proves*** "that there are ***in fact*** sufficiently

23  numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (bolded emphasis

24  added). Thinly veiled efforts to use Rule 23(b)(1) or (2) to obtain monetary relief while avoiding the

25  strictures and notice requirements of Rule 23(b)(3)—which protect the due process rights of the

26  absent class members and the defendant—should be discouraged. *Id.* at 360, 363; *see also Zinser v.*

27  *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (certification under Rule (b)(1) is

28   

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  "not appropriate in an action for damages"); *Phillips v. Ford Motor Co.*, No. 14-cv-2989, 2016 WL

2  7428810, at *25 (N.D. Cal. Dec. 22, 2016) (same for (b)(2)).

### B.   Plaintiffs Cannot Satisfy the Prerequisites of Rule 23(a).

#### 1.   Plaintiffs' Three Classes Lack Commonality.

5  Plaintiffs fail to satisfy the commonality requirement of Rule 23(a)(2) with respect to any of

6  the Classes. Rule 23(a)(2) requires a plaintiff to do more than raise common questions, such as

7  whether a defendant's alleged conduct is unlawful. *Dukes*, 564 U.S. at 349. "What matters to class

8  certification … is … the ***capacity of a classwide proceeding to generate common answers apt to***

9  ***drive the resolution of the litigation*.**" *Id.* at 350 (bolded emphasis added). "Dissimilarities within

10  the proposed class are what have the potential to impede the generation of common answers." *Id.* If a

11  plaintiff cannot identify a common contention that will generate a common answer that resolves an

12  element within the class' common claim, commonality is not satisfied, and class certification should

13  be denied. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

#### a.   The ACA and Lactation Services Classes.

15  Plaintiffs do not—and cannot—satisfy commonality as to the ACA and Lactation Services

16  Classes because Defendants' alleged liability to each absent class member cannot be determined

17  with common proof. *Dukes*, 564 U.S. at 350. As established in this Court's summary judgment

18  order, determining whether Defendants violated ACA in any given circumstance would require a

19  granular, fact-bound analysis. (Summ. J. Order at 3-5; *see also* Souza Decl., Ex. C (Feb. 28, 2019

20  Order, *York et al v. Wellmark*, Case No. 4:16-cv-00627 (S.D. Iowa)) (conducting similarly

21  individualized analysis of lactation benefit and granting summary judgment).) This analysis would

22  need to be repeated for each absent class member.

#### (1)   Plaintiffs Have Failed To Establish Common Policies or Practices or Common Injuries.

24  Plaintiffs assert that the question common to putative class members is whether Defendants'

25  "plans, policies, and procedures complied with the ACA with respect to providing coverage for CLS

26  as a preventive benefit." (Pls.' Mot. at 16.) This does not show commonality under Rule 23(a)(2).

27  As a threshold matter, Plaintiffs ask the Court to determine the contours of the benefit—a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

complex analysis that would vary by geography and over time. Plaintiffs contend that Defendants'

policies and practices violated ACA because they deprived members of access to "in-network

lactation service providers within a ***reasonable distance*** of" their homes. (Second Am. Compl. ¶ 212

(emphasis added)). Even assuming ACA incorporates this "reasonable distance" requirement, this

issue cannot be determined across the putative classes on a uniform basis. The precise number and

location of Defendants' in-network lactation providers varies by geographic region, depending on

federal and state-specific network adequacy laws. *See supra* at 5-6 & n.3. Consequently, determining

the "reasonable distance" applicable to each class member's claim would require a case-by-case

assessment of not only state and federal laws, but often, of the laws applicable to different

geographic regions within single states. *Id.* Similarly, various federal and state-law rules regulate the

manner in which health plans notify members of the providers within their networks, such as

requirements pertaining to health plans' provider directories. *Id.* at 6 & n.4. Thus, identifying the

standard for determining whether Defendants made members sufficiently "aware" of in-network

providers would require an examination of a panoply of laws—and the analysis would vary

depending on the class member, plan type, and geographic region at issue. *Id.*

After navigating the patchwork of network adequacy requirements, the Court would then be

required to determine the various standards of care applicable to myriad situations presented by

absent class members. How much time should providers devote to various questions and conditions?

