| | |
|---|---|
| KRISTEN LAW SAGAFI (SBN 222249) <br> ksagafi@tzlegal.com <br> **TYCKO & ZAVAREEI LLP** <br> 483 Ninth Street, Suite 200 <br> Oakland, CA  94607 <br> Telephone: (510) 254-6808 <br> Facsimile: (202) 973-0950 <br> <br> Nicholas E. Chimicles (admitted *pro hac vice*) <br> NEC@Chimicles.com <br> Kimberly Donaldson-Smith (admitted *pro hac vice*) <br> KMD@Chimicles.com <br> Stephanie E. Saunders (admitted *pro hac vice*) <br> SES@Chimicles.com <br> **CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP** <br> 361 W. Lancaster Avenue <br> Haverford, PA 19041 <br> (610) 642-8500 <br> <br> *Additional counsel for Plaintiffs on signature page* | Martin J. Bishop (admitted *pro hac vice*) <br> mbishop@reedsmith.com <br> Rebecca R. Hanson (admitted *pro hac vice*) <br> rhanson@reedsmith.com <br> **REED SMITH LLP** <br> 10 South Wacker Drive, 40th Floor <br> Chicago, IL 60606 <br> Telephone: +1 312 207 1000 <br> Facsimile: +1 312 207 6400 <br> <br> Karen A. Braje (SBN 193900) <br> kbraje@reedsmith.com <br> **REED SMITH LLP** <br> 101 Second Street, Suite 1800 <br> San Francisco, CA  94105-3659 <br> Telephone: +1 415 543 8700 <br> Facsimile: +1 415 391 8269 <br> <br> *Additional counsel for Defendants UnitedHealth Group Inc., UnitedHealthcare, Inc., UnitedHealthcare Insurance Company, United HealthCare Services, Inc., and UMR, Inc. on signature page* |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RACHEL CONDRY, JANCE HOY, CHRISTINE ENDICOTT, LAURA BISHOP, FELICITY BARBER, and RACHEL CARROLL on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UnitedHealth Group Inc.; UnitedHealthcare, Inc.; UnitedHealthcare Insurance Company; UnitedHealthcare Services, Inc.; and UMR, Inc., <br><br> Defendants. | Case No.: 3:17-cv-00183-VC <br><br> **JOINT LETTER BRIEF REGARDING DISCOVERY DISPUTE** <br><br> **Honorable Sallie Kim** <br><br> <u>**Close of Discovery:**</u>  **March 29, 2019** |

On April 5, 2019, Plaintiffs filed a Joint Letter Brief Regarding Discovery Dispute [Dkt. 192, "April 5 Letter Brief"], along with the Declaration of Kimberly Donaldson-Smith [Dkt. 193] attaching the Plaintiffs' Third Set of Requests for Production of Documents, and Defendants' Objections and Responses to Plaintiffs' Third Set of Requests for Production of Documents ("RFPs" or "RFP").

On May 23, 2019, the Court issued the Order Denying Motion for Class Certification (Dkt. 213, "May 23 Order") and addressed the April 5 Letter Brief. Specifically, at page 6, fn. 2 of the Order, the Court stated that, "If the discovery dispute identified in the parties' April 5, 2019 joint letter remains relevant in the wake of this ruling, the parties may resubmit a joint letter that grounds the dispute in this ruling. Any arguments regarding the requested documents' relevance, particularly at this stage of the litigation, must be specific. The motion contained in the April 5, 2019 letter is therefore denied."

It is Plaintiffs' position that the dispute identified in the April 5 Letter Brief remains relevant, and its relevancy is supported directly by the Court's May 23 Order. Defendants disagree. Accordingly, this Letter Brief is submitted pursuant to the Court's May 23 Order (Dkt. 213, at pg. 6, fn. 2).