What practices, methods, or treatments should be applied? What spectrum of services constitutes a

"full complement" under ACA? A class action is not a proper forum for resolution of these complex

and multifaceted questions. *See Dukes*, 564 U.S. at 350.[6]

Even if resolution of these threshold determinations regarding the parameters of the benefit

were feasible on a class-wide basis, additional inquiries would be required to determine whether

Defendants' alleged policies and practices injured a given class member by causing her to go out-of-

---

[6] *See also Phillips v. Sheriff of Cook County*, 828 F.3d 541, 554-555 (7th Cir. 2016) (commonality not satisfied because the court would need to inquire into each class member's medical needs and the subjective quality of the treatment); *Schilling v. Kenton Cnty., Ky.*, No. 10-143-DLB, 2011 WL 293759, at *10 (E.D. Ky. Jan. 27, 2011) (commonality lacking for similar reasons pertaining to the inherently individualized nature of medical care).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

network and incur a cost share. *See id.*; *Thomasson v. GC Servs. Ltd. P'Ship*, 539 F. App'x 809, 810 (9th Cir. 2013) (commonality requires "significant proof that the entire class suffered a common injury"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (similar).

Contrary to Plaintiffs' suggestion of *de minimis* coverage, the majority of women who submitted claims for lactation services using Defendants' coding guidance between 2012 and 2018 received the services in-network from various provider types and obtained coverage without cost-shares—both over time and across markets.[7] (Mar. 20, 2019 dos Santos Decl., Ex. A (Dec. 11, 2018 Expert Report of Joao dos Santos), ¶ 19(a).) Moreover, additional members likely received the service during delivery and post-partum wellness visits or received free in-network services through hospital-based programs, like Plaintiff Carroll. (*Id.* ¶¶ 45-49 & n.17; Souza Decl., Ex. D  (Mar. 15, 2019 Marshall-Crim Dep.), at 27:18-36:21 (testifying regarding the inpatient and outpatient services available at Hartford Hospital); Ex. E (Mar. 15, 2019 Hall Dep.), at 23:10-25:13, 84:24-85:2 (testifying regarding similar services offered at Poudre Valley Hospital and stating that such services are free to patients).)[8] And other members have obtained full coverage for out-of-network care through the gap exception and appeals processes. *See supra* at 8. Thus, despite Defendants' alleged policies and practices, members were plainly aware of and able to obtain in-network lactation services without cost-shares.[9] Accordingly, the Court cannot assume that Defendants' alleged conduct was "systemic" or that every cost-share imposed on out-of-network claims resulted from that conduct. Rather, individualized inquiries would be required to determine why each class member went out-of-network and why the claim was denied or cost-sharing was imposed.

For example, after determining the "reasonable distance" and notice requirements under the

---

[7] Notably, Plaintiffs cite the same claims data to establish numerosity, thus acknowledging the breadth and reliability of this information. (Pls.' Mot. at 15.)

[8] The corporate representative for Poudre Valley Hospital has not waived signature, and, therefore, the transcript is subject to change.

[9] This is unsurprising since lactation specialists classified internally with specialty code 380 (which Plaintiffs emphasize) are not the only lactation specialists in Defendants' networks, let alone the only providers of lactation services. (Mar. 19, 2019 Regina Vasquez Decl., ¶¶ 8-10.) Plaintiffs even concede that "some pediatricians or OB/GYNs" render lactation services. (Pls.' Mot. at 8 n.13.) Indeed, the lactation specialists from whom Carroll and Endicott received care were not specialty 380 providers.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   applicable network adequacy rules, the Court would need to examine Defendants' provider network

2   during the relevant time, whether a network provider was "nearby," and what efforts the member

3   made to look for the service, including any communications with Defendants. (*See* Summ. J. Order

4   at 3-5). The Court would then need to assess the nature and scope of the services offered by any such

5   providers during that timeframe to determine whether the services constitute "comprehensive"

6   lactation counseling within ACA's meaning. It would also need to analyze whether the member

7   chose an out-of-network provider for personal or subjective reasons. (*See* Condry and Barber, who

8   made no effort to find a network provider, (Summ J. Order at 4), and Carroll and Endicott, both of

9   whom sought out-of-network services based on personal dissatisfaction with the quality of lactation

10  care, (*id.* at 5).)[10] And if no network providers were available, the member's efforts to obtain a gap

11  exception or appeal a cost-share or claim denial would need to be assessed. *See supra* at 8, 16.