Dated: June 21, 2019

By: *//s/ Kimberly M. Donaldson-Smith*　　　　By: */ s/ Rebecca R. Hanson*
　　Kimberly Donaldson-Smith　　　　　　　　　　Rebecca R. Hanson

Attorneys for Plaintiffs　　　　　　　　　　　　Attorneys for Defendants
CHIMICLES SCHWARTZ KRINER　　　　　　　　　REED SMITH LLP
& DONALDSON-SMITH LLP

June 21, 2019

Honorable Magistrate Judge Sallie Kim
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Dear Magistrate Judge Kim:

The parties jointly submit this letter concerning a dispute arising from Plaintiffs' Third Set of Requests for Production of Documents. Plaintiffs seek to compel a response to Request No. 5 (modified as discussed herein). Discovery closed on March 29, 2019.

## I. PERTINENT PROCEDURAL BACKGROUND

On January 29, 2019, Plaintiffs served Defendants with a Third Set of Requests for Production of Documents (Exhibit A). On February 28, 2019, Defendants served their Objections and Reponses to Plaintiffs' Requests for Production (Exhibit B). Defendants' Objections and Response to Request No. 5 is the source of the instant discovery dispute. Request No. 5 requests all claims submitted to Defendants for providers who appear on the "380 Lists." The reference to "380" pertains to Defendants' specialty code applicable to Lactation Specialists (individuals and groups). The reference to the "380 Lists" pertains to documents produced by Defendants that include the identity of providers identified as 380 Lactation Specialists. Defendants objected to Request No. 5, stating that the request "seeks information regarding any and all claims pertaining to services rendered by the providers that appear on the 380 Lists, even those that did not involve coverage of lactation services," and that, to the extent the providers appearing on the 380 Lists billed for services using codes previously agreed to by the parties, such claims already appear in the previously produced claims data.

On March 11, 2019, the parties held a telephonic meet and confer ("3/11/2019 M&C Call"), during which the parties addressed Request No. 5. During that call, Defendants took the position that the providers who appear on the 380 Lists can and do provide services other than lactation services, and, thus, pulling all claims for all of the 380 providers on those 380 Lists would be, in Defendants'

view, unduly burdensome and not proportional to the needs of the case. Plaintiffs stated that while they disagreed with Defendants' position, Plaintiffs would undertake to address the foregoing by: reviewing and researching the providers identified by the Specialty Code Number 380; identifying of those providers those who exclusively provide lactation services; and, providing any other parameters that could be used to narrow the claims data for such providers sought by Request No. 5. Defendants indicated that they would consider a proposal made by Plaintiffs. Discovery closed on March 29, 2019. In a March 30, 2019 email, Plaintiffs provided Defendants with their proposal to narrow the scope of Request No. 5, and attached a list that narrowed the number of 380-identified providers. On April 1, 2019, Defendants responded "that Plaintiffs waited too long to attempt to meaningfully work through the 380 specialist issue" and stated that Defendants would be "happy to find time to further meet and confer." No additional meet and confer was scheduled, and instead, pursuant to Rule 37-3, which requires that motions to compel discovery be filed within 7 days after the discovery cut-off, Plaintiffs filed the Letter Brief on April 5. The Class Certification Order denied the relief sought in the April 5 Letter Brief indicating that, "[i]f the discovery dispute identified in the parties' April 5, 2019 joint letter remains relevant in the wake of this ruling, the parties may resubmit a joint letter that grounds the dispute in this ruling," provided that "[a]ny arguments regarding the requested documents' relevance, particularly at this stage of the litigation, must be specific." The parties additionally met and conferred telephonically regarding this discovery dispute on June 14 and June 18, 2019.

## II.     PARTIES' POSITIONS ON THE DISPUTE

### a.  PLAINTIFFS' POSITION

In this action, Plaintiffs allege that Defendants did not provide insurance coverage for comprehensive breastfeeding support and counseling services ("CLS") as required under the Affordable Care Act (the "ACA"). Among other things, Plaintiffs allege that Defendants improperly denied, or imposed cost-sharing with respect to, claims for CLS rendered by out-of-network lactation consultants.

Request No. 5 seeks the production of all claims submitted to Defendants by those providers

who were identified internally at United by Code 380, United's code for lactation specialist. Request No. 5 is pertinent to liability and class certification. Defendants do not credibly contend that Request No. 5 is irrelevant. Rather, Defendants contend it is too broad, burdensome and duplicative.