12         Furthermore, the Court would need to determine whether any given class member actually

13  paid a cost-share or other amount and thereby suffered a compensable injury. *See Oshana v. Coca-*

14  *Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) ("[c]ountless members" of the putative class "could not

15  show any damage"). This analysis would be member-specific, given that Defendants are unable to

16  track claims payment or collection information for out-of-network providers.[11] (Pls.' Ex. 40 (Seay

17  Decl.), ¶¶ 6-8; Pls.' Ex. 42 ( Vasquez Decl.), ¶¶ 6-9; Miller Decl., Ex. A (Miller Expert Report), at

18  11-12.) And, the Court would need to analyze any available defenses, including whether a claim was

19  denied for reasons unrelated to the lactation benefit, such as late submission of the claim or the

20  member's lapse of coverage under their plan generally, or whether the member's plan was

21  grandfathered and, therefore, permitted the imposition of cost-shares. (Pls.' Ex. 33 (Thompson

22

23  [10] *See also supra* at 16 (discussing services available at Poudre Valley Hospital and Hartford Hospital); Mar.
    19, 2019 Regina Vasquez Decl., ¶¶ 4, 6-7 (establishing that both facilities are in-network for purposes of
24  Carroll's and Endicott's plans).)

25  [11] Plaintiffs' assertion that this argument assumes "rampant insurance fraud by providers" is unfounded. (Pls.'
    Mot. at 20.) As Plaintiffs' concede, the Administrative Guide upon which they rely applies only to ***network***
26  providers. (*See id.*) Plaintiffs do not provide any mechanism for determining whether out-of-network
    providers collected unpaid amounts from members on a class-wide basis, and there is no such process. It is
27  also well know that waiver of coinsurance is a regrettable but common practice. *See, e.g.*, *Kennedy v.*
    *Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 699 (7th Cir. 1991).

28  Case No. 3:17-cv-00183-VC                    - 17 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Decl.) ¶¶ 18-26; Mar. 19, 2019 Klos Decl., ¶¶ 4-32; Mar. 20, 2019 Klos Decl., ¶¶ 4-7; Mar. 12, 2019

2    Thompson Decl., ¶¶ 4-46.)

3            Plaintiffs cannot circumvent the need for individual inquiries with anecdotal opinions that

4    "most" pediatricians and OBGYNs are not properly trained, by focusing on a self-serving limited

5    subset of Defendants' providers, or by belatedly expanding their putative classes to create the

6    appearance of an unmet "demand" for the service (see concurrently filed *Daubert* motions). Nor do

7    Plaintiffs' out-of-context quotations from Defendants' internal emails purportedly discussing the

8    alleged policies and practices suffice as proof of any common impact across the putative classes. To

9    be sure, Plaintiffs appear to acknowledge that resolution of the class claims would require

10   Defendants to ***"seek and receive information from a member,"*** but blithely dismiss this as "a

11   normal part of [Defendants'] business."[12] (Pls.' Mot. at 20.) That is not proof of commonality. No

12   common answers can be derived from this complex matrix of factual and legal questions.

13              **(2)    Defendants' Purportedly "Narrow" Coverage Compounds the
                        Individualized Inquiries.**

14           Plaintiffs' efforts to portray Defendants' coverage for the benefit as "narrow" only increases

15   the number of individualized issues by expanding the ACA and Lactation Services Classes beyond

16   the core allegations and proof specific to the named Plaintiffs. For instance, even though all of the

17   named Plaintiffs' claims focus on Defendants' coverage for ***out-of-network*** lactation services, the

18   ACA and Lactation Services Classes now purport to include members who submitted ***in-network***

19   claims. (*See, e.g.*, *id.* at 14.) By definition, however, members who submitted in-network claims

20   ***could not have been injured by a lack of in-network providers***. Thus, the claims of these class

21   members would require vastly different proof to prosecute and would be subject to unique defenses,

22   *e.g.*, that a specific claim was denied for reasons completely unrelated to the lactation benefit. *See*

23   *Doiron v. Conseco Health Ins. Co.*, 279 F. App'x 313, 316 (5th Cir. 2008) (classes attempted to

24   sweep in "policyholders who had claims denied for reasons other than" those at issue); Pls.' Ex. 33

25

26   _____

     [12] Plaintiffs also claim that their expert Mark Labovitz established that individual inquiries are unnecessary
27   due to Defendants' auto adjudication capabilities. (Pls.' Mot. at 20.) But Mr. Labovitz has since admitted that
     ***he is not offering an opinion on whether auto-adjudication could be applied to resolve the claims in this***
28   ***case***. (Souza Decl., Ex. F (Labovitz Dep.), at 229:5-11, 18-20.)