*First*, Plaintiffs have agreed to limit their Request No. 5 to claims submitted for *out-of-network* lactation consultants, which limitation ties directly to the May 23 Order. *Second*, Request No. 5 is directly pertinent to United's processing and adjudication of claims submitted for out-of-network lactation consultations. As the May 23 Order held (at page 3), the "classes even potentially appropriate for these claims would consist of people denied reimbursement for out-of-network lactation services…" The sought-after claims constitute direct evidence of how United auto-adjudicated the claims submitted by insureds for the out-of-network lactation consultations. They will demonstrate why those claims were adjudicated as a denial, or why United imposed cost-sharing on the insureds. At the Class Certification hearing, the Court specifically asked "[W]hat evidence is there in the record about the reasons why any particular person who received [ ] lactation services was denied coverage?", Transcript ("Tr") at 11:1-4. The claims data responds to that inquiry.

*Third*, the claims data sought by Request No. 5 will include the denial and/or remark codes conveyed by United to the insureds which reflect United's reasons for its treatment and adjudication of each out-of-network lactation claim. The ultimate adjudications of the out-of-network claims are directly pertinent to demonstrating: first, how the wrongful policies infected United's decision-making process and auto-adjudication of the out-of-network lactation claims; and, second the resultant injury to the insureds. The claims data sought is evidence of how and why insureds were denied coverage for out-of-network claims and pursuant to what policy or United directive. *See, e.g.,* Tr. at 14:9-17. For example, Plaintiffs' analysis, which will include how Defendants adjudicated the claims for CLS performed by out-of-network lactation consultants, will respond to the Court's statements such as that Plaintiffs' proposal "presumes" "that the same sort of error was committed with respect to the denial of the claim for reimbursement for everybody who was denied…". *Id.; see also, id.* at 29:2-3.

3

*Fourth*, the parties have disputed both the "scope" of CLS services and how out-of-network lactation consultants bill patients and payers for CLS services. There is not a single code used by providers to reflect the provision of CLS. Defendants' duplication argument misses the point. Absent the production of claims for these lactation specialists -- *without* the claims being limited by certain codes as they have been to date[1] -- we cannot be assured of capturing all of the out-of-network CLS claims that were submitted using "real world" coding. Receipt of the claims is necessary to address, for example, the nature as well as the prevalence or uniformity of the Defendants' conduct, which directly responds to the Court's Order. Also, Defendants cannot certify that all CLS claims that would be captured by Request No. 5 have already been produced. For example, Defendants did not produce claims if, for example, the claims were denoted just by a pediatric code, such as P925 (Neonatal difficulty in feeding at breast) or P593 (Neonatal jaundice from breast milk inhibitor). The Court has stated the need for Plaintiffs to address Defendants' policies and conduct. In Plaintiffs' view, the policies include the treatment of out-of-network CLS claims and denial of CLS claims submitted by lactation specialists who identified the baby as the patient. In sum, the claims data address the Court's May 23 Order concerning Defendants' specific policies at issue, conduct in adjudicating the claims, and the treatment of the insureds' claims.

*Finally*, Request No. 5 is not burdensome or duplicative. As stated during the 3/11/2019 M&C Call, Plaintiffs diligently and timely undertook the work necessary to address Defendants' objections that the request was overly broad and unduly burdensome. Defendants' arguments about breadth remain theoretical. They argue about what claims *could* or *may* be pulled based on purportedly irrelevant codes. Tellingly, although the hard data is solely in their possession, they never reveal the actual number of any such claims. Also, Defendants ignore the limited scope of services provided by the lactation specialists, rendering their arguments highly speculative. Notwithstanding Defendants'

---

[1] Plaintiffs' agreement to a production limited by certain codes was without prejudice to their review of the claims and to propounding further requests. After such review, Plaintiffs proceeded with Request No. 5.