1   (Thompson Decl.), ¶¶ 18-19 (discussing claim denials based on procedural errors).

2   A similarly individualized analysis applies to class members who submitted claims with

3   billing codes that are not necessarily related to lactation. (Pls.' Mot. at 15 n.21.) For those codes, the

4   Court would need to examine the circumstances of each class member's treatment, including the

5   underlying medical records, to determine, in the first instance, whether the class member received

6   lactation services or some other type of care, or whether the "primary purpose" of an office visit was

7   lactation care.[13] *See* 29 C.F.R. § 2590.715-2713(a)(2) (coverage for office visits required ***only if*** the

8   "primary purpose" of the office visit is the delivery of the preventive service). And, Defendants

9   would be entitled to present the individualized defense that, in accordance with their discretion to

10  define the scope of the ACA benefit, they appropriately excluded the billing code(s) at issue from

11  eligibility for cost-share-free coverage. 29 C.F.R. § 2590.715-2713(a)(4) (discussing health plans'

12  discretion). Resolving Plaintiffs' claims on a class-wide basis would require the Court to determine

13  the scope of the benefit and whether each and every code billed by an absent class member falls

14  within its parameters. This type of expansive and individualized undertaking is not the purpose of

15  the class device. *See Dukes*, 564 U.S. at 352 (classes litigated "millions of … decisions at once").

16  Plaintiffs' final argument that the ACA and Lactation Services Classes encompass members

17  who did not submit claims ***at all*** raises additional and substantial questions and underscores the

18  overreaching nature of their class certification effort. (Pls.' Mot. at 15.) As an initial matter,

19  throughout this litigation, Plaintiffs have focused on cost-shares and claim denials, and their eleventh

20  hour revision of their class definition to include this amorphous cohort should not be permitted. *See*

21  *Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB), 2017 WL 1155350, at *2 (S.D. Cal. Mar. 28,

22  2017) (class was "an entirely different class" than that alleged in the Complaint). Moreover,

23  Plaintiffs' only "proof" regarding this new set of claims comes from the flawed ***rebuttal*** report of

---

24  [13] Plaintiffs' position regarding the unduly "narrow" nature of the billing codes identified by Defendants is

25  misleading. Defendants' policies delineate certain procedure codes that providers may utilize in billing lactation and other services that do not require any particular diagnosis code pairing. (Pls.' Ex. 10 (Defs.'

26  Second Am. Objections to First Set of Interrogs.), No. 2.) This means that codes associated with diagnostic care (*i.e.*, care for an ongoing medical condition) can be, and have been, billed with such procedure codes and

27  processed with no cost-share. (*Id.*) This allows for members to receive coverage at no cost-share for a myriad of issues, including, but not limited to, a full-range of lactation issues.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Mark Labovitz. (Pls. Ex. 36 (Labovitz Expert Report).) Labovitz conjures a "Representative Population" of members—which he claims to have estimated from data on live births in the general population—who "may have sought" 1.1 million "visits" for lactation services. (*Id.* ¶ 12.) But Labovitz admitted that his model had never been used to estimate a demand for healthcare services; that it was based on multiple layers of assumptions (as opposed to data) regarding Defendants' network, membership, and services; that he performed "no analysis" of the "Representative Population"; and ***that he had no idea what portion of his "Representative Population" consisted of members who received and paid for lactation services out-of-network and were therefore harmed***. (Souza Decl., Ex. F ( Mar. 8, 2019 Labovitz Dep.), at 112:24-113:7, 166:24-167:17, 176:23-177:11, 188:11-190:16, 210:18-212:7, 278:14-282:8; *see also Daubert* motion; Mar. 20, 2019 dos Santos Decl., Ex. C (Mar. 20, 2019 Rebuttal Report of Joao dos Santos), at 5-6.)

In any event, Plaintiffs offer no suggestion for identifying this group (Defendants have no way of tracking such information), and data on live births is not a proxy for women who received lactation services out-of-network but failed to submit claims due to purportedly illegal practices by Defendants. (Souza Decl., Ex. F (Labovitz Dep.), at 177:3-8, 186:24-190:16 (recognizing that "live birth" model is based on numerous assumptions and that there are women within that cohort who did not seek lactation services).) Nor can this issue be dismissed as a problem of "administrative feasibility." Even if this "Population" could reliably be located, the Court would need to conduct further individualized inquiries to determine ***why*** each member refrained from submitting a claim and whether any unique defenses may apply. Indeed, the claims data demonstrates that women ***do*** submit claims for out-of-network services, precluding the Court from assuming that claims were not submitted due to Defendants' alleged conduct. Plaintiffs' motion offers no answers to how these questions could possibly be resolved through common proof consistent with Rule 23. They cannot.