failure to provide any hard data demonstrating burden, Plaintiffs agreed to and now further propose to narrow Request No. 5 as follows:  (1) Limit the request to out-of-network providers who were identified by the 380 code. (2) Exclude all Claims produced to date. (3) Exclude claims from hospitals based on the hospital's MPIN, and only include claims associated with the NPI as rendering or billing NPI for an individual provider. (4) Notwithstanding Defendants' failure to demonstrate with facts that certain non-CLS claims would be included, Plaintiffs agree the claims pull can exclude:

    a.  Claims that include S, J and L Codes;

    b.  Claims for breast pumps (by excluding claims with codes beginning with A or E);

    c.  Claims for "Cranial Therapy" (by excluding all claims for Manipulative Therapy, the codes for which are reflected in United's Manipulative Therapy Policy, Number 2019T0541L);

    d.  Services provided by "birth doulas."[2]

Plaintiffs are entitled to the claims data submitted for out-of-network lactation consultants. Plaintiffs' proposal refines Request No. 5 to resolve Defendants' objections.  Plaintiffs respectfully request that the Defendants be ordered to produce the documents responsive to Request No. 5, as modified.

**b.  DEFENDANTS' POSITION**

The Court should deny Plaintiffs' request for an order compelling discovery for several reasons. *First*, Plaintiffs' request fails to comply with the Court's admonition that "[a]ny arguments regarding the requested documents' relevance … be specific" and grounded in the Court's class certification Order. (Order at 6 n.2.) Plaintiffs argue that the claims data: "is pertinent to liability and class certification"; is "directly pertinent to United's processing and adjudication of claims submitted for out-of-network lactation consultations"; and "will include the denial and/or remark codes conveyed by United to the insureds." But these conclusory statements do not explain how the requested claims data

---

[2] The following codes would be excluded: CPT 99499; and ICDs: Z32.2 (childbirth instruction); Z32.3 (childcare instruction); Z33.1 (pregnant state, incidental); Z39.0 (care and examination of mother immediately after delivery); Z39.2 (encounter for routine postpartum follow-up); V22.2 (pregnant state, incidental);  V24.0 (postpartum care and examination immediately after delivery); V24.2 (routine postpartum follow-up)).

will help Plaintiffs rectify the "[m]any problems" that "plague[d]" Plaintiffs' efforts to certify a putative class, chief among them being Plaintiffs' failure to show that they could establish a common, class-wide injury through common proof. (*Id.* at 2-3; *see also id.* at 3-4.)

As this Court observed in its Order denying class certification, there is no indication in the evidence adduced during discovery "that UHC uniformly applied an unlawful policy to out-of-network claims." (*Id.* at 3-4.) This is significant, since Plaintiffs have already obtained thousands of out-of-network claims in discovery, including but not limited to claims billed by the very same providers (*i.e.,* out-of-network providers who have the "Lactation Specialist" designation) that form the basis of this discovery dispute. These already produced claims include services billed with diagnosis codes that contain the word "lactation" in their clinical descriptions, in addition to a host of claims billed with a myriad of other diagnosis codes that Plaintiffs requested, including claims for infants and the infant codes Plaintiffs claim above were not produced.[3] Nevertheless, despite having all that claims data, Plaintiffs could not develop a viable class-wide argument that could persuade the Court to rule in their favor. Plaintiffs provide no explanation whatsoever to support why they believe yet even more out-of-network claims data will resurrect their attempt to certify a class here. Nevertheless, Plaintiffs can make the arguments they describe above using the existing claims data because they have not described any types of claims data that are not already available to them.

*Second*, Plaintiffs' proposal regarding Request No. 5 is overly broad, unduly burdensome, and not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs apparently believe that pulling additional claims information is warranted because they believe that the only services rendered by providers who have the 380 designation in Defendants' records are those related to lactation. There

---

[3] Defendants produced claims data that included claims billed with infant codes P925 (Neonatal difficulty in feeding at breast) and P593 (Neonatal jaundice from breast milk inhibitor), but Plaintiffs now complain that Defendants did not produce claims when billed only with those codes. That is a result of Plaintiffs' own doing. Defendants objected to such a production on the basis that the Affordable Care Act benefit at issue is expressly for women and for "lactation support" as opposed to infant feeding issues, and Plaintiffs did not further pursue the production of such claims.

is no evidence for this bald assertion, which is contradicted by Plaintiffs' (albeit insufficient) willingness to exclude a few codes for other services. Indeed, providers on Plaintiffs' proposed list boast providing other services on their websites, and many of these providers are licensed as certified nurse midwives, nurse practitioners, and registered nurses who may be providing other non-lactation services within the scope of their licensures. Such providers and all other non-lactation services have not been culled out of Plaintiffs' list as Plaintiffs suggest.[4] Plaintiffs describe these issues as "theoretical," ignoring the specific examples Defendants have provided and, more importantly, the fact that it is *their burden*, not Defendants', to establish the relevance of the discovery sought.