Far from mere "administrative feasibility" problems, the individualized issues detailed above go to the heart of this Court's commonality inquiry: namely, whether Plaintiffs have identified not just common questions, but the feasibility of providing common answers through classwide proof. *Dukes*, 564 U.S. at 350. Nor do Plaintiffs' cited cases warrant a different outcome. Those cases

involved challenges to discrete provisions in guidelines or plan terms that applied to *every* claim. *See, e.g.*, *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 497-504 (N.D. Cal. 2017) (challenge to medical necessity guidelines); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 127-29 (N.D. Cal. 2016) (challenge to coverage guidelines). By contrast, here, Plaintiffs assert violations and purported misconduct involving multiple Defendants, plans, and levels of services, across all states (many of which have their own network adequacy requirements), and over a broad time period.  For example, putative class members' claims will process differently depending on (1) the medical codes their provider selects, (2) the provider type the class member seeks services from, and (3) whether the claim is submitted in accordance with applicable policies and procedures. (*See* Pls.' Ex. 13, Nonphysician Health Care Professionals Billing Evaluation and Management Codes Policy.) Further, even if Defendants' policies and practices could be deemed "common," determining the *impact* of these policies and procedures on every absent class member in terms of liability, remedies, and available defenses is fraught with individualized issues that preclude certification of a putative class. *See, e.g.*, *Dennis F. v. Aetna Life Ins.*, No. 12-cv-02819, 2013 WL 5377144, at *4 (N.D. Cal. Sept. 25, 2013) (defendants' liability to class did not turn on the challenged policy alone); *Graddy v. BlueCross BlueShield of Tenn., Inc.*, No. 4:09-cv-84, 2010 WL 670081, at *9 (E.D. Tenn. Feb. 19, 2010) (uniform policies did "not eliminate the need for an individualized assessment as to the ultimate propriety of the benefits decisions"); *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 764-65 (11th Cir. 2012) (similar). Plaintiffs have not satisfied commonality.

### b.   The Claims Review Class.

Plaintiffs similarly fail to identify a common question capable of class-wide resolution as to the Claims Review Class. According to Plaintiffs, the common contention is whether each remark code at issue was objectively understandable and, therefore, complied with ERISA. (Pls. Mot. at 16.) But as Plaintiffs acknowledge, the appropriate inquiry under ERISA's full and fair review provisions is whether Defendants engaged in a "meaningful dialogue" with each class member, giving "the members of the Class a reasonable opportunity for a full and fair review of the denials." (Pls.' Mot. at 16); *see also Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Such a determination cannot be made on a class-wide basis because it entails an examination

2  of each class member's circumstances, including the extent of any additional communications

3  between the member and Defendants and the outcomes of such communications. *See Coleman v.*

4  *Am. Int'l Grp., Inc. Group Benefit Plan*, 87 F. Supp. 3d 1250, 1260-62 (N.D. Cal. 2015)

5  (deficiencies in denial letter were mitigated by subsequent communications); *Palmer v. Unum Life*

6  *Ins. Co. of Am.*, No. C04-2735 MJJ, 2005 WL 1562800, at *4-5 (N.D. Cal. June 24, 2005)

7  (examining entire appeals process in analyzing meaningful dialogue). Remark codes are designed to

8  initiate a dialogue between the member, the provider, and Defendants, and to provide enough

9  information for the member to understand the benefits determination and capitalize on other

10 available resources. *See supra* at 8. The evidence shows this process works as designed. Defendants'

11 records of customer service calls indicate members routinely communicate with Defendants after

12 receiving claim denials, including denials involving the remark codes identified in the Claims

13 Review Class definition. (Savercool Decl., ¶ 11.) The experiences of each named Plaintiff show that

14 members understand the basis for claim denials, often due to additional communications with

15 Defendants or their providers. *See supra* at 9-11. Even Plaintiffs' expert, Dr. Lauren Hanley, admits

16 she has participated in this "meaningful dialogue" process with at least one patient. (Souza Decl.,

17 Ex. A (Hanley Dep.), at 115:9 – 116:19.)

18    Thus, at the class certification phase, the Court cannot assume that any given remark code

19 violated ERISA as to each and every absent class member, including those whose claims decisions

20 were amended. Instead, the Court would need to examine the circumstances of each class member.