While Plaintiffs recognize the Court's ruling that "[t]he only classes even potentially appropriate for these claims would consist of people denied reimbursement for out-of-network **lactation services**," (Order at 3 (emphasis added)), Plaintiffs still refuse to narrow their request for additional claims to those that were billed with diagnoses codes that contain the word "lactation," of which there are many.

---

[4] Plaintiffs attempt to ameliorate this problem by identifying a handful of codes that they are willing to exclude. Plaintiffs' efforts, however, are insufficient. First, even if the Court were to allow Plaintiffs to narrow their request as Plaintiffs' suggest, Plaintiffs have not gone far enough to recognize the myriad of services these providers could be providing in addition to lactation support given the scope of their practice as certified nurse midwives, nurse practitioners, doulas, and the like. For example, Plaintiffs only mention doula services and even then only attribute certain codes to those services when there are many others that such a provider could utilize for birth services. Along those same lines, Plaintiffs' claim above that excluding a hospital's MPIN (identification number) and focusing on the individual's NPI number would exclude all services that are not lactation services is not supported by any evidence, making this another hollow attempt to limit Plaintiffs' requested claims pull to lactation claims only. Further, through the meet and confer process, Defendants have provided non-exhaustive examples of procedure codes that are inappropriate for a claims pull, and, on a piecemeal basis, Plaintiffs agree to exclude them (by adding "J" and "L" codes to the exclude list, for example) – but Plaintiffs miss the point by not excluding all the other irrelevant codes that would still be included in their proposal. No procedure level code is appropriate for a claims pull for lactation services unless the claim is also billed with a diagnosis code that has the word "lactation" in it. As Defendants' expert, Pam D'Apuzzo, explained in connection with class certification briefing, if a provider is trying to express to Defendants that they are providing "lactation" services, it ultimately makes sense that they would use a diagnosis code that contains the word "lactation" to indicate that such services were provided. Plaintiffs tellingly provide the Court with no information about how they will ensure that the claims pulled under their expansive approach are for lactation support – especially given the fact that many of these providers have wider scope of practices than simply lactation consultation. Indeed, Plaintiffs' "compromise" still ignores that there are, for example, codes that providers use to bill "cranial therapy" other than those noted by Plaintiffs above and that their proposal still includes codes that would not be relevant to identify a claim for lactation support, such as "99999," which is for unspecified services, "G" codes that can be used for Medicare claims that are not in scope here, "K" codes for durable medical equipment, etc. The only way to ensure the claims data is not overbroad is to limit claims to those billed with "lactation" diagnosis codes.

As a result, even if Defendants were to produce this additional data, Plaintiffs could not establish that the claims were for lactation services, absent an individual review of medical records, which Plaintiffs do not assert either party has. That is because many of these providers can provide non-lactation services within the scope of their practice, and there is nothing in the claims data itself that indicates the claims are definitively for lactation services. In any event, the individualized nature of this process necessarily defeats class certification. Plaintiffs' unwillingness to narrow their request to claims billed with codes that contain the word "lactation" means that Plaintiffs have requested irrelevant information.

*Third*, Plaintiffs' request is untimely. Although the parties met and conferred on March 11, 2019, Plaintiffs did not convey their proposal until nearly three weeks later and the day after discovery closed. Plaintiffs' delay tactics undermine the purpose of discovery cutoffs, which is to provide the parties with certainty regarding their obligations. *See Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). Plaintiffs' delay continues to prejudice Defendants, who are forced to litigate a discovery dispute months after the close of discovery.