21 Furthermore, to the extent Plaintiffs seek a re-adjudication of their claims denials under a new

22 standard, all of the individualized issues that pertain to the ACA and Lactation Services Classes

23 would come to the fore, including the circumstances surrounding why the particular member went

24 out-of-network. Plaintiffs have not established commonality.

25    **2.    The Named Plaintiffs are Not Typical or Adequate Class Representatives.**

26    "The test of typicality 'is whether [class] members have the same or similar injury, whether

27 the action is based on conduct which is not unique to the named plaintiffs, and whether other class

DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

members have been injured by the same course of conduct.'" *Ellis*, 657 F. 3d at 984 (typicality not satisfied if the "representative is preoccupied with defenses unique to it"). "The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria.'" *See, e.g., Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *see also Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010) (typicality and adequacy overlap).

For many of the same reasons Plaintiffs fail to establish commonality, they also fall short of satisfying typicality and adequacy. With respect to the ACA and Lactation Services Classes, the varying outcomes reached for the various class representatives on summary judgment, standing alone, render Plaintiffs' adequacy and typicality arguments nonstarters. Beyond that fundamental problem, Plaintiffs' individual claims are focused on Defendants' coverage for out-of-network lactation services, yet their class definitions purport to encompass members who submitted in-network claims, as well as members who did not submit claims at all. The claims of these class members would entail different proof and would be subject to unique defenses. Further, Bishop, Hoy, Endicott, and Carroll are no longer plan members and, thus, are subject to the unique defense of lack of Article III standing, given that they purport to seek declaratory and injunctive relief. *Sanchez v. Capital Contractors, Inc.*, No. 14-cv-2622, 2017 WL 2462055, at *2 (N.D. Cal. June 7, 2017) (denying certification for this reason). Carroll's and Endicott's receipt of in-network lactation services further renders them inadequate (and atypical) representatives of class members who purportedly could not locate in-network care.

With respect to the Claims Review Class, the member-specific analysis of whether a "meaningful dialogue" occurred means that the named Plaintiffs are neither typical for purposes of Rule 23(a)(3) nor adequate for purposes of Rule 23(a)(4). Indeed, some members contacted Defendants after receiving remark codes—including Barber, who appealed her denial—and directly addressed the denial reason given. (Savercool Decl., ¶ 11; Dkt. 104-4 at 15; *see also* Miller Decl., Ex. A (Miller Expert Report), at 9-11.) Typicality and adequacy are lacking.

### C.   Plaintiffs Cannot Satisfy the Prerequisites of Rule 23(b).

Plaintiffs seek certification under Rule 23(b)(1) and (b)(2), arguing they are only "seeking

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   declaratory and injunctive relief." (*Id.* at 23.) Plaintiffs' certification arguments are unavailing.

2   **1.      Bishop, Hoy, Endicott, and Carroll Lack Standing to Certify the ACA and Lactation Services Classes Under Rule 23(b)(1) and (2).**

3   The ACA and Lactation Services Classes cannot be certified under Rule 23(b)(1) or (2)

4   because Bishop, Hoy, Endicott, and Carroll lack Article III standing to obtain declaratory and

5   injunctive relief.  A plaintiff "must have standing to seek the declaratory and/or injunctive relief

6   sought on behalf of the class." *Sanchez*, 2017 WL 2462055, at *2. To make this showing, the named

7   plaintiff must demonstrate that she is "realistically threatened by a repetition of the violation." *Id.* A

8   named plaintiff cannot cure a lack of standing by piggybacking on the standing of putative class

9   members, since prior to class certification, the jurisdiction of the district court depends upon the

10  standing of the named plaintiff. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

11  Here, Bishop, Hoy, Endicott, and Carroll are not current plan members. (Mar. 20, 2019 Seay

12  Decl., ¶¶ 3-7.) They cannot establish a significant likelihood of sustaining an injury in the future for

13  purposes of the declaratory and injunctive relief they seek. *See id.*; *Sanchez*, 2017 WL 2462055, at

14  *2 (denying class certification for this reason under Rule 23(b)(2)); *Gordon v. New W. Health Servs.*,

15  No. CV 15-24-GF-BMM, 2017 WL 365484, at **3-4 (D. Mont. Jan. 25, 2017) (similar). The Court

16  should not certify the ACA and Lactation Services Classes under (b)(1) and (2).