In terms of compromise, Plaintiffs' proposal is still entirely overbroad and does not consider a vast number of codes that are plainly not related to lactation counseling. If the Court is inclined to grant Plaintiffs' request as modified above, Defendants request that the Court further narrow Plaintiffs' proposal to claims submitted with procedure level codes for which claims data was not previously pulled (because the codes were not requested by Plaintiffs), but only when those claims also contain diagnosis level codes that contain the word "lactation" in their clinical descriptions. This approach will narrow the claims to those that actually might represent the benefit at issue in the case (*i.e.,* the Affordable Care Act's benefit for "**lactation support**" for women), depending on other circumstances associated with the claim. Otherwise, neither party will be able to ever establish that these additional claims are for "lactation support," making the request overly broad and unduly burdensome. Further, Plaintiffs should cull the provider list to individual out-of-network providers only. To be clear, however, Plaintiffs' request for an order compelling discovery should be denied in its entirety.

| | |
|---|---|
| **CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP** | **REED SMITH LLP** |
| By: _/s/ Kimberly M. Donaldson-Smith_ | By: _/s/ Rebecca R. Hanson_ |
| Nicholas E. Chimicles (admitted *pro hac vice*) | Martin J. Bishop |
| Kimberly Donaldson-Smith (admitted *pro hac vice*) | Rebecca R. Hanson |
| Stephanie E. Saunders (admitted *pro hac vice*) | Thomas C. Hardy |
| 361 W. Lancaster Avenue | Abraham J. Souza |
| Haverford, PA 19041 | Reed Smith LLP |
| Phone: (610) 642-8500 | 10 S. Wacker Drive, 40th Floor |
| Fax: (610) 649-3633 | Chicago, IL 60606 |
| NEC@Chimicles.com | mbishop@reedsmith.com |
| KMD@Chimicles.com | rhanson@reedsmith.com |
| SES@Chimicles.com | thardy@reedsmith.com |
| | asouza@reedsmith.com |
| James E. Miller (admitted *pro hac vice*) | Karen A. Braje |
| Laurie Rubinow (to seek admission *pro hac vice*) | Reed Smith LLP |
| **SHEPHERD, FINKELMAN, MILLER AND SHAH, LLP** | 101 Second Street, Suite 1800 |
| 65 Main Street | San Francisco, CA 94105 |
| Chester, CT 06412 | kbraje@reedsmith.com |
| Phone: (860) 526-1100 | Dianna C. Wyrick |
| Fax: (866) 300-7367 | Reed Smith LLP |
| jmiller@sfmslaw.com | Reed Smith Centre |
| lrubinow@sfmslaw.com | 225 Fifth Avenue |
| | Pittsburgh, PA 15222 |
| | dwyrick@reedsmith.com |
| Marc A. Goldich (admitted *pro hac vice*) | ***Attorneys for Defendants UnitedHealth Group Inc., UnitedHealthcare, Inc., UnitedHealthcare Insurance Company, UnitedHealthcare Services, Inc., and UMR, Inc.*** |
| Noah Axler (admitted *pro hac vice*) | |
| **AXLER GOLDICH LLC** | |
| 1520 Locust Street | |
| Suite 301 | |
| Philadelphia, PA 19102 | |
| Phone: (267) 534-7400 | |
| Fax: (267) 534-7407 | |
| mgoldich@axgolaw.com | |
| naxler@axgolaw.com | |
| | |
| KRISTEN LAW SAGAFI, | |
| California Bar No. 222249 | |
| **TYCKO & ZAVAREEI LLP** | |
| 483 Ninth Street, Suite 200 | |
| Oakland, CA 94607 | |
| Phone: (510) 254-6808 | |
| Fax: (202) 973-0950 | |
| ksagafi@tzlegal.com | |
| | |
| ***Attorneys for Plaintiffs*** | |

## ECF ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that concurrence in the filing of this document has been obtained from the other signatory above.  Executed this 21st day of June, 2019, at Haverford, Pennsylvania.

By:  /s/  Kimberly M. Donaldson-Smith
Kimberly M. Donaldson-Smith