17  **2.      Plaintiffs' Classes do not Meet the Requirements of Rule 23(b)(1).**

18  Certification should further be denied because Plaintiffs fail to satisfy the requirements of

19  Rule 23(b)(1)(A) or (B). Plaintiffs' belated invocation of Rule 23(b)(1) does not change the fact that

20  they still seek significant monetary recovery. (*See* Pls.' Mot. at 25; *see also* Souza Decl. Ex. G (Mar.

21  18, 2019 Pls.' Am. Omnibus Objections & Resps. to Second Set of Interrogs.), No. 2 (discussing

22  individualized monetary relief sought).) Plaintiffs should not be able to avoid scrutiny of

23  individualized issues relating to injury and remedies simply by re-labeling their class. *Comcast*, 569

24  U.S. at 34; *Zinser*, 253 F.3d at 1193-94 (rejecting certification of class under (b)(1)(A) that

25  "primarily seeks money damages"). In any event, "[a] Rule 23(b)(1)(A) certification requires more

26  … than a risk that separate judgments would oblige the opposing party to pay damages to some class

27  members but not to others or to pay them different amounts." *Zinser*, 253 F.3d at 1193. At best,

28

1   Plaintiffs' liability theories suggest that Defendants may be liable to some class members but not

2   others depending on the specific circumstances at issue. *See Jimenez v. Domino's Pizza, Inc.*, 238

3   F.R.D. 241, 250 (C.D. Cal. 2006) (denying certification under (b)(1)(A) on this basis).

4   Certification of the Classes is also improper under Rule 23(b)(1)(B). Certification under that

5   Rule is typically reserved for limited fund cases where a "plaintiff must demonstrate that the case

6   involves a fund with a definitely ascertained limit, all of which would be distributed to satisfy all

7   those with liquidated claims." *Zinser*, 253 F.3d at 1197. Those circumstances are not present here.

8   Plaintiffs have not alleged, let alone proven, that the "assets potentially available to claimants are so

9   limited that separate actions inescapably will alter the rights of other claimants." *Id.*

10   **3.   Plaintiffs' Classes do not Meet the Requirements of Rule 23(b)(2).**

11   Plaintiffs also seek class certification under Rule 23(b)(2), but that Rule is not satisfied when,

12   as here, declaratory or injunctive relief "would merely initiate a process through which highly

13   individualized determinations of liability and remedy are made," particularly determinations

14   pertaining to individualized damages awards. *See Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481,

15   499 (7th Cir. 2012); *see also Dukes*, 564 U.S. at 360-61; *Ellis*, 657 F.3d at 987; *Cholakyan v.*

16   *Mercedes Benz, USA, LLC*, 281 F.R.D. 534, 560 (C.D. Cal. 2012). Even a systemic reform of

17   Defendants' policies and practices would not establish liability or resolve remedial issues class-wide,

18   and Plaintiffs are impermissibly seeking individualized monetary relief.

19   **IV.   <u>CONCLUSION</u>**

20   The individualized nature of Plaintiffs' claims renders them unsuitable for class treatment,

21   and their overly broad classes are inconsistent with Article III and the Rules Enabling Act, which

22   instructs that procedural rules "'shall not abridge, enlarge or modify any substantive right.'"

23   *Amchem*, 521 U.S. at 613 (quoting 28 U.S.C. § 2072(b)). Plaintiffs' motion for class certification

24   should be denied.

25   DATED:  March 21, 2019                    Reed Smith LLP

26                                            By:   */s/ Rebecca R. Hanson*

27

28   Case No. 3:17-cv-00183-VC          - 25 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Karen A. Braje (SBN 193900)
Martin J. Bishop (admitted *pro hac vice*)
Rebecca R. Hanson (admitted *pro hac vice*)
Dianna C. Wyrick (admitted *pro hac vice*)
Thomas C. Hardy (admitted *pro hac vice*)
Abraham J. Souza (admitted *pro hac vice*)

Attorneys for Defendants UnitedHealth Group Inc.,
UnitedHealthcare, Inc., UnitedHealthcare
Insurance Company, United
HealthCare Services, Inc., and UMR, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